**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMOCRATIC NATIONAL
COMMITTEE,

              Plaintiff,

      v.

UNITED STATES DEPARTMENT
OF JUSTICE,

              Defendant.

Civil Action No. 07-712 (ESH)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Rules of the United States District Court for the District of Columbia, Defendant United States Department of Justice, by undersigned counsel, respectfully moves this Court for summary judgment on the claims of Plaintiff Democratic National Committee. The grounds for Defendant's motion are set forth in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Declaration of Melanie Ann Pustay and Declaration of Dione Jackson Stearns.

Date: January 24, 2008

              Respectfully submitted,

              JEFFREY S. BUCHOLTZ
              Acting Assistant Attorney General

              JEFFREY A. TAYLOR
              United States Attorney

              ELIZABETH J. SHAPIRO
              Assistant Director
              Federal Programs Branch

              [*Additional Counsel on Next Page*]

   /s/  Nicholas A. Oldham
Nicholas A. Oldham (D.C. Bar No. 484113)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C.  20044
<u>Delivery Address</u>
20 Massachusetts Ave., N.W.
Washington, D.C.  20001
Tel: (202) 514-3367
Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, | |
| Plaintiff, | |
| v. | Civil Action No. 07-712 (ESH) |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
Federal Programs Branch

NICHOLAS A. OLDHAM (D.C. Bar No. 484113)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C.  20044
Delivery Address
20 Massachusetts Ave., N.W.
Washington, D.C.  20001
Tel: (202) 514-3367
Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

January 24, 2008                    Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 1

ARGUMENT ...................................................................................................... 5

    I.      STANDARD OF REVIEW ................................................................ 5

    II.     OIP PROPERLY WITHHELD DOCUMENTS AND
           PORTIONS OF DOCUMENTS PURSUANT TO EXEMPTION 5. ................... 6

          A.     OIP Properly Relied On Exemption 5, Presidential
                Communications Privilege, To Withhold Documents
                And Portions Of Documents Listed In Its *Vaughn* Index
                In Groups 3, 6, 21 and 26. ......................................................... 7

          B.     OIP Properly Relied On Exemption 5, Deliberative Process
                Privilege, To Withhold Portions Of Documents Listed
                In OIP's *Vaughn* Index In Groups 3, 6, 21, 25, 26 and 28 ...................... 13

          C.     OIP Has Produced All Reasonably Segregable Information. .................. 17

    II.     EOUSA PROPERLY WITHHELD DOCUMENTS AND
           PORTIONS OF DOCUMENTS PURSUANT TO EXEMPTION 6. ................. 19

          A.     Unsuccessful Candidates For United States Attorney Positions
                Have Substantial Privacy Interests In Protecting Their Identity ............. 20

          B.     Disclosure Of The Identities Of Unsuccessful Candidates
                For United States Attorney Positions Will Not Serve The
                Public Interest. ...................................................................... 23

          C.     EOUSA Has Produced All Reasonably Segregable Information. ........... 25

CONCLUSION .................................................................................................. 26

## TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(s)**

*Am. Civil Liberties Union v. DOJ,*
265 F. Supp. 2d 20 (D.D.C. 2003) ............................................................. 5

*Am. Fed. of Gov't Employees v. Dep't of Commerce,*
632 F. Supp. 1272 (D.D.C. 1986) ............................................................. 17

*Armstrong v. Executive Office of the President,*
97 F.3d 575 (D.C. Cir. 1996) ............................................................. 18, 26

*\*Ass'n of Am. Physicians & Surgeons v. Clinton,*
997 F.2d 898 (D.C. Cir. 1993) ....................................................... 11, 12, 13

*Carter v. United States Dep't of Commerce* ............................................. 20

*Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
600 F. Supp. 114 (D.D.C. 1984) ............................................................. 14

*Coastal States Gas Corp. v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980) ................................................. 14, 15, 16, 17

*\*Core v. United States Postal Serv.,*
730 F.2d 946 (4th Cir. 1984) ................................................. 21, 22, 23, 26

*\*DOJ v. Reporters Comm. For Freedom Of The Press,*
489 U.S. 749 (1989) ..................................................................... passim

*Dep't of the Interior v. Klamath Water Uses Prot. Ass'n,*
532 U.S. 1 (2001) ............................................................................. 13

*FBI v. Abramson,*
456 U.S. 615 (1982) ........................................................................... 5

*Greenberg v. United States Dep't of Treasury,*
10 F. Supp. 2d 3, 11 (D.D.C. 1998) ............................................................6

*\*Holland v. CIA,*
1992 U.S. Dist. LEXIS 13196 (D.D.C. Aug. 31, 1992) ......................... 21, 22, 23, 26

*Horowitz v. Peace Corps,*
428 F.3d 271 (D.C. Cir. 2005) ............................................................. 21

*John Doe Agency v. John Doe Corp.,*
493 U.S. 146 (1989) ......................................................................................... 5

*\*Judicial Watch, Inc. v. DOJ,*
365 F.3d 1108 (D.C. Cir. 2004) ............................................... 7, 8, 12, 13

*Judicial Watch, Inc. v. Export-Import Bank,*
108 F. Supp. 2d 19 (D.D.C. 2000) ............................................................ 14

*Krikorian v. Dep't of State,*
984 F.2d 461 (D.C. Cir. 1993) .......................................................... 16, 17

*Lardner v. DOJ,*
2005 U.S. Dist. LEXIS 5465 (D.D.C. March 31, 2005)............................22

*Lepelletier v. FDIC,*
164 F.3d 37 (D.C. Cir. 1999) ........................................................... 19, 25

*Loving v. U.S. Dep't of Defense,*
496 F. Supp. 2d 101 (D.D.C. 2007) ....................................................... 6, 18

*Military Audit Project v. Casey,*
656 F.2d 724 (D.C. Cir. 1981) .................................................................. 6

*Nat'l Ass'n of Retired Fed. Employees v. Horner,*
879 F.2d 873 ........................................................................................ 20, 25

*N.L.R.B. v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975).................................................................................14

*Painting & Drywall Work Pres. Fund, Inc. v.*
*United States Dep't of House & Urban Dev.,*
936 F.3d 1300 (D.C. Cir. 1991) ............................................................... 21

*SafeCard Services, Inc. v. SEC,*
926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 6

*\*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997) ........................................................ passim

*United States Dep't of State v. Washington Post Co.,*
456 U.S. 595 (1982) ...................................................................... 19, 23

*United States Dep't of Defense v. Fed. Labor Relations Auth.*,
510 U.S. 487 (1994) ............................................................... 21, 23, 25

*United States v. Nixon*,
418 U.S. 683 (1974) ................................................................. 7

*Vaughn v. Rosen*,
523 F.2d 1136 (D.C. Cir. 1975) ................................................ 7

*Voinche v. FBI*,
940 F. Supp. 323 (D.D.C. 1996) ............................................... 23

## STATUTES

*5 U.S.C. § 552 ................................................................ passim

## OTHER

H.R. Rep. No. 1497, 89th Cong., 2d Sess. (1966),
*reprinted in* 1966 U.S.C.C.A.N. 2418............................................5

## INTRODUCTION

Plaintiff Democratic National Committee ("DNC") challenges the decisions of two components of Defendant United States Department of Justice ("DOJ") to withhold documents responsive to DNC's May 19, 2007 request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  In its request, DNC sought documents relating to certain communications between DOJ's senior leadership offices and the Republican National Committee, or any state or local Republican Party committee, concerning the United States Attorney Offices, and emails including the domain name "GWB43.com."  Based on the parties' agreement, the only issues to be decided in this motion are the DOJ Office of Information and Privacy's ("OIP") decision to withhold sixty-eight pages of documents in full or in part under Exemption 5, 5 U.S.C. § 552(b)(5), based on the presidential communications and deliberative process privileges, and the DOJ Executive Office for United States Attorneys' ("EOUSA") decision to withhold five pages of documents in full or in part under Exemption 6, 5 U.S.C. § 552(b)(6), because disclosure would constitute a clearly unwarranted invasion of personal privacy.

Given the relevant legal standards, as the discussion below and accompanying Declarations of Melanie Ann Pustay and Dione Jackson Stearns demonstrate, the withholdings challenged by DNC plainly fall within the claimed exemptions to FOIA's disclosure requirements.  DOJ is thus entitled to summary judgment.

## BACKGROUND

On March 19, 2007, Governor Howard Dean, on behalf of DNC, made a FOIA request to OIP, which sought records within the Offices of the Attorney General ("OAG"), Deputy Attorney General ("ODAG"), and Associate Attorney General ("OAAG").  Declaration of Melanie Ann Pustay, Director of the Office of Information and Privacy, United States

Department of Justice ("Pustay Decl."), attached as Ex. 1, ¶ 4.  Specifically, DNC's request

sought:

> (a)    all documents in the possession, custody or control of the Office of the
> Attorney General, Office of the Deputy Attorney General and Office of the
> Associate Attorney General, prepared on or after November 1, 2004, constituting,
> reflecting or referring to communications to or from or to any officer or employee
> of the Republican National Committee or any state or local Republican Party
> committee, referring, relating to or discussing (1) any prospective or ongoing
> investigation or prosecution; (2) initiating any investigation or prosecution; or (3)
> the appointment or termination of any United States Attorney; or the performance,
> work or activity of any United States Attorney or Office of United States
> Attorney; and

> (b)    all e-mail messages in the possession, custody or control of the Office of
> the Attorney General, Office of the Deputy Attorney General and Office of the
> Associate Attorney General, sent on or after November 1, 2004, to or from any e-
> mail address including the domain name "GWB43.com."

*Id.* ¶ 4 & Ex. A.  The parties subsequently agreed to narrow DNC's request to searches of

records of current officials in OAG, ODAG, OAAG, and thirteen former officials in OAG and

ODAG.  *Id.* ¶ 9 & Ex. C.

OIP completed its searches by July 16, 2007, and identified 5337 pages of emails it had

to analyze "for responsiveness to [DNC]'s request, for duplicative e-mails, for necessary

consultations with or referrals to other Offices, and for the application of FOIA exemptions."

*Id.* ¶ 10.  This analysis lasted approximately four months.  *Id.* ¶¶ 11, 13, 15, 17, 18, 19 & Exs. D,

E, F, G, H, I.  During that time, OIP made five interim responses to DNC (on July 31, 2007,

August 31, 2007, October 19, 2007, October 31, 2007, and November 19, 2007), and its final

response on November 20, 2007, and determined to withhold numerous pages in full or in part

under Exemptions 2, 5, 6 and 7(C), 5 U.S.C. § 552(b)(2), (5), (6), (7)(C).  *Id.*; Joint

Stipulation ¶ 1 (dkt. no. 10).

OIP also referred for direct response to DNC six pages to EOUSA, two pages to the

United States Department of Defense ("DOD"), one hundred and thirteen pages to the United

States Department of Homeland Security ("DHS"), four pages to the United States Department of Health and Human Services ("HHS"), twenty-one pages to the United States Department of Interior ("DOI"), five pages to the United States Department of Labor ("DOL"), and three pages to the United States Office of Personnel Management ("OPM").  Joint Stipulation ¶ 2; Pustay Decl. ¶¶ 7, 12, 14, 16.  EOUSA released three pages with excisions made pursuant to Exemption 6, and withheld the other three pages in full pursuant to that exemption.  Joint Stipulation ¶ 2.  DOD released both pages referred to it with excisions made pursuant to Exemption 2 and Exemption 6.  *Id.*  DHS released fifty-two pages in full and sixty-one pages with excisions made pursuant to Exemption 2.  *Id.*  HHS released all four pages referred to it with excisions made pursuant to Exemption 2 and Exemption 6.  *Id.* DOI released all twenty-one pages referred to it with excisions made pursuant to Exemption 2.  *Id.*  DOL released all five pages referred to it with excisions made pursuant to Exemption 2 and Exemption 6.  *Id.*  And OPM released all three pages referred to it in full.  *Id.*

In addition to its final response on November 20, 2007, DOJ provided DNC with draft *Vaughn* indices from OIP, EOUSA, DOD, DHS, HHS, DOI and DOL, the agencies that withheld documents responsive to DNC's request in full or in part.  Nov. 16, 2007 Joint Meet & Confer Stmt. (dkt. 7); Nov. 19, 2007 Minute Order.  On December 20, 2007, DNC notified DOJ that it would not challenge OIP's searches for responsive documents, but identified specific withholdings made by OIP and EOUSA that it intended to challenge.  Nov. 26, 2007 Joint Meet & Confer Stmt. (dkt. 8); Nov. 27, 2007 Minute Order.  Upon further review of those withholdings, OIP determined that fourteen additional pages were appropriate for release without excisions, and twenty additional pages were appropriate for release with excisions made pursuant to Exemptions 2, 5 and 6.  Pustay Decl. ¶ 20 & Ex. J.  Accordingly, OIP made a supplemental

release of these pages on January 15, 2008. *Id.* Including the supplemental release, OIP

produced to DNC a total of 1134 pages in full and 624 pages in part, and withheld 1235 pages in

full.[1] *Id.* ¶ 22; Joint Stipulation ¶ 1. EOUSA also reviewed the withholdings identified by DNC,

but determined that a supplemental release was not appropriate. *Id.* Ex. J.

On January 24, 2008, the parties filed a Joint Stipulation with the Court setting forth the

only claims remaining for the Court to resolve. Dkt. No. 10. Pursuant to the parties' agreement,

DNC's claims are limited to the following:

1.       OIP's reliance on Exemption 5 on the basis of the presidential communications

privilege as grounds for the nondisclosure of documents and portions of documents listed in

Document Group Nos. 3, 6, 21, and 26 in OIP's *Vaughn* index (Pustay Decl. Ex. K);

2.       OIP's reliance on Exemption 5 on the basis of the deliberative process privilege

as grounds for the nondisclosure of documents and portions of documents listed in Document

Group Nos. 3, 6, 21, 25, 26, and 28 in OIP's *Vaughn* index; and

3.       EOUSA's reliance on Exemption 6 as grounds for the nondisclosure of

documents and portions of documents listed as Document Nos. 2-5 in EOUSA's *Vaughn* index

(Ex. C to Declaration of Dione Jackson Stearns, Attorney-Advisor, Executive Office for United

States Attorneys, United States Department of Justice ("Stearns Decl."), attached as Ex. 2).

Joint Stipulation ¶ 10. Accordingly, the only remaining issues in this litigation, and which are

addressed in this memorandum, are OIP's decision to withhold sixty-eight pages of documents in

full or in part pursuant to Exemption 5, and EOUSA's decision to withhold five pages of

documents in full or in part pursuant to Exemption 6. Joint Stipulation ¶ 10; *see also*

---

[1] The remaining pages out of the 5337 identified by OIP during its search in response to
DNC's request included duplicative and non-responsive emails, emails referred to other offices
for direct response to DNC, and emails not processed by OIP as described in OIP's interim
responses. Pustay Decl. ¶¶ 11, 13, 15, 17, 18, 19, 20 & Exs. D, E, F, G, H, I, J.

Pustay Decl. ¶ 22; Stearns Decl. ¶ 5. This memorandum discusses the specific documents at issue in detail below.

**ARGUMENT**

**I.**    <u>**STANDARD OF REVIEW**</u>

FOIA's "fundamental principle" is "public access to Government documents." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). "Congress realized," however, "that legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). Congress thus designed FOIA to achieve a " 'workable balance between the right to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.' " *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *see also Am. Civil Liberties Union v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (Huvelle, J.) ("FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole.").

To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exemptions. 5 U.S.C. § 552(b); *John Doe Agency*, 493 U.S. at 152-53. While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152. The Government bears the burden of proving that information it withholds falls within the exemption it invokes, and the Court reviews *de novo*

challenges to the Government's withholdings.  5 U.S.C. § 552(a)(4)(B); *DOJ v. Reporters Comm. For Freedom Of The Press*, 489 U.S. 749, 755 (1989).

The Court may grant summary judgment to the Government in a FOIA case where, as here, the " 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.' " *Loving v. U.S. Dep't of Defense*, 496 F. Supp. 2d 101, 106 (D.D.C. 2007) (Huvelle, J.) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998) (citation omitted)).  The Government may carry its burden, and the Court may grant summary judgment, based on information provided by the Government in declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), and such declarations are presumed in good faith.  *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see also id.* (declarations must be "sufficiently detailed and non-conclusory" to support Government's FOIA decisions).

These standards of review, combined with the discussion below and accompanying declarations of Ms. Pustay and Ms. Stearns, demonstrate that the Government is entitled to summary judgment because it has discharged its statutory obligations under FOIA.

## II.     OIP PROPERLY WITHHELD DOCUMENTS AND PORTIONS OF DOCUMENTS PURSUANT TO EXEMPTION 5.

Exemption 5 permits an agency to withhold from the public "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption protects "against disclosure

those documents normally privileged in the civil discovery context," and encompasses both the presidential communications and deliberative process privileges. *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

DNC challenges OIP's withholding of forty-six pages of documents in full pursuant to Exemption 5, presidential communications privilege, and twenty-eight of those pages in part pursuant to Exemption 5, deliberative process privilege, which are listed in Groups 3, 6, 21 and 26 in OIP's *Vaughn* index, and a one-page document in part pursuant to Exemption 5, presidential communications and deliberative process privileges, which is listed in Group 6 in OIP's *Vaughn* Index. Pustay Decl. ¶¶ 23, 25 & Ex. K. DNC also challenges OIP's withholding of twenty-one pages in part pursuant to Exemption 5, deliberative process privilege only, which are listed in Groups 3, 25 and 28. *Id.* ¶¶ 23, 25 & Ex. K. Thus, DNC challenges a total of sixty-eight pages of documents that OIP withheld in full or in part under Exemption 5.

The attached declaration of Ms. Pustay describes in detail the materials withheld by OIP and the factual predicates for the withholdings, and, as discussed more fully below, demonstrates the propriety of the withholdings.

### A.    OIP Properly Relied On Exemption 5, Presidential Communications Privilege, To Withhold Documents And Portions Of Documents Listed In Its *Vaughn* Index In Groups 3, 6, 21 and 26.

The Supreme Court has recognized a "presumptive privilege for Presidential communications" that is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974). This privilege protects the "President's need for confidentiality in the communications of his office" so that he may "effectively and faithfully carry out his Article II duties and []
protect the effectiveness of the executive decision-making process." *Judicial Watch*, 365 F.3d at 1115 (D.C. Cir. 2004) (internal quotation marks and citations omitted).

Thus, unlike the "closely affiliated" deliberative process privilege that applies to all executive branch officials, the presidential communications privilege is specific to the President and "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997).  The presidential communications privilege thus is broader than the deliberative process privilege and providers greater protection against disclosure. *Judicial Watch*, 365 at 1114; *In re Sealed Case*, 121 F. 3d 729, 746 (D.C. Cir. 1997).  Accordingly, if the Court determines that any of the contested documents fall within the presidential communications privilege, it need not determine whether the documents also qualify for the deliberative process privilege. *In re Sealed Case*, 121 F. 3d at 758.

Importantly, the presidential communications privilege applies "specifically to decisionmaking of the President," *id.* at 745, and extends "beyond communications directly involving and documents actually viewed by the President[] to the communications and documents of the President's immediate White House advisers and their staffs." *Judicial Watch*, 365 F. 3d at 1114.  The privilege, in particular, protects communications "authored or solicited and received" by immediate White House advisers and their staff "who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *In re Sealed Case*, 121 F.3d at 752; *see also Judicial Watch*, 365 F.3d at 1114-16.  This extension of the privilege "down the chain of command" is warranted given "the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber, informed by honest advice and full knowledge," and "to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources." *In re Sealed Case*, 121 F.3d at 749-50, 752.

OIP withheld three pages from Group 3, two pages from Group 21, and twenty-three pages from Group 26, which involve information "authored or solicited and received" by White House advisers regarding the Executive Branch's response to the scheduling of a Congressional hearing and the President's power of appointment of United States Attorneys. Specifically, the three-page email chain listed in Group 3 consists of an email from "a White House adviser to Department officials regarding an upcoming Congressional hearing on the Federal Bureau of Investigation's operations in Puerto Rico, and [forwards] an email about the hearing." Pustay Decl. ¶ 39 & Ex. K. The presidential adviser "provides an assessment of the subject of the hearing and suggestions for the Executive Branch's response to the scheduling of the hearing, and directly solicits the Department's assistance with handling the Executive Branch's response to the scheduling of the hearing." *Id.* The two-page email chain in Group 21 consists of a "discussion between Department officials and White House advisers in which [DOJ] assists the White House with establishing the process for selecting a new United States Attorney." *Id.* ¶ 41. In particular, the officials in the emails discuss "how potential candidates for nomination will be identified and then outline the process to be used when selecting candidates for nomination." *Id.* Finally, the twenty-three pages of emails in Group 26 consist of a discussion "between White House advisers and Department officials," in which the officials have a "back-and-forth dialogue on hiring issues and background information on candidates, including the impending appointment of a United States Attorney, source and status of candidates, status of vacancies, and expected vacancies." *Id.* ¶ 42.

The type of White House information gathering reflected in Groups 3, 21 and 26 falls squarely within the presidential communications privilege, as the Court of Appeals made clear in *In re Sealed Case*:

> Presidential advisers do not explore alternatives only in conversations with the President or pull their final advice to him out of thin air—if they do, their advice is not likely to be worth much.  Rather, the most valuable advisers will investigate the factual context of a problem in detail, obtain input from all others with significant expertise in the area, and perform detailed analysis of several different policy options before coming to closure on a recommendation for the Chief Executive.  The President himself must make decisions relying substantially, if not entirely, on the information and analysis supplied by advisers.

121 F.3d at 750.  White House advisers must be able to protect their "sources of information," otherwise, these advisers "may be tempted to forego obtaining comprehensive briefings or initiating deep and intense probing for fear of losing deniability."  *Id.* Here, the withheld emails all "pertain to presidential decisionmaking functions, including the Executive Branch's response to the scheduling of a Congressional hearing, appointments of United States Attorneys, and other political appointments," and "directly solicit advice from the Department of Justice regarding certain specific issues in these three realms, or comprise discussions between the Department and the White House with regard to these presidential decisionmaking functions."  Pustay Decl. ¶ 38.  Moreover, emails in Groups 21 and 26 involve the "quintessential and non-delegable Presidential power" of appointing United States Attorneys, which provides further "assurance that even if the President were not a party to the communications, … these communications nonetheless are intimately connected to his presidential decisionmaking."  *In re Sealed Case*, 121 F.3d at 752-53.  Thus, the information contained in the withheld emails in Groups 3, 21 and 26 can be fairly said to have been "authored or solicited and received" by immediate White House advisers or their staff for purposes of a presidential decision, and properly protected under the presidential

communications privilege to give presidential advisers "sufficient elbow" room to operate.  *In re Sealed Case*, 121 F.3d at 752.

OIP also withheld eighteen pages in full in Group 6 regarding meetings of the Judicial Selection Committee ("JSC"), which "advise of dates, times, and locations of upcoming JSC meetings, cancellations of meetings, and a list of the participants."  Pustay Decl. ¶ 40.  In addition, OIP withheld in part a one-page document that "protect[s] the name of a JSC member and a proposed plan of action regarding the recommendation of candidates for United States Attorney from the selection commission in Los Angeles, which stem[s] from the JSC's prior meeting."  *Id.*  The "JSC is a select group of presidential advisers which includes members of the Office of Counsel to the President and certain Department of Justice officials."  *Id.*  The group "forms recommendations on nominations for federal judges, United States Attorneys, Sentencing Commission members, and similar appointments and provides these recommendations to the President."  *Id.*

Application of the presidential communications privilege to JSC communications is similar to the Court of Appeals recognition of that privilege's application to a task force established by the President in *Association of American Physicians and Surgeons v. Clinton*, 997 F.2d 898, 908-11 (D.C. Cir. 1993) ("*AAPS*").  In *AAPS*, the plaintiff sought to enjoin President Clinton's Task Force on National Health Care Reform and its subgroups from meeting unless they complied with the Federal Advisory Committee Act ("FACA"), which includes various disclosure obligations.  997 F.2d at 900-04.  In holding that FACA's exemption for advisory groups composed solely of officers or employees of the Government applied to the Task Force, even though it was chaired by the First Lady, the Court of Appeals stated that application of FACA to the Task Force would raise Article II concerns because it might infringe on the

presidential communications privilege. *Id.* at 908-10. In particular, application of FACA "would interfere with the President's capacity to solicit direct advice on *any* subject related to his duties from a group" he sets up "in an informal or formal fashion," including the Task Force he formed of "his closest advisers—cabinet secretaries, White House advisers, and his wife—to advise him on a domestic issue he considers of the utmost importance." *Id.* at 908-09. The court never ruled upon the scope of the presidential communications privilege, however, because it found "a strong argument" for exempting the Task Force based on FACA's statutory text. *Id.* at 905, 910-11.

Because JSC is a group "directly reporting and advising the President" and therefore " 'must have confidentiality at each stage in the formulation of advice to him,' " *In re Sealed Case*, 121 F.3d at 750 (quoting *AAPS*, 997 F.2d at 910), protection of JSC-related emails is appropriate under the presidential communications privilege. In other words, just as the Task Force in *AAPS* fell within the presidential communications privilege, *AAPS*, 997 F.2d at 909, so does "a select group of presidential advisers which includes members of the Office of Counsel to the President and certain Department of Justice officials" that provides recommendations to the President on matters for his ultimate decision. Pustay Decl. ¶ 40. And even if JSC is composed of some members outside of the White House Office, it still functions as "immediate White House advisers" for purposes of the presidential privilege where its communications "occur[] in conjunction with the process of advising the President," *In re Sealed Case*, 121 F.3d at 752 (discussing "dual hat" advisers), and therefore its communications are quite unlike the internal DOJ communications (involving the Offices of the Deputy Attorney General and the Pardon Attorney) found not to fall within the privilege in *Judicial Watch*. *Judicial Watch*, 365 F.3d at 1119-20.

Moreover, "given the nature of advice JSC provides directly to the President, revealing the identities of members, meeting times, etc., of the JSC would likely reveal an aspect of the President's deliberations on the matters under discussion." Pustay Decl. ¶ 40. The presidential communications privilege specifically protects the ability of White House advisers "to hold [such] confidential meetings to discuss advice they secretly will render to the President." *AAPS*, 997 at 909; *cf. In re Sealed Case*, 121 F.3d at 750 ("Knowledge of factual information gathered by presidential advisers can quickly reveal the nature and substance of the issues before the President"); *id.* at 745 (presidential communications applies to factual material). OIP thus properly withheld this information pursuant to Exemption 5 and the presidential communications privilege.

### B.     OIP Properly Relied On Exemption 5, Deliberative Process Privilege, To Withhold Portions Of Documents Listed In OIP's *Vaughn* Index In Groups 3, 6, 21, 25, 26 and 28.

The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents containing deliberations that are part of the process by which governmental decisions are formulated. *In re Sealed Case*, 121 F.3d at 737, 745. As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

*Dep't of the Interior v. Klamath Water Uses Prot. Ass'n*, 532 U.S. 1, 8-9 (2001) (internal quotation marks and citations omitted). The privilege, therefore, "rests on the policy of protecting the decision making processes of government agencies … with the ultimate purpose being to prevent injury to the quality of agency decisions." *Judicial Watch*, 365 F.3d at 1113 (internal quotation marks, alteration and citation omitted).

The privilege applies to documents that are both "predecisional," i.e., "generated before the adoption of an agency policy," and "deliberative," i.e., "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also In re Sealed Case*, 121 F.3d at 737. The privilege "thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citation omitted). In addition, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes … 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.' " *Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions.' " *Id.* (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975))

As described above, *supra* p. 7, OIP withheld twenty-eight pages in full pursuant to Exemption 5, presidential communications privilege, and in part pursuant to Exemption 5, deliberative process privilege, which are listed in Groups 3, 21 and 26 in OIP's *Vaughn* index, and a one-page document in part under the presidential communications and deliberative process privileges, which is listed in Group 6 in OIP's *Vaughn* Index. Pustay Decl. ¶¶ 23, 25 & Ex. K. Each of these documents fits easily within the deliberative process prong of Exemption 5. First, they are all "predecisional," because they were "generated before the adoption of an agency

policy." *Coastal States*, 617 F.2d at 866.  The three-page email chain in Group 3 includes "suggestions" about responding to the scheduling of an upcoming Congressional hearing, Pustay Decl. ¶ 30, and, therefore, these "suggestions" were antecedent to the Executive Branch's adoption of a final plan for responding to the hearing.  The one-page email in Group 6 involved a "proposed plan of action regarding the recommendation of candidates for United States Attorney," *id.* ¶ 31, which necessarily took place before a final decision to nominate the United States Attorney occurred.  And similarly, the two-pages in Group 21 and twenty-three pages in Group 26 involved discussions about the process for selecting United States Attorneys, and other matters about the appointment of such United States Attorneys, *id.* ¶¶ 32, 34, which must have occurred before a final decision to nominate.

Second, each of the emails are "deliberative," because they "reflect[] the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.  Indeed, the "assessment" and "suggestions" in the three-page email chain in Group 3, "proposed plan of action" in Group 6, and the discussions about the process for selecting United States Attorneys and other matters about the appointment of such United States Attorneys in Groups 21 and 26, Pustay Decl. ¶¶ 30-32, 34, are paradigmatic examples of communications protected by the deliberative process privilege because they reflect the give-and-take between employees in coming up with the final decision of how to respond to the scheduling of a Congressional hearing or who to appoint into certain political positions.  *See Coastal States*, 617 F.2d at 866 (deliberative process privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency").

In addition to documents withheld pursuant to Exemption 5, presidential communications and deliberative process privileges, OIP also withheld twenty-one pages in part pursuant to Exemption 5, deliberative process privilege only, which are listed in Groups 3, 25 and 28. Pustay Decl. ¶¶ 23, 25 & Ex. K.  These documents also fit easily within the deliberative process privilege.  The two-page email chain in Group 3 is "an internal discussion among White House advisers" comprised of "back-and-forth e-mails which seek to apprise White House advisers about the inquiry [from a state Attorney General], resolve who is best suited to handle the matter, and includes a suggestion relevant to responding to the inquiry."  *Id.* ¶ 30.  Accordingly, the deliberations about who is the correct person to respond and how to respond to the inquiry took place before the White House made a final decision and responded to the inquiry.  *See Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (deliberative process privilege protects "documents that in part discuss how the Department [of State] should respond to the reaction of some members of the public" to an article published by the Department).  Moreover, OIP properly withheld "the identities of the authors and recipients of the emails" after determining that "disclosure would reveal the thought-process of the individuals discussing the matter inasmuch as the e-mails are forwarded to those people whose areas of expertise are deemed potentially relevant to responding to the inquiry."  *Id.* ¶ 30; *see also In re Sealed Case*, 121 F.3d at 729 (purely factual material may be withheld under deliberative process privilege if "so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations").

OIP also withheld "suggested edits" to a statement regarding an interim United States Attorney contained in two e-mail chains in Group 25, but released the statement, because the suggested edits "reflect the author's predecisional recommendations on potential changes to the

statement." *Id.* ¶ 33.  Likewise, OIP withheld portions of emails "between a Department official and White House adviser discussing how to respond to a newspaper article about the replacement of a United States Attorney," because the withheld portions reflect "the authors' suggestions on how to respond to the article." *Id.*  OIP released the newspaper article. *Id.*  As with the emails discussed above, the "suggestions" in the Group 25 emails are paradigmatic examples of communications protected by the deliberative process privilege that "reflect the personal opinions of the writer[s]"—about how the statement should read and how the Executive Branch should respond to the newspaper article—"rather than the policy of the agency." *Coastal States*, 617 F.2d at 866; *see also Krikorian*, 984 F.2d at 466 (deliberative process privilege protects "documents that in part discuss how the Department [of State] should respond to the reaction of some members of the public" to an article published by the Department).

Finally, OIP withheld portions of thirteen pages of emails in Group 28 that discussed details about the hiring of an individual to work at DOJ, including "the interviewing process, the candidate's potential start date, placement of the candidate, and the authors' assessment of the merits of bringing the individual into the Department."  Pustay Decl. ¶ 35.  These are decisions in the "continuum of reflection and tentative decision-making" that makes up the hiring process, and therefore DOJ is "entitled to claim the deliberative process privilege throughout all but the last step." *Am. Fed. of Gov't Employees v. Dep't of Commerce*, 632 F. Supp. 1272, 1276-77 (D.D.C. 1986).

    **C.**    **OIP Has Produced All Reasonably Segregable Information.**

Where records contain information that is exempt from disclosure, FOIA requires that "[a]ny reasonably segregable portion … shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  To demonstrate that it has

released all reasonably segregable information, the Government need only show "with reasonable specificity why the documents cannot be further segregated." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (internal quotation marks and citation omitted).

OIP "carefully reviewed each of the documents and determined whether there was any reasonably segregable, non-exempt information that could be disclosed." Pustay Decl. ¶ 36; *see also id.* ¶ 44 (OIP "specifically examined each e-mail to determine whether there was any reasonably segregable, non-exempt information that could be released to [DNC]"). Because the presidential communications privilege applies to documents in their entirety, *In re Sealed Case*, 121 F.3d at 745, OIP did not segregate the emails withheld in full under the presidential communications privilege and in part under the deliberative process privilege, which are listed in Groups 3, 21 and 26 of OIP's *Vaughn* index. Pustay Decl. ¶ 36. For the emails withheld in part under the deliberative process privilege only, and the one-page document in Group 6 withheld in part under both the presidential communications and deliberative process privileges, however, OIP released "all reasonably segregable non-exempt information" as described in Ms. Pustay's Declaration. *Id.* ¶¶ 30-31, 33, 35-36, 44. Accordingly, OIP has satisfied its burden of describing with "reasonable specificity" why those documents cannot be segregated further. *Armstrong*, 97 F.3d at 578; *see also Loving*, 496 F. Supp. 2d at 110 (holding that "the government's declaration and supporting material are sufficient to satisfy its burden to show with 'reasonable specificity' why the document cannot be segregated further," where declaration averred that agency had " 'released to plaintiff all material that could be reasonably segregated' ") (citations omitted).

### III.    EOUSA PROPERLY WITHHELD DOCUMENTS AND
###          PORTIONS OF DOCUMENTS PURSUANT TO EXEMPTION 6.

To protect the identities of unsuccessful candidates for United States Attorney positions, EOUSA relied on Exemption 6 to withhold in full two letters recommending specific candidates, which are listed as Document Nos. 2 and 3 in EOUSA's *Vaughn* index, and withhold the names of those candidates from two letters sent by EOUSA acknowledging receipt of the recommendation letters, which are listed as Document Nos. 4 and 5 in EOUSA's *Vaughn* index. Stearns Decl. ¶¶ 5, 7 & Ex. C; *see also* Joint Stipulation ¶ 10 (stating that DNC will only challenge EOUSA's withholdings as to Documents Nos. 2-5 listed in EOUSA's *Vaughn* index). Specifically, Document No. 2 is a letter recommending a candidate for United States Attorney for the Eastern District of Michigan, and Document No. 5 is a letter from EOUSA acknowledging receipt of that letter.  Stearns Decl. Ex. C.  Document No. 3 is a letter recommending a candidate for United States Attorney for the Northern District of West Virginia, and Document No. 4 is a letter from EOUSA acknowledging receipt of that letter.  *Id.*

Exemption 6 permits an agency to withhold information from "personnel and medical files and similar files" when the disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  As to the threshold requirement, "the Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citing *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *see also Washington Post Co.*, 456 U.S. at 600 (protection of an individual's right of privacy under Exemption 6 "surely was not intended to turn upon the label on the file which contains the damaging information").  The withheld information relating to specific candidates for United States Attorney positions plainly is "information that applies to a particular individual."  *Lepelletier*, 164 F.3d at 46.

- 19 -

Where, as here, the withheld information satisfy the threshold requirement, Exemption 6 requires the court to determine whether disclosure "would compromise a substantial, as opposed to *de minimis*, privacy interest." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989) ("*NARFE*"). If so, the court "must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Id.* Although the Government ordinarily has the burden of establishing that withheld information falls within the exemption it invokes, 5 U.S.C. § 552(a)(4)(B), a requester under Exemption 6 has the burden of demonstrating that disclosure serves the public interest. *See Carter v. United States Dep't of Commerce*, 830 F.2d 388, 390-92 & nn. 8, 13(D.C. Cir. 1987). Moreover, "whether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made" or "the identity of the requesting party." *Reporters Comm.*, 489 U.S. at 771.

As described below and in Ms. Stearns' Declaration, EOUSA properly weighed the relevant privacy and public interests in relying on Exemption 6 to withhold the names and other identifying information of unsuccessful candidates for United States Attorney positions. *See* Stearns Decl. ¶ 11 (describing the balancing test applied by EOUSA).

**A.    Unsuccessful Candidates For United States Attorney Positions Have Substantial Privacy Interests In Protecting Their Identity.**

The Supreme Court has rejected a "cramped notion of personal privacy," and instead has emphasized that privacy under FOIA "encompasses the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763; *see also id.* at 762 (privacy protected under FOIA includes "individual['s] interest in avoiding disclosure of personal

matters") (internal quotation marks and citation omitted).[2]  Thus, protected privacy interests

include "the prosaic (*e.g.*, place of birth and date of marriage) as well as the intimate and

potentially embarrassing."  *Painting & Drywall Work Pres. Fund, Inc. v. United States Dep't of

House & Urban Dev.*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).  Privacy is of particular importance

under FOIA because a FOIA-required disclosure is a disclosure to the public at large.

5 U.S.C. § 552(a)(3) (records must be made "available to any person"); *Painting & Drywall*, 936

F.2d at 1302 ("If [record] must be released to one requester, it must be released to all, regardless

of the uses to which it might be put.").

    In light of FOIA's broad protection of privacy, it is unsurprising, and well-settled, that

unsuccessful candidates for federal employment have significant privacy interests in protecting

their identity.  *See*, *e.g.*, *Core v. United States Postal Serv.*, 730 F.2d 946, 948-49 (4th Cir. 1984).

In *Core*, for example, the Fourth Circuit held that the Postal Service properly asserted

Exemption 6 to withhold the applications of unsuccessful candidates for Systems Architect

positions, because "disclosure may embarrass or harm applicants who failed to get a job."

*Id.* at 949.  And in *Holland v. CIA*, 1992 U.S. Dist. LEXIS 13196, *39-45 (D.D.C. Aug. 31,

1992), attached as Exhibit 3, Judge Revercomb relied on *Core* in holding that the CIA properly

asserted Exemption 6 to protect the identity of an unsuccessful candidate for the CIA's General

Counsel position, because the candidate had a "substantial privacy interest" in his "unsuccessful

---

    [2]  Although *Reporters Comm.* addressed Exemption 7(C), 5 U.S.C. § 552(7)(C), which
exempts from disclosure certain law enforcement information that "could reasonably be expected
to constitute an unwarranted invasion of personal privacy," and Exemption 6 exempts from
disclosure information that "would constitute a clearly unwarranted invasion of personal
privacy," the Supreme Court has held that the difference between the standards "is of little
import" except when evaluating the "magnitude of the public interest that is required to override
the respective privacy interests protected by the exemptions."  *United States Dep't of Defense v.
Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994).  Accordingly, the Supreme Court's
identification of the relevant privacy and public interests in *Reporters Comm.* applies to
Exemption 6.  *Id.*; *Horowitz v. Peace Corps*, 428 F.3d 271, 279 n.2 (D.C. Cir. 2005).

overture to the CIA both directly and through [former presidential adviser John J.] McCloy."

The Court thus approved the CIA's withholding of the candidate's name from all documents at

issue, and CIA's withholding in full of the candidate's résumé that he submitted to the CIA and a

four-page memorandum from the candidate to Mr. McCloy "discussing his interest in the

General Counsel position, summarizing his qualifications, and attaching his three-page resume."

*Id.* at *9-10, *43.  Moreover, the Court held that there was "no meaningful distinction" between

the privacy interests of the candidate for "a top legal job at the CIA" at issue in *Holland* and

candidates for low-level federal jobs at issue in *Core*.  *Id.* at *40-42.

EOUSA's withholding of the names of unsuccessful candidates for United States

Attorney positions, and other identifying information contained in letters recommending those

candidates, is encompassed by the broad concept of privacy protected under Exemption 6 and

fits squarely within the courts' reasoning in *Core* and *Holland*.  Because neither of the candidates

was nominated or waived their right to privacy, EOUSA determined that disclosure of the

candidates' identities "could subject" them "to embarrassment or speculation about [their] desire

to leave their current place of employment," and "could cause unsolicited and unnecessary

attention to be focused on the individuals and/or their family members."  Stearns Decl. ¶¶ 12-13

& Ex. C.  Thus, like the unsuccessful candidates in *Core* and *Holland*, the candidates for United

States Attorney positions have a substantial "interest in preserving [their] privacy regarding

'prospective employers,' 'employment agencies,' and 'other members of the public,' as well as

'present employers and 'co-workers,' learning about an unsuccessful application."  *Holland*,

1992 U.S. Dist. LEXIS 13196, at *41 (quoting *Core*, 730 F.2d at 948); *see also Core*, 730 F.2d at

949 ("disclosure may embarrass or harm applicants who failed to get a job"); *Lardner v. DOJ*,

2005 U.S. Dist. LEXIS 5465, at *60 n.29 (D.D.C. March 31, 2005) (distinguishing unsuccessful

pardon applicants' lack of a privacy interest under Exemption 6 at issue in the case from the "far different [] situation of a job applicant who might be injured in his employment prospects by disclosure that he applied for, but was denied, a job opportunity"). "Congress' primary purpose in enacting Exemption 6 was to protect individuals," such as the unsuccessful candidates here, "from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Washington Post Co.*, 456 U.S. at 599.

**B.    Disclosure Of The Identities Of Unsuccessful Candidates For
United States Attorney Positions Will Not Serve The Public Interest.**

In contrast to its broad interpretation of privacy interests protected under Exemption 6, the Supreme Court has sharply limited the public interest relevant to the Exemption 6 balancing test. "[T]he only relevant 'public interest in disclosure' to be weighed in [the Exemption 6] balance is the extent to which disclosure would serve the 'core purpose of FOIA,' which is 'contributing significantly to public understanding *of the operations or activities of the government*.' " *FLRA*, 510 U.S. at 495 (quoting *Reporters Comm.*, 489 U.S. at 775) (internal quotation marks omitted)). " 'Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's core] statutory purpose.' " *Id.* at 495-96 (quoting *Reporters Comm.*, 489 U.S. at 773).

In *Core*, the Fourth Circuit held that "the public interest in learning the qualifications of people who were not selected to conduct the public's business is slight. Disclosure of the qualifications of people who were not appointed is unnecessary for the public to evaluate the competence of people who were appointed." 730 F.2d at 949. Likewise, in *Holland*, the Court held that the requester's articulated public interest in understanding how the CIA's network for identifying talent works was "insubstantial" to justify release of the unsuccessful candidate's identifying information. 1992 U.S. Dist. LEXIS, at *44-45. Because the CIA had already

- 23 -

released the fact that Mr. McCloy had sponsored an associate of his law firm for the General

Counsel position, revealing the candidate's name or other identifying information, even if it

might "further illuminate this 'network,' " could not outweigh the candidate's significant privacy

interest. *Id.* at *45; *see also Voinche v. FBI*, 940 F. Supp. 323, 329 (D.D.C. 1996) (upholding

agency's Exemption 6 assertion to protect "the names and identifying features of individuals"

who were candidates for United States Supreme Court vacancies because disclosure "would

serve no articulable public interest"), *aff'd per curiam* 1997 U.S. App. LEXIS 19089 (D.C. Cir.

June 19, 1997) (unpublished opinion).

Although DNC stated in its FOIA request that it sought various records because, among

other things, it was "concerned about the widening scandal involving improper and potentially

unlawful attempts … to influence the hiring and firing of U.S. Attorneys for partisan political

reasons," Pustay Decl. Ex. A, disclosure of names or other identifying information of the

unsuccessful candidates at issue here reveals nothing about any federal agency's conduct.

Stearns Decl. ¶ 13.  To put it differently, information about *who* was recommended but *not*

selected for United States Attorney positions does not open DOJ's or any other federal agency's

activities "to the sharp eye of public scrutiny," which is the only relevant public interest under

Exemption 6, but rather is "information about *private citizens* that happens to be in the

warehouse of the Government," which is not required to be disclosed under FOIA.  *Reporters*

*Comm.*, 489 U.S. at 749; *see also  id.* at 773 (FOIA's core purpose "is not fostered by disclosure

of information about private citizens that is accumulated in various governmental files but that

reveals little or nothing about an agency's own conduct").  Simply put, the "disclosure of records

regarding private citizens, identifiable by name, is not what the framers of the FOIA had in

mind."  *Reporters Comm.*, 489 U.S. at 765.

Where there is no public interest in disclosure, as in this case, the Court need not "linger over the balance" because "something, even a modest privacy interest, outweighs nothing every time." *NARFE*, 879 F.2d at 879; *see also FLRA*, 510 U.S. at 500 ("a very slight privacy interest would suffice to outweigh" a "virtually non-existent FOIA-related public interest in disclosure"); *Lepelletier*, 164 F.3d at 48 ("this court has stated that a slight privacy interest outweighs no public interest") (citing *NARFE*, 879 F.3d at 879). But even if there is some public interest, disclosure of the names and other identifying information of unsuccessful candidates for United States Attorney positions would "clearly" be an "unwarranted invasion" of those candidates' substantial privacy interests.

## C.    EOUSA Has Produced All Reasonably Segregable Information.

EOUSA has produced all reasonably segregable information. Specifically, EOUSA reviewed "[e]ach document, and each page contained in each document," for segregability. Stearns Decl. ¶ 15. Based on this review, EOUSA withheld two recommendation letters in full "because the names and identifying information contained in th[ose] documents are inextricably interwoven with the textual summary of the documents and are so descriptive that the unsuccessful candidates could be identified even if their names were redacted from the documents." *Id.* ¶ 14. EOUSA thus determined that "no meaningful portions could reasonably be released without destroying the integrity of such documents as a whole." *Id.* ¶ 15.

The Supreme Court has recognized "the potential invasion of privacy through later recognition of identifying details," where only a name is redacted, but the person's identity is still discernable to some persons familiar with certain details of the person's record. *Reporters Comm.*, 489 U.S. at 768-69. Here, EOUSA has described with "reasonable specificity" that factual portions of the two recommendation letters cannot be segregated because doing so might

reveal the identity of the unsuccessful candidates. *Armstrong*, 97 F.3d at 578; *see also*

5 U.S.C. § 552(b). Thus, EOUSA's determination must be upheld. *See Core*, 730 F.2d at 948

("Even if their names were deleted, the applications generally would provide sufficient

information for interested persons to identify them with little investigation."); *Holland*, 1992

U.S. Dist. LEXIS, at *43 (public could easily "match up employment history, schooling,

accomplishments, and other resume matter found there to indirectly identify the candidate" if

candidate's resume or memo discussing his interest in the General Counsel position and

summarizing his qualifications were disclosed).

　　　　Because EOUSA has properly withheld the names of unsuccessful candidates from

Document Nos. 4-5, has properly withheld Document Nos. 2-3 in full, and has released all

reasonably segregable information not protected by a FOIA exemption, DOJ is entitled to

summary judgment on the challenged Exemption 6 withholdings.

## CONCLUSION

　　　　For the foregoing reasons, Defendant respectfully requests that this Court grant its

Motion for Summary Judgment.

Date:  January 24, 2008                          Respectfully submitted,

                                                 JEFFREY S. BUCHOLTZ
                                                 Acting Assistant Attorney General

                                                 JEFFREY A. TAYLOR
                                                 United States Attorney

                                                 ELIZABETH J. SHAPIRO
                                                 Assistant Director
                                                 Federal Programs Branch

                                                 ___/s/  Nicholas A. Oldham_____
                                                 Nicholas A. Oldham (D.C. Bar No. 484113)
                                                 Trial Attorney
                                                 U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 Mailing Address
                                                 P.O. Box 883
                                                 Washington, D.C.  20044
                                                 Delivery Address
                                                 20 Massachusetts Ave., N.W.
                                                 Washington, D.C.  20001
                                                 Tel: (202) 514-3367
                                                 Fax: (202) 616-8470
                                                 nicholas.oldham@usdoj.gov

                                                 Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 07-712 (ESH) |

**DEFENDANT'S STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Rule 56.1 of the Rules of the United States District Court for the District of

Columbia, Defendant United States Department of Justice, by undersigned counsel, respectfully

submit the following statement of material facts as to which there is no genuine issue.

1.      On March 19, 2007, Governor Howard Dean, on behalf of the Plaintiff

Democratic National Committee, made request under the Freedom of Information Act,

5 U.S.C. § 552, as amended, to the United States Department of Justice, Office of Information

and Privacy ("OIP"), which sought records within the Offices of the Attorney General ("OAG"),

Deputy Attorney General ("ODAG"), and Associate Attorney General ("OAAG").  *See*

Declaration of Melanie Ann Pustay, Director of the Office of Information and Privacy, United

States Department of Justice ("Pustay Decl."), attached as Ex. 1 to the accompanying

Memorandum of Points and Authorities in Support of Defendant's Motion for Summary

Judgment, ¶ 4 ("Def.'s Br.").  DNC's request specifically sought:

(a)      all documents in the possession, custody or control of the Office of the
Attorney General, Office of the Deputy Attorney General and Office of the
Associate Attorney General, prepared on or after November 1, 2004, constituting,

reflecting or referring to communications to or from or to any officer or employee of the Republican National Committee or any state or local Republican Party committee, referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or the performance, work or activity of any United States Attorney or Office of United States Attorney; and

(b)     all e-mail messages in the possession, custody or control of the Office of the Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, sent on or after November 1, 2004, to or from any e-mail address including the domain name "GWB43.com."

*Id.* ¶ 4 & Ex. A.

2.     The parties subsequently agreed to narrow DNC's request to searches of records of current officials in OAG, ODAG, OAAG, and thirteen former officials in OAG and ODAG. Pustay Decl. ¶ 9 & Ex. C.

3.     In response to DNC's request, OIP produced (i) 1134 pages in full and (ii) 624 pages with excisions, and withheld 1235 pages in full.  Joint Stipulation ¶ 1 (dkt. no. 10).

4.     Also in response to DNC's request, OIP referred for direct response to DNC six pages to the United States Department of Justice, Executive Office for United States Attorneys ("EOUSA"), two pages to the United States Department of Defense ("DOD"), one hundred and thirteen pages to the United States Department of Homeland Security ("DHS"), four pages to the United States Department of Health and Human Services ("HHS"), twenty-one pages to the United States Department of Interior ("DOI"), five pages to the United States Department of Labor ("DOL"), and three pages to the United States Office of Personnel Management ("OPM"). Joint Stipulation ¶ 2.  EOUSA released three pages with excisions made pursuant to Exemption 6, 5 U.S.C. § 552(b)(6), and withheld the other three pages in full pursuant to Exemption 6.  *Id.* DOD released both pages referred to it with excisions made pursuant to Exemption 2, 5 U.S.C. § 552(b)(2), and Exemption 6.  *Id.*  DHS released fifty-two pages in full and sixty-one

pages with excisions made pursuant to Exemption 2.  *Id.*  HHS released all four pages referred to it with excisions made pursuant to Exemption 2 and Exemption 6.  *Id.* DOI released all twenty-one pages referred to it with excisions made pursuant to Exemption 2.  *Id.*  DOL released all five pages referred to it with excisions made pursuant to Exemption 2 and Exemption 6.  *Id.*  And OPM released all three pages referred to it in full.  *Id.*

5.    Based on the parties' stipulation, DNC is challenging only (i) OIP's reliance on Exemption 5, 5 U.S.C. § 552(b)(5), on the basis of the presidential communications privilege as grounds for the nondisclosure of documents and portions of documents listed in Document Group Nos. 3, 6, 21 and 26 in OIP's *Vaughn* index, which is attached as Exhibit K to the Pustay Decl.; (ii) OIP's reliance on Exemption 5 on the basis of the deliberative process privilege as grounds for the nondisclosure of documents and portions of documents listed in Document Group Nos. 3, 6, 21, 25, 26 and 28 in OIP's *Vaughn* index; and (iii) EOUSA's reliance on Exemption 6 as grounds for the nondisclosure of documents and portions of documents listed as Document Nos. 2-5 in EOUSA's *Vaughn* index, which is attached as Exhibit C to the Declaration of Dione Jackson Stearns, Attorney-Advisor, Executive Office for United States Attorneys, United States Department of Justice ("Stearns Decl."), which is attached as Exhibit  2 to Def.'s Br.  In total, DNC is challenging OIP's withholding of sixty-eight pages of documents in full or in part under Exemption 5, and EOUSA's withholding of five pages of documents in full or in part under Exemption 6.  Pustay Decl. ¶¶ 22, 25; Stearns Decl. ¶¶ 5, 7.

6.    The bases for the withholdings made by OIP that DNC challenges is adequately explained in the Declaration of Melanie Ann Pustay and OIP's *Vaughn* index.  Pustay Decl. & Ex. K.

7.     The bases for the withholdings made by EOUSA that DNC challenges is

adequately explained in the Declaration of Dione Jackson Stearns and EOUSA's *Vaughn* index.

Stearns Decl. & Ex. C.

Date:  January 24, 2008                          Respectfully submitted,

                                                 JEFFREY S. BUCHOLTZ
                                                 Acting Assistant Attorney General

                                                 JEFFREY A. TAYLOR
                                                 United States Attorney

                                                 ELIZABETH J. SHAPIRO
                                                 Assistant Director
                                                 Federal Programs Branch

                                                    /s/  Nicholas A. Oldham
                                                 Nicholas A. Oldham (D.C. Bar No. 484113)
                                                 Trial Attorney
                                                 U.S. Department of Justice
                                                 Civil Division, Federal Programs Branch
                                                 Mailing Address
                                                 P.O. Box 883
                                                 Washington, D.C.  20044
                                                 Delivery Address
                                                 20 Massachusetts Ave., N.W.
                                                 Washington, D.C.  20001
                                                 Tel: (202) 514-3367
                                                 Fax: (202) 616-8470
                                                 nicholas.oldham@usdoj.gov

                                                 Attorneys for Defendant

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Democratic National Committee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-712 (ESH) |
| | ) | |
| United States Department of Justice, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MELANIE ANN PUSTAY

I, Melanie Ann Pustay, declare the following to be true and correct:

1) I am the Director of the Office of Information and Privacy (OIP), United States Department of Justice. In this capacity, I am responsible for overseeing the actions of the Initial Request (IR) Staff. The IR Staff is responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice, including the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, in response to requests made under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004). The IR Staff determines whether records responsive to access requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with other components within the Department of Justice as well as with other Executive Branch agencies.

2) I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties.

1

3) This declaration describes the actions taken to complete the processing of plaintiff's request since its receipt on March 26, 2007, and addresses the basis for withholding certain documents pursuant to Exemption 5 of the FOIA.[1]

<u>OIP's Processing of Plaintiff's Request</u>

4) By letter dated March 19, 2007, Governor Howard Dean, on behalf of plaintiff Democratic National Committee, submitted a FOIA request to the Department of Justice, OIP, for records of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General prepared on or after November 1, 2004, "constituting, reflecting or referring to communications to or from or to any officer or employee of the Republican National Committee or any state or local Republican Party committee, referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney." Plaintiff also requested "all e-mail messages in the possession[,] custody or control of the Office of Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, sent on or after November 1, 2004, to or from any e-mail address including the domain name "'GWB43.com.'" Plaintiff's request was received by OIP on March 26, 2007. (A copy of plaintiff's request is attached hereto as Exhibit A.)

5) On April 5, 2007, OIP initiated a search of the electronic database of the Departmental Executive Secretariat, which is the official records repository of the Offices of the Attorney

---

[1] As discussed in more detail below, pursuant to the parties' Joint Stipulation of January 24, 2008, plaintiff has only challenged OIP withholdings made pursuant to Exemption 5 (deliberative process and presidential communications

General, Deputy Attorney General, and Associate Attorney General. The Departmental

Executive Secretariat is responsible for tracking certain incoming and outgoing correspondence

for the Department.

5) By letter dated April 23, 2007, OIP acknowledged receipt of plaintiff's request on

behalf of the Offices of the Attorney General, Deputy Attorney General and Associate Attorney

General, and informed plaintiff that because the records it sought required searches in other

offices, OIP staff would be unable to comply with the twenty-working-day time limit as well as

the ten additional days provided by the statute for the processing of FOIA requests. In an effort

to speed up OIP's records searches, OIP offered plaintiff the opportunity to narrow the scope of

its request to limit the number of potentially responsive records. (A copy of OIP's April 23,

2007 letter is attached hereto as Exhibit B.)

6) In its initial request letter, plaintiff specifically sought records maintained by the

Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

Accordingly, by memoranda dated May 2, 2007, OIP initiated searches in those offices for

records responsive to plaintiff's request.

7) On May 6, 2007, OIP completed its search of the electronic database of the

Departmental Executive Secretariat. Pursuant to this search, four responsive documents, totaling

five pages, were located. Because these documents were determined to be of primary interest to

the Executive Office for United States Attorneys (EOUSA), on July 3, 2007 OIP referred the

---

privileges) in six distinct groups. This declaration only addresses the documents presently at issue.

documents to EOUSA for processing and direct response to the plaintiff.

8) In order to facilitate the process of searching for e-mails responsive to plaintiff's FOIA request, on May 23, 2007 certain OIP staff were granted access to the Enterprise Vaults (EV Vaults) created to archive e-mails of current and former officials in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General. The EV Vault maintains e-mails of certain current and former employees in the senior leadership offices of the Department. Searches of the EV Vaults were initiated on May 23, 2007 for responsive e-mails of current officials of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General who had informed OIP that they maintained potentially responsive material, as well as for certain former staff of those Offices. Searches of the EV Vaults were conducted using the EV Vault search application, which allowed OIP to search various text fields of the archived e-mails for any given term. To capture all potentially responsive records, OIP searched all fields of the archived e-mails (including subject, author, recipient, content, and attachments) using the term "gwb43."

9) Pursuant to an agreement reached with OIP's counsel, plaintiff agreed to limit the scope of OIP's records searches to the records of specific custodians. Specifically, plaintiff agreed that OIP would search the records of current officials in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, as well as the records of thirteen former officials in the Offices of the Attorney General and Deputy Attorney General. On June 7, 2007, OIP's counsel confirmed this agreement in a letter to counsel for plaintiff. (Counsel's June 7, 2007 letter is attached hereto as Exhibit C.)

4

10) By July 16, 2007 all searches initiated pursuant to plaintiff's FOIA request were completed, and 5337 pages of e-mails were located. OIP then commenced analysis of the records for responsiveness to plaintiff's request, for duplicative e-mails, for necessary consultations with or referrals to other Offices, and for the application of FOIA exemptions.

11) By letter dated July 31, 2007, OIP provided its first interim response to plaintiff, advising that its records searches had been completed. OIP informed plaintiff of its referral to EOUSA and stated that 5337 pages of responsive documents, consisting entirely of e-mail messages, had been located. OIP advised plaintiff that the 5337 pages of responsive records required consultations with other Department components and Executive Branch offices in accordance with Department regulations, and that we would respond to plaintiff again once those consultations were completed. (A copy of OIP's July 31, 2007 letter is attached hereto as Exhibit D.)

12) On August 30, 2007, OIP identified a one-page e-mail of primary interest to EOUSA, and referred that page to EOUSA for processing and direct response to the requester.

13) By letter dated August 31, 2007, OIP provided a second interim response to plaintiff. In this letter, OIP advised plaintiff that, upon further review of the documents, 286 pages of e-mails had been determined to be duplicative and therefore were not being processed. OIP also advised plaintiff that 1169 pages of e-mails of a purely personal nature were being withheld pursuant to Exemption 6 of the FOIA, which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.[2] In this letter,

---

[2] In addition, OIP advised plaintiff that we located 1047 pages of e-mails forwarding and discussing the resumes of private individuals seeking employment with the government. The resumes themselves were withheld pursuant to

OIP informed plaintiff of the second referral to EOUSA, and we advised that we were continuing to consult with other government entities regarding the disclosure of the remaining 2826 pages of e-mails. (A copy of OIP's August 31, 2007 letter is attached hereto as Exhibit E.)

14) On October 17, 2007, OIP referred 105 pages of e-mails to the Department of Homeland Security (DHS) and three pages of e-mails to the Office of Personnel Management (OPM) for processing and direct response to the plaintiff, upon determination that the e-mails were of primary interest to those government agencies.

15) By letter dated October 19, 2007, OIP provided a third interim response to plaintiff. In this letter, OIP informed plaintiff of the referrals to DHS and OPM and advised that an additional 165 pages of e-mails had been determined to be duplicative or non-responsive to the request and therefore were not being processed. In this response, OIP released in full 509 pages of e-mails for which consultations had been completed. OIP also released two pages of e-mails with excisions made pursuant to Exemption 6 of the FOIA. Additionally, OIP withheld sixteen pages of e-mails pursuant to the presidential communications privilege of Exemption 5 of the FOIA.[3] (A copy of OIP's October 19, 2007 letter is attached hereto as Exhibit F.)

16) On October 25, 2007, OIP identified additional material of primary interest to other government entities, and referred eight pages of e-mails to DHS, five pages of e-mails to the

---

Exemption 6 and OIP advised plaintiff that we assumed that the associated e-mails were not of interest to plaintiff. OIP also located nine pages of e-mails from a private individual raising concerns about the lowering of Environmental Protection Agency fines, which also appeared not to be of interest to plaintiff. OIP informed plaintiff that all of this material would be processed upon request; however, plaintiff did not so request and this material was therefore not processed.

[3] Upon subsequent review of this withheld material, OIP determined that two of the pages withheld in full in this interim response should be released. These pages were therefore released to plaintiff in OIP's November 20, 2007 final response, discussed in Paragraph 19 of this Declaration.

Department of Labor (DOL), twenty-one pages of e-mails to the Department of Interior (DOI), two pages of e-mails to the Department of Defense (DOD), and four pages of e-mails to the Department of Health and Human Services (HHS), for processing and direct response to the plaintiff.

17) By letter dated October 31, 2007, OIP provided a fourth interim response to plaintiff. In this interim response, OIP notified plaintiff of the referrals to DHS, DOL, DOI, DOD, and HHS and advised that consultations were completed on another forty-two pages of documents. OIP released to plaintiff forty-one pages of e-mails without excision, as well as a one-page e-mail with an excision made pursuant to Exemption 2 of the FOIA, which pertains to purely internal agency practices. (A copy of OIP's October 31, 2007 letter is attached hereto as Exhibit G.)

18) By letter dated November 19, 2007, OIP provided a fifth interim response to plaintiff. In this letter, OIP released 541 pages of e-mails without excision and 311 pages of e-mails with excisions made pursuant to Exemptions 2 and 6 of the FOIA. OIP also withheld in full thirteen pages of e-mails pursuant to Exemptions 2 and 6 of the FOIA. (A copy of OIP's November 19, 2007 letter is attached hereto as Exhibit H.)

19) By letter dated November 20, 2007, OIP made its final response to plaintiff. In this letter, OIP informed plaintiff that an additional 424 pages of e-mails had been determined to be duplicative or non-responsive to the request and therefore were not being processed. OIP released twenty-nine pages of e-mails without excision and 292 pages of e-mails with excisions made pursuant to Exemptions 2, 5, and 6 of the FOIA. OIP also withheld seventy pages of e-mails in full pursuant to the deliberative process and presidential communications privileges of

7

FOIA Exemption 5, and in part under Exemptions 2 and 6 of the FOIA, and a one page e-mail pursuant to Exemption 6 of the FOIA.[4]  (A copy of OIP's November 20, 2007 letter is attached hereto as Exhibit I.)

20)  On January 15, 2008, after further review of the material withheld from plaintiff OIP provided, through its counsel, a supplemental disclosure to plaintiff.  (A copy of counsel's January 15, 2008 letter is attached hereto as Exhibit J.)

21)  On January 24, 2008, pursuant to the parties' Joint Stipulation (dkt. 10), plaintiff agreed to limit its claims in this action to certain documents withheld by OIP on the basis of the deliberative process and presidential communications privileges of Exemption 5 of the FOIA.

22)  At this time, OIP's processing of plaintiff's FOIA request is completed, and seven responses have been made to plaintiff.  OIP has disclosed to plaintiff a total of 1134 pages in full and 624 pages in part.  Also, OIP has withheld 1235 pages in full.  OIP's withholdings have been made pursuant to Exemptions 2, 6 and 7(C) of the FOIA, as well as to the deliberative process and presidential communications privileges of Exemption 5 of the FOIA.  Pursuant to the parties' January 24, 2008 Joint Stipulation (dkt. 10), only sixty-eight pages are presently at issue. Accordingly, this declaration addresses the withholding in full or in part of those sixty-eight pages of e-mails pursuant to the deliberative process and presidential communications privileges of Exemption 5 of the FOIA.

---

[4] Finally, OIP advised plaintiff that we had located an e-mail which forwarded as an attachment Supreme Court Justice Samuel Alito's Senate Judiciary Committee questionnaire.  This material totaled 264 pages.  Because Justice Alito's questionnaire has been made publicly available on the Judiciary Committee's website, OIP advised the requester that it had not processed that material, but would do so upon request.  Plaintiff did not so request and this material was therefore not processed.

8

23) Attached to this declaration as Exhibit K is a <u>Vaughn</u> Index containing a description of the sixty-eight pages currently at issue, and which have been withheld in full or in part pursuant to the deliberative process and presidential communications privileges of Exemption 5. Because certain records are similar to one another, we have categorized them into six distinct groups.[5] The <u>Vaughn</u> Index describes the responsive documents contained in each group, including such information as the date and the general content of the material, provides the number of pages for each group, and identifies the privileges – deliberative process and presidential communications – which protect each group from full or partial disclosure under Exemption 5 of the FOIA. This declaration then provides a further narrative description of each document group and an explanation as to why these records have been withheld and how they fall within Exemption 5.

Explanation of Withheld Material

FOIA Exemption 5

24) Exemption 5 of the FOIA protects certain inter- and intra- agency communications protected by the deliberative process and presidential communications privileges. All of the records located in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General and withheld from plaintiff are inter- and intra- agency communications exchanged within the Executive Branch; specifically, they are e-mails exchanged between the Department of Justice and the White House.

---

[5] The <u>Vaughn</u> Group numbers are not sequential. At the time of OIP's final response, a draft <u>Vaughn</u> Index was provided to plaintiff which addressed all of the records withheld from plaintiff during the processing of its request. Although only six groups of records identified in the draft <u>Vaughn</u> Index are now being challenged, for clarity we have maintained the original <u>Vaughn</u> Group numbers for these records.

25) All five pages in Group 3, both pages in Group 21, all six pages in Group 25, all twenty-three pages in Group 26, all thirteen pages in Group 28, and one out of nineteen pages in Group 6 of the attached <u>Vaughn</u> Index are protected in part by the deliberative process privilege. In addition to the deliberative process privilege, three of the five pages in Group 3, both pages in Group 21, and all twenty-three pages in Group 26 are protected in full by the presidential communications privilege, and the withheld portion of the one page in Group 6 protected in part by the deliberative process privilege is also protected in part by the presidential communications privilege. Finally, the remaining eighteen pages in Group 6 are protected in full by the presidential communications privilege only. In total, Groups 3, 6, 21, 25, 26, and 28 include forty-six pages protected in full by the presidential communications privilege, twenty-eight of which are also protected in part by the deliberative process privilege, one-page that is protected in part by both the presidential and deliberative process privileges, and twenty-one pages protected in part by the deliberative process privilege only.

Deliberative Process Privilege

26) The deliberative process privilege is intended to protect the decisionmaking processes of government agencies from public scrutiny in order to enhance the quality of agency decisions. The information withheld on the basis of the deliberative process privilege consists of back-and-forth predecisional deliberations, analyses, recommendations and assessments.

27) An essential part of the creation of agency policy, strategy, and final agency decisions is the internal, predecisional back-and-forth among Executive Branch officials leading up to the making of final decisions. All of the e-mails withheld pursuant to the deliberative

10

process privilege in Groups 3, 6, 21, 25, 26, and 28 are part of the exchange of ideas and suggestions that accompanies all decisionmaking and reflect preliminary assessments by attorneys and other staff about issues in which they have been asked to make recommendations and give advice.

28) A significant part of the deliberative process within the Department of Justice, and the entire Executive Branch, involves the use of e-mail communication. Executive Branch officials routinely e-mail each other, giving and responding to suggestions and proposed strategy and policy as they carry out their duties or respond to inquiries. E-mail operates as a way for individual Department of Justice employees to communicate with each other and with other Executive Branch entities about current matters expeditiously and without having to leave their offices. These "discussions," which get memorialized online, are part of the exchange of ideas and suggestions that accompanies all decision-making and typically reflect staff members' very preliminary assessments about issues on which they may be asked to make recommendations. Indeed, such online discussions often resemble conversations between staff members which are part of the give and take of agency deliberations. Disclosure of such deliberative information would severely hamper the efficient day-to-day workings of the Executive Branch as individuals would no longer feel free to discuss in e-mail messages their ideas and advice on the outcome of an issue. If such information is routinely released to the public, government employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the Department's and the rest of the Executive Branch's ability to foster the forthright, internal discussions necessary for efficient and proper decisionmaking. Certainly

11

disclosure of such preliminary assessments and opinions would make officials commenting on

proposed strategy and policy much more circumspect in providing their views. Agency decision-

making is at its best when employees are able to focus on the substance of their views and not on

whether their views may at some point be made publicly available.

29) As discussed in full below, the deliberations in the e-mails contained in Groups 3,

21, 25, 26, 28, and one page in Group 6 pertain to matters such as responding to an upcoming

Congressional hearing, formulating official responses to inquiries from outside the Executive

Branch, suggesting a plan of action for the appointment of a United States Attorney or conferring

on issues arising from such appointments, recommending revisions to documents, and planning

for the hiring of new Department personnel. Executive Branch officials discussing these issues

solicit, and in turn provide, ideas, advice, and assessments leading up to ultimate strategy, policy,

and other agency decisions.

30) The e-mails protected in Group 3 consist of two e-mail discussions, or "chains,"

comprising the back-and-forth discussions which are typically protected by the deliberative

process privilege. The first e-mail chain in this group is a predecisional communication from a

White House adviser to Department officials regarding an upcoming Congressional hearing on

the Federal Bureau of Investigation's operations in Puerto Rico, and forwarding an email about

the hearing. The author provides an assessment of the subject of the hearing and suggestions for

the Executive Branch's response to the scheduling of the hearing, and directly solicits the

Department's assistance with handling the Executive Branch's response to the scheduling of the

hearing. The second e-mail chain in this group is a predecisional, internal discussion among

12

White House advisers regarding how to handle a response to an inquiry from a state Attorney General about a particular provision of the Patriot Act. Although the state Attorney General's inquiry has been released (along with an attachment thereto), the subsequent internal White House discussion on how to respond to the inquiry has been protected. The protected discussion includes back-and-forth e-mails which seek to apprise White House advisers about the inquiry, resolve who is best suited to handle the matter, and include a suggestion relevant to responding to the inquiry. The identities of the authors and recipients of the e-mails have been withheld as well, because disclosure would reveal the thought-process of the individuals discussing the matter inasmuch as the e-mails are forwarded to those people whose areas of expertise are deemed potentially relevant to responding to the inquiry.

31) In Group 6, portions of two e-mail communications discuss a proposed plan of action regarding the recommendation of candidates for United States Attorney from the selection commission in Los Angeles, which was set forth by a member of the Judicial Selection Committee (JSC) at that entity's prior meeting. The author of the e-mail follows up, inquiring about the implementation of the plan of action and giving further detail about the proposed plan, which as of the e-mail was not yet implemented. In this instance, the non-deliberative portions of the e-mail communications have been disclosed. Only the terms of the predecisional proposal stemming from the prior JSC meeting have been withheld under Exemption 5.

32) The two-page e-mail chain protected in Group 21 is protected in part by the deliberative process privilege. The e-mails in this group consist of a discussion between Department officials and White Houses advisers in which the Department assists the White

13

House with establishing the process of selecting a new United States Attorney. The authors discuss the process for identifying potential candidates and the development of a selection process. In so doing, they engage in the predecisional give-and-take discussion regarding a plan of action which has no yet culminated in a final decision on United States Attorney selection.

33) Similarly, portions of two e-mail chains comprising four pages of e-mails in Group 25 are protected in part by the deliberative process privilege because they reflect back-and-forth discussion between White House advisers and a Department official considering how to handle an issue in controversy regarding the nomination of a United States Attorney. Specifically, the protected portions of the e-mails include suggested revisions to a statement regarding an interim United States Attorney whose confirmation is not supported by the local Senator. The statement itself has been released, and only the suggested edits have been withheld as they reflect the author's predecisional recommendations on potential changes to the statement. Also protected in this group are portions of a two-page email chain between a Department official and White House adviser discussing how to respond to a newspaper article about the replacement of a United States Attorney. Here, again, the non-deliberative article has been released, and only the e-mails reflecting the authors' suggestions on how to respond to the article have been withheld, inasmuch as releasing such information would reveal the preliminary, predecisional suggestions of Executive Branch officials about responding to the newspaper article, which the deliberative process privilege is meant to protect.

34) The e-mails protected in Group 26 constitute predecisional deliberations between White House advisers and Department officials, in which the authors confer on the appointment

14

of United States Attorneys. These e-mail discussions include back-and-forth dialogue on hiring issues and background information on candidates, including the impending appointment of a United States Attorney, source and status of candidates, status of vacancies, and expected vacancies. In the e-mails officials are making inquiries and giving updates on the status of particular candidates. In other e-mails proposed courses of action are provided. Specifically, one e-mail chain contains an assessment of the status at that point in time of the hiring of new United States Attorneys, including who did or did not recommend various candidates, the viability of certain candidates, and the author's expectations as to future needs. Another e-mail communication contains possible courses of action related to the announcement of a candidate that are dependent on the outcome of legal issues which are identified as not yet resolved. Two related e-mail chains discuss the expectation of the author as to when an announcement can be made on a candidate, including material – compiled by the author and shared with White House advisers – that could be used in support of that candidate, but not until a decision to announce him had been made. The last two e-mails chains which were protected in this group contain the author's assessment, and the reasons for that assessment, as to the viability of a candidate and a proposed plan of action for replacing a United States Attorney. As such, the protected information reflects the preliminary give-and-take conversations which take place before decisions related to selection of United States Attorneys are finalized.

35) In Group 28, portions of e-mail communications discuss the hiring of a particular individual to the Department, including back-and-forth discussion of hiring considerations such as details about the interviewing process, the candidate's potential start date, placement of the

15

candidate, and the authors' assessment of the merits of bringing the individual into the

Department. These deliberations regarding the hiring process are predecisional in that the

candidate has not yet been hired by the Department. Furthermore, the authors' discussions

regarding the merits of the candidate, and thus the priority level of his selection, reveal the

authors' analysis of the advantages of bringing the candidate into the Department. Wherever

possible, potions of the e-mails in this group have been segregated for release and disclosed in

part.

36) As discussed above in connection with each group of withheld records, we carefully

reviewed each of the documents and determined whether there was any reasonably segregable,

non-exempt information that could be disclosed. Whenever possible, OIP redacted only those

portions of the documents which were exempt from disclosure, and released all non-exempt

information to plaintiff. As is discussed below, some of these groups are protected in full by the

presidential communications privilege. Thus, although some information therein may be

segregable under the deliberative process privilege, such information has not been disclosed to

the extent that it is otherwise entirely protected under the presidential communications privilege.

Presidential Communications Privilege

37) In addition to the documents described above that are protected by the deliberative

process privilege, OIP withheld three pages from Group 3, and the two pages in Group 21, and

all twenty-three pages in Group 26 pursuant to the presidential communications privilege.

Additionally, OIP withheld eighteen pages in Group 6 in full pursuant to the presidential

communications privilege only, and one page in Group 6 was partially withheld pursuant to the

16

presidential communications privilege as well as the deliberative process privilege. All the e-mails withheld in these groups consist of communications between senior Department of Justice officials and White House advisers who are responsible for advising presidential decisionmaking. The underlying purposes of the presidential communications privilege are the same as those of the deliberative process privilege, but they take on a distinct significance at the level of presidential decisionmaking. Advisers must feel free to give the most candid and thorough advice possible in order for the President's decisionmaking process to be effective. The information withheld on the basis of the presidential communications privilege consists of back-and-forth predecisional deliberations, analyses, recommendations and assessments. The President is the ultimate decisionmaker on Executive Branch policy; he and his advisers must be free to solicit the advice of the Department on matters they are considering without fear of those communications being disclosed.

38) The e-mails protected in Groups 3, 6, 21, and 26 pertain to presidential decisionmaking functions, including the Executive Branch's response to the scheduling of a Congressional hearing, appointments of United States Attorneys, and other political appointments. The e-mails either directly solicit advice from the Department of Justice regarding certain specific issues in these three realms, or comprise discussions between the Department and the White House with regard to these presidential decisionmaking functions. No final decisions are made in these e-mails; the back and forth deliberations reflect the advisory process whose confidentiality is key to ensuring that policy analysis or proposed recommendations which instruct presidential decisionmaking are as forthcoming as possible. Further explanation as to the

17

basis for the invocation of the presidential communications privilege for each group is set forth below.

39) One e-mail chain comprising three-pages in Group 3 has been protected by the presidential communications privilege. The protected e-mail chain in this group is a predecisional communication from a White House adviser to Department officials regarding an upcoming Congressional hearing on the Federal Bureau of Investigation's operations in Puerto Rico, and forwarding an email about the hearing. The author provides an assessment of the subject of the hearing and suggestions for the Executive Branch's response to the scheduling of the hearing, and directly solicits the Department's assistance with handling the Executive Branch's response to the scheduling of the hearing. Because the presidential adviser who authors the e-mail is explicitly seeking the advice of the Department on the matter at hand, the information has been protected under the presidential communications privilege. White House officials must feel free to candidly seek advice from agencies in informing presidential decisions.

40) Group 6 includes eighteen pages e-mails regarding meetings of the Judicial Selection Committee (JSC). These e-mails are from the White House to members of the JSC which advise of dates, times, and locations of upcoming JSC meetings, cancellations of meetings, and a list of the participants. In addition, in the partially-protected one-page e-mail included in Group 6, we also protected the name of a JSC member and a proposed plan of action regarding the recommendation of candidates for United States Attorney from the selection commission in Los Angeles, which stemmed from the JSC's prior meeting. I have been advised in my official capacity that the JSC is a select group of presidential advisers which includes members of the Office of Counsel to the President and certain Department of Justice officials. I was further

18

advised that the JSC forms recommendations on nominations for federal judges, United States

Attorneys, Sentencing Commission members, and similar appointments and provides these

recommendations to the President. I was also advised that, given the nature of advice JSC

provides directly to the President, revealing the identities of members, meeting times, etc., of the

JSC would likely reveal an aspect of the President's deliberations on the matters under

discussion. Because the JSC is tasked with making recommendations to the President on matters

of his ultimate decision, those e-mails have been protected by the presidential communications

privilege.

41) In Group 21, a two-page e-mail chain comprising a discussion between Department

officials and White Houses advisers in which the Department assists the White House with

establishing the process of selecting a new United States Attorney has been protected pursuant to

the presidential communications privilege. The Department and White House officials

participating in this dialogue discuss how potential candidates for nomination will be identified

and then outline the process to be used when selecting candidates for nomination. The selection

of United States Attorneys is a matter of presidential decisionmaking and, accordingly, these e-

mails have been protected by the presidential communications privilege.

42) Similarly, in Group 26 we have withheld all twenty-three pages of e-mails between

White House advisers and the Department officials, in which the authors confer on the

appointment of United States Attorneys. These e-mail discussions include back-and-forth

dialogue on hiring issues and background information on candidates, including the impending

appointment of a United States Attorney, source and status of candidates, status of vacancies, and

expected vacancies. In the e-mails officials are making inquiries and giving updates on the status

of particular candidates. In other e-mails proposed courses of action are provided. As discussed above in relation to Group 21, hiring of United States Attorneys is a matter of presidential decision and, accordingly, the back-and-forth e-mails in this group, in which Department officials provide their input and thereby assist White House advisers in this function, have been protected from disclosure under the presidential communications privilege.

43) To the extent the communications protected in Groups 3, 6, 21, and 26 have been protected by the presidential communications privilege, they are exempt in full. Accordingly, there is no reasonably segregable, non-exempt information that can be segregated and disclosed. With respect to the one-page e-mail in Group 6 which was partially withheld under the presidential communications privilege, OIP protected only that information relating to the Judicial Selection Committee, and released the other e-mails in the chain of communication which did not relate directly to presidential decisionmaking.

44) As detailed above, with respect to each category of records, OIP specifically examined each e-mail to determine whether there was any reasonably segregable, non-exempt information that could be released to plaintiff. For e-mails in Groups 3, 6, 25, and 28 all reasonably segregable non-exempt information was released to plaintiff. For Groups 21 and 26, the e-mails were protected in their entireties under the presidential communications privilege and so there was no non-exempt information to be segregated for release.

I declare under penalty of perjury that the foregoing is true and correct.

*Melanie Ann Pustay*

MELANIE ANN PUSTAY

Executed this **24** day of January 2008.

20

# EXHIBIT A



**DEMOCRATIC NATIONAL COMMITTEE**

AG|07-R0411
DAG|07-R0412
ASG|07-R0413
UA

March 19, 2007

**By Hand**

Melanie Ann Pustay
Acting Director
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue., N.W.
Washington, D.C. 20530

OFFICE OF INFORMATION
AND PRIVACY

MAR 2 6 2007

**RECEIVED**

Re:    **Freedom of Information Act Request**

Dear Ms. Pustay:

This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), and is submitted by the undersigned individuals who are concerned about the widening scandal involving improper and potentially unlawful attempts, by the Bush White House, Republican Members of Congress and Republican party officials, to influence and interfere in ongoing criminal investigations being conducted by United States Attorneys and to influence the hiring and firing of U.S. Attorneys for partisan political reasons.

In addition to White House interference, and improper contacts from Republican Members of Congress, it was recently reported that a White House Deputy Political Director, using a Republican National Committee e-mail account, communicated with the Department of Justice about appointing a former aide to Karl Rove to be U.S. Attorney in Arkansas. And it was also reported that the then-Washington State Republican Party Chairman Chris Vance contacted then-U.S. Attorney John McKay (who was subsequently fired) about launching investigations of Democrats in connection with the 2004 gubernatorial election in that state.

We therefore request:

(a)    all documents in the possession, custody or control of the Office of Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, prepared on or after November 1, 2004, constituting, reflecting or referring to communications to or from or to any officer or employee of the Republican National Committee or any state or local Republican Party committee, referring, relating to or discussing (1) any

Democratic Party Headquarters ■ 430 South Capitol Street, SE ■ Washington, DC, 20003 ■ (202) 863-8000 ■ Fax (202) 863-8174
*Paid for by the Democratic National Committee. Contributions to the Democratic National Committee are not tax deductible.*
Visit our website at www.democrats.org.

Melanie Ann Pustay
Office of Information and Privacy
U.S. Department of Justice
March 19, 2007

prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney; and

(b)    all e-mail messages in the possession custody or control of the Office of Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, sent on or after November 1, 2004, to or from any e-mail address including the domain name "GWB43.com."

The undersigned requestors fall in the category of "other requestors" for purposes of FOIA and the Department's FOIA fee regulations. On behalf of the undersigned requestors, the Democratic National Committee will pay any fees for searching or copying the requested records.

We look forward to your response within twenty (20) working days as the law requires. If you have any questions or need any further information concerning this request, please contact the first signatory below, Governor Howard Dean. Thank you for your prompt attention to this important matter.

Sincerely,

Governor Howard Dean
National Chair

# EXHIBIT B



**U.S. Department of Justice**

Office of Information and Privacy

_____

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

APR 2 3 2007

Governor Howard Dean
National Chair
Democratic National Committee        Re:    AG/07-R0411
Democratic Party Headquarters               DAG/07-R0412
430 South Capitol Street, SE                ASG/07-R0413
Washington, D.C. 20003                      MLF:VRB:UA

Dear Governor Dean:

        This is to acknowledge receipt of your letter dated March 19, 2007, which was received in
this Office on March 26, 2007, in which you requested records "prepared on or after November 1,
2004, constituting, reflecting, or referring to communications to and from . . . any officer or
employee of the Republican National Committee or any state or local Republican Party committee
referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution;
(2) initiating any investigation or prosecution; or (3) the appointment or termination of any United
States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of
United States Attorney." You also requested e-mail messages "sent on or after November 1, 2004,
to or from any e-mail address including the domain name 'GWB43.com'." This response is made
on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney
General.

        Because the records you seek require searches in other offices, our staff has not yet been able
to complete our searches to determine whether there are records within the scope of your request.
Accordingly, we will be unable to comply with the twenty-working-day time limit in this case, as
well as the ten additional days provided by the statute. In an effort to speed up our records searches,
you may wish to narrow the scope of your request to limit the number of potentially responsive
records or agree to an alternative time frame for processing, should records be located; or you may
wish to await the completion of our records searches to discuss either of these options.

        In accordance with Department of Justice regulation 28 C.F.R. § 16.3(c) (2006), this letter
also confirms your agreement to incur all applicable fees involved in the processing of your request,
up to the amount of $25. We will notify you if we estimate that fees will exceed this amount.

        I regret the necessity of this delay, but I assure you that your request will be processed as
soon as possible. If you have any questions or wish to discuss reformulation or an alternative time

-2-

frame for the processing of your request, you may contact me by telephone at the above number or you may write to me at the above address.

Sincerely,

Usman Ahmad
FOIA Specialist

# EXHIBIT C



**U.S. Department of Justice**

Civil Division, Federal Programs Branch

| Via First-Class Mail | Via Special Delivery |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., NW |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

Nicholas A. Oldham
Trial Attorney

Tel: (202) 514-3367
Fax: (202) 616-8470
Email: nicholas.oldham@usdoj.gov

June 7, 2007

Via First Class Mail and E-Mail

Joseph E. Sandler, Esq.
Sandler, Reiff & Young, PC
50 E Street, S.E., Suite 300
Washington, D.C. 20003

     Re:  *DNC v. DOJ*, No. 07-CV-712 (D.D.C.) (ESH)

Dear Joe:

     This letter memorializes the Democratic National Committee's agreement to narrow the scope of its Freedom of Information Act (FOIA) request, which is the subject of the above-referenced action, by limiting the United States Department of Justice's search for responsive documents to the records of specific custodians. Specifically, in response to DNC's FOIA request, DOJ will search only the records of current officials in the Office of the Attorney General (OAG), Office of the Deputy Attorney General (ODAG), and Office of the Associate Attorney General (OAAG), as well as the records of the thirteen former officials in OAG and ODAG reflected in the attached list.

                        Sincerely,

                        Nicholas A. Oldham

Enclosure

**DNC FOIA Request**
**Proposed Custodians of Records – Departed Officials**

## Office of the Attorney General

| Title | Custodian | Dates of Service | |
| | | From | To |
|---|---|---|---|
| Interim Chief of Staff | Chuck Rosenberg | 3/16/07 | 4/23/07 |
| Chief of Staff | Kyle Sampson | 10/01/05 | 3/12/07 |
| Chief of Staff | Ted Ullyot | 2/4/05 | 9/30/05 |
| Chief of Staff | David Ayres | 1/30/01 | 2/4/05 |
| Deputy Chief of Staff | Kyle Sampson | 2/4/05 | 9/30/05 |
| Deputy Chief of Staff | David Israelite | 2/13/2001 | 2/4/05 |
| White House Liaison | Monica Goodling | 4/15/06 | 4/6/07 |
| White House Liaison | Jan Williams | 3/28/05 | 4/14/06 |
| White House Liaison (Deputy) | John Eddy | 2/22/05 | 8/7/05 |
| White House Liaison | David Higbee | 3/10/03 | 4/9/04 |
| White House Liaison (Deputy - during Higbee tenure) | Susan Richmond | 2001 | 3/11/05 |

## Office of the Deputy Attorney General

| Title | Custodian | Dates of Service | |
| | | From | To |
|---|---|---|---|
| Deputy Attorney General | James Comey | Acting 11/19/03 - 12/11/03<br><br>12/11/03 | 8/15/05 |
| Chief of Staff | Chuck Rosenberg | 2004 | 11/05 |

# EXHIBIT D



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                *Washington, D.C. 20530*

JUL 3 1 2007

Governor Howard Dean
National Chair
Democratic National Committee          Re:    AG/07-R0411
Democratic Party Headquarters                  DAG/07-R0412
430 South Capitol Street, SE                   ASG/07-R0413
Washington, D.C. 20003                         MAP:VRB:UA

Dear Governor Dean:

     This is an interim response to your Freedom of Information Act (FOIA) request dated March 19, 2007, which was received in this Office on March 26, 2007, in which you requested records "prepared on or after November 1, 2004, constituting, reflecting, or referring to communications to and from any officer or employee of the Republican National Committee or any state or local Republican Party committee referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney."  You also requested electronic mail (e-mail) messages "sent on or after November 1, 2004, to or from any e-mail address including the domain name 'GWB43.com'."  This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

     We have now completed our searches for records responsive to your request.  Searches were conducted in the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, and of the electronic database of the Departmental Executive Secretariat, which is the official records repository for the aforementioned offices, and 5337 pages of responsive records were located.  The records consist entirely of e-mail messages.  Please note that given the voluminous amount of records, the number of responsive pages may change somewhat, as we continue to review the records for duplicative or otherwise non-responsive material.

     We are currently processing the 5337 pages of responsive records, which contain information of interest to other Department components and Executive Branch offices.  In accordance with Department regulations, we must consult these various entities regarding their information.  See 28 C.F.R. § 16.4(c)(1) (2007).  Once these consultations are completed, we will respond to you again.

-2-

Finally, please be advised that we also located four documents, totaling five pages, which contain information of primary interest to the Executive Office for United States Attorney (EOUSA). Accordingly, we have referred those four documents to EOUSA for processing and direct response to you. You may contact EOUSA at the following address:

> William G. Stewart, II, Acting Assistant Director
> FOIA/Privacy Unit
> Executive Office for United States Attorneys
> United States Department of Justice
> Room 7300, 600 E Street, N.W.
> Washington, DC 20530-0001

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay

Melanie Ann Pustay
Director

# EXHIBIT E



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

AUG 3 1 2007

Governor Howard Dean
National Chair
Democratic National Committee            Re:    AG/07-R0411
Democratic Party Headquarters                   DAG/07-R0412
430 South Capitol Street, SE                    ASG/07-R0413
Washington, D.C. 20003                          MAP:VRB:UA

Dear Governor Dean:

     This is our second interim response to your Freedom of Information Act (FOIA) request dated March 19, 2007, which was received in this Office on March 26, 2007, in which you requested records "prepared on or after November 1, 2004, constituting, reflecting, or referring to communications to and from any officer or employee of the Republican National Committee or any state or local Republican Party committee referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney." You also requested electronic mail (e-mail) messages "sent on or after November 1, 2004, to or from any e-mail address including the domain name 'GWB43.com'." This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

     In our first interim response to you dated July 31, 2007, we advised that our records searches were completed, and that we were continuing to process 5337 pages of responsive electronic mail (e-mail) messages which require consultations with other Offices. Please note that, upon further review of the records, we have determined that 286 pages are duplicative and are therefore not being processed. Therefore, the adjusted number of responsive e-mails which we are continuing to process totals 5051 pages.

     At this time, I have determined that 1169 pages should be withheld in full pursuant to Exemption 6 of the FOIA, 5 U.S.C § 552 (b)(6), which pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties. The withheld material consists of e-mails of a purely personal nature, including arranging times for happy hours and social events, discussing family matters, and similar topics of private concern.

     Please be advised that we also located approximately 1047 pages of records which consist of e-mails forwarding and discussing resumes of private individuals seeking employment with the government. The resumes themselves, which are included in the 1169 pages referenced-

-2-

above, are being withheld in full pursuant to Exemption 6 of the FOIA. Because the related e-mails pertain to employment matters and to the individual candidates, it appears that you may not be interested in receiving these materials. If you are interested in such records, however, we will process them upon your request. In addition, we have located nine pages of e-mails from a private individual raising concerns about the lowering of Environmental Protection Agency fines. Because the Department did not respond to these e-mails, it appears that you also may not be interested in receiving this material. However, we will process it upon your request.

Additionally, please be advised that we have referred one document, totaling one page, to the Executive Office for United States Attorney (EOUSA). You may contact EOUSA at the following address:

> William G. Stewart, II, Acting Assistant Director
> FOIA/Privacy Unit
> Executive Office for United States Attorneys
> United States Department of Justice
> Room 7300, 600 E Street, N.W.
> Washington, DC 20530-0001

Finally, we are continuing to process an additional 2826 pages of responsive records which require consultations with other Offices. We have initiated this consultation process and will respond to you again once those consultations and our determinations on the documents are completed.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

# EXHIBIT F



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_       _Washington, D.C. 20530_

OCT 1 9 2007

Governor Howard Dean
National Chair
Democratic National Committee      Re:    AG/07-R0411
Democratic Party Headquarters                   DAG/07-R0412
430 South Capitol Street, SE                     ASG/07-R0413
Washington, D.C. 20003                        MAP:VRB:UA

Dear Governor Dean:

      This is our third interim response to your Freedom of Information Act (FOIA) request
dated March 19, 2007, which was received in this Office on March 26, 2007, in which you
requested records "prepared on or after November 1, 2004, constituting, reflecting, or referring to
communications to and from any officer or employee of the Republican National Committee or
any state or local Republican Party committee referring, relating to or discussing (1) any
prospective or ongoing investigation or prosecution; (2) initiating any investigation or
prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the
performance, work or activity of any United States Attorney or Office of United States
Attorney." You also requested electronic mail (e-mail) messages "sent on or after November 1,
2004, to or from any e-mail address including the domain name 'GWB43.com'." This response
is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and
Associate Attorney General.

      In our second interim response to you dated August 31, 2007, we advised that we were
continuing to process 2826 pages of responsive records which require consultations with other
Offices. Please note that, upon further review of the records, we have determined that one
hundred sixty-five pages are duplicative or not responsive to your request and are therefore not
being processed. Therefore, the adjusted number of responsive e-mails which we are continuing
to process totals 2661 pages.

      Our consultations are partially completed. At this time, I have determined that 509 pages
are appropriate for release without excision, and copies are enclosed. Also enclosed are two
pages that are appropriate for release with excisions made pursuant to Exemption 6 of the FOIA,
5 U.S.C. § 552 (b)(6) which pertains to information the release of which would constitute a
clearly unwarranted invasion of the personal privacy of third parties. In addition, sixteen pages
are being withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C § 552 (b)(5), which
pertains to certain inter- and intra-agency communications protected by the presidential
communications privilege.

-2-

Additionally, please be advised that we have referred 105 pages of material to the Department of Homeland Security (DHS).  You may contact DHS at the following address:

> Catherine M. Papoi
> Director, Departmental Disclosure, D-3
> U.S. Department of Homeland Security
> 601 South 12th Street
> Arlington, VA 22202

In addition, we have referred one document, totaling three pages, to the Office of Personnel Management (OPM).  You may contact OPM at the following address:

> Donna G. Lease
> FOIA/PA Co-ordinator
> Office of Personnel Management
> Room 5415
> 1900 E Street, N.W.
> Washington, D.C. 20415

For your information, this completes our work on behalf of the Offices of the Deputy Attorney General and Associate Attorney General.  We are continuing to process an additional 2026 pages of responsive records on behalf of the Office of the Attorney General, which require further consultations with other Offices. We will respond to you again once those consultations and our determinations on the documents are completed.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT G



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                          *Washington, D.C. 20530*

Governor Howard Dean                          OCT 3 1 2007
National Chair
Democratic National Committee
Democratic Party Headquarters
430 South Capitol Street, SE                   Re:    AG/07-R0411
Washington, D.C. 20003                                MAP:VRB:UA

Dear Governor Dean:

    This is our fourth interim response to your Freedom of Information Act (FOIA) request dated March 19, 2007, which was received in this Office on March 26, 2007, in which you requested records "prepared on or after November 1, 2004, constituting, reflecting, or referring to communications to and from any officer or employee of the Republican National Committee or any state or local Republican Party committee referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney." You also requested electronic mail (e-mail) messages "sent on or after November 1, 2004, to or from any e-mail address including the domain name 'GWB43.com'." This response is made on behalf of the Office of the Attorney General.

    In our third interim response to you dated October 19, 2007, we advised that we were continuing to process 2026 pages of records which require consultations with other Offices. Our consultations are now completed on forty-two pages of responsive records. I have determined that forty-one pages are appropriate for release without excision, and copies are enclosed. Also enclosed is one page which is appropriate for release with an excision made pursuant to Exemption 2 of the FOIA. which pertains to purely internal agency practices. The redacted information is a White House e-mail address.

    Additionally, please be advised that we have referred an additional eight pages of material to the Department of Homeland Security, five pages to the Department of Labor, twenty-one pages to the Department of the Interior, two pages to the Department of Defense, and four pages to the Department of Health and Human Services. You may contact those entities as follows:

                Catherine M. Papoi
                Director, Departmental Disclosure, D-3
                United States Department of Homeland Security
                601 South 12th Street
                Arlington, VA  22202

-2-

Joseph J. Plick
Office of the Solicitor, Room N-2428
United States Department of Labor
200 Constitution Avenue, NW
Washington, DC 20210

Alexandra Mallus
Departmental FOIA Officer (MS-5312 MIB)
Office of Information Resources Management
United States Department of the Interior
1849 C Street, NW
Washington, DC 20240

Will Kammer
Office of Freedom of Information
United States Department of Defense
1155 Defense Pentagon
Washington, DC 20301-1155

Robert Eckert
Director, FOIA/Privacy Division
United States Department of Health and Human Services
Room 5416, Mary E. Switzer Building
330 C Street, SW
Washington, DC 20201

We are continuing to process the remaining material responsive to your request, which requires further consultations with other Offices. We will respond to you again once those consultations and our determinations on the documents are completed.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT H



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                                    *Washington, D.C. 20530*


Governor Howard Dean
National Chair                                          **NOV  19 2007**
Democratic National Committee
Democratic Party Headquarters
430 South Capitol Street, SE                        Re:    AG/07-R0411
Washington, D.C. 20003                                     MAP:VRB:UA

Dear Governor Dean:

      This is our fifth interim response to your Freedom of Information Act (FOIA) request dated March 19, 2007, which was received in this Office on March 26, 2007, in which you requested records "prepared on or after November 1, 2004, constituting, reflecting, or referring to communications to and from any officer or employee of the Republican National Committee or any state or local Republican Party committee referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the performance, work or activity of any United States Attorney or Office of United States Attorney." You also requested electronic mail (e-mail) messages "sent on or after November 1, 2004, to or from any e-mail address including the domain name 'GWB43.com'." This response is made on behalf of the Office of the Attorney General.

      In our fourth interim response dated October 31, 2007, we provided a partial disclosure to you and advised that we were continuing to process the remaining material responsive to your request, which required consultations with other Offices. We have now partially completed our consultations. At this time, I have determined that 541 pages are appropriate for release without excision, and copies are enclosed. Also enclosed are 311 pages that are appropriate for release with excisions made pursuant to Exemptions 2 and 6 of the FOIA, 5 U.S.C. § 552 (b)(2) and (6), which pertain to purely internal agency practices and to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties. Finally, thirteen pages are being withheld in full pursuant to Exemptions 2 and 6 of the FOIA.

      We are continuing to process the remaining 1078 pages, which require further consultation with another Office. We will respond to you again once that consultation and our determinations on the documents are completed. Please note that given the voluminous amount of records, the number of responsive pages remaining will change as we continue to review the records for duplicative or otherwise non-responsive material.

-2-

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT I



**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                 *Washington, D.C. 20530*


NOV 20 2007

Governor Howard Dean
National Chair
Democratic National Committee
Democratic Party Headquarters
430 South Capitol Street, SE              Re:    AG/07-R0411
Washington, D.C. 20003                           MAP:VRB:UA

Dear Governor Dean:

This is our final response to your Freedom of Information Act (FOIA) request dated
March 19, 2007, which was received in this Office on March 26, 2007, in which you requested
records "prepared on or after November 1, 2004, constituting, reflecting, or referring to
communications to and from any officer or employee of the Republican National Committee or
any state or local Republican Party committee referring, relating to or discussing (1) any
prospective or ongoing investigation or prosecution; (2) initiating any investigation or
prosecution; or (3) the appointment or termination of any United States Attorney; or (4) the
performance, work or activity of any United States Attorney or Office of United States
Attorney." You also requested electronic mail (e-mail) messages "sent on or after November 1,
2004, to or from any e-mail address including the domain name 'GWB43.com'." This response
is made on behalf of the Office of the Attorney General.

In our fifth interim response dated November 19, 2007, we provided a partial disclosure
to you and advised that we were continuing to process a remaining 1078 pages, which required a
consultation with another Office. We have now completed that consultation. Please note that,
upon further review of the records, we have determined that 424 pages are duplicative or not
responsive and are therefore not being processed. Therefore, the adjusted number of responsive
e-mails which we are continuing to process totals 654 pages.

I have determined that twenty-nine pages are appropriate for release without excision, and
copies are enclosed. Also enclosed are 292 pages that are appropriate for release with excisions
made pursuant to Exemptions 2, 5 and 6 of the FOIA, 5 U.S.C. § 552 (b)(2), (5), (6). Exemption
2 pertains to purely internal agency practices. Exemption 5 pertains to certain inter- and intra-
agency communications protected by the presidential communications and deliberative process
privileges. Exemption 6 pertains to information the release of which would constitute a clearly
unwarranted invasion of the personal privacy of third parties. Additionally, seventy pages are
being withheld in full pursuant to Exemption 5 of the FOIA. Please note that these seventy pages
are also partially protected pursuant to Exemptions 2 and 6 of the FOIA. Finally, one page is

-2-

being withheld in full pursuant to Exemption 6 of the FOIA.

For your information, the material we are releasing to you includes two pages which were previously withheld in our third interim response, pursuant to the presidential communications privilege of FOIA Exemption 5. Upon further review of this material, we determined that it is appropriate for release without excision, and the document is noted accordingly.

We have also located one e-mail which simply forwards as an attachment the United States Senate Committee on the Judiciary's questionnaire for Samuel Alito, Jr. This material, including appendices, totals 264 pages. Because Justice Alito's questionnaire has been made publicly available on the Judiciary Committee's website, we have not processed this material. However, we will provide it to you should you request us to do so.

Although I am aware that your request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you of your right to file an administrative appeal.

Sincerely,

Melanie Ann Pustay
Director

Enclosures

# EXHIBIT J



**U.S. Department of Justice**
Civil Division, Federal Programs Branch

| **By First-Class Mail** | **By Special Delivery** |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., NW |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

Nicholas A. Oldham
Trial Attorney

Tel: (202) 514-3367
Fax: (202) 616-8470
Email: nicholas.oldham@usdoj.gov

January 15, 2008

By E-Mail and Next-Day FedEx

Joseph E. Sandler, Esq.
Sandler, Reiff & Young, PC
50 E Street, S.E., Suite 300
Washington, D.C. 20003

Re:    *DNC v. DOJ*, No. 07-CV-712 (D.D.C.) (ESH)

Dear Joe:

I write in follow-up to our conversation last week and in response to your letter of December 20, 2007. In an effort to further narrow the issues for the Court, the Defendant United States Department of Justice (DOJ) has reconsidered the withholdings that the Plaintiff Democratic National Committee (DNC) has stated it intends to challenge, and has determined that thirty-four additional pages are appropriate for release. As described below, DOJ's Office of Information and Privacy (OIP), which is responsible for responding to DNC's request on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General, has determined that fourteen pages are appropriate for release without excisions, and twenty pages are appropriate for release with excisions. I have enclosed the supplemental release and DOJ's January 15, 2008 draft *Vaughn* index ("January draft *Vaughn* index") for the document groups that are still in dispute.

*Document Group No. 3 from OIP's November Draft Vaughn Index.* In your December 20 letter, you stated that DNC intends to challenge the withholding of all fourteen pages included in Document Group No. 3, which were withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege. Upon further review, OIP has determined that one document comprising six pages is appropriate for release with an excision made pursuant to Exemption 2 (official White House telephone number) and an excision made pursuant to Exemption 6 (personal cellular number). OIP has also determined that a second document comprising five pages is appropriate for release

Joseph E. Sandler, Esq.
January 15, 2008
Page 2 of 5

with excisions on the first two pages made pursuant to Exemption 5, deliberative process privilege, and one excision on the second page made pursuant to Exemption 6 (account name portion of a personal email address).

Accordingly, as set forth in OIP's January draft *Vaughn* index, Document Group No. 3 now includes three pages that are being withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege, and another two pages that are being withheld in part pursuant to Exemption 5, deliberative process privilege. Because the excisions made pursuant to Exemption 2 and Exemption 6 are consistent with other excisions reflected in OIP's November 20, 2007 draft *Vaughn* index ("November draft *Vaughn* index") that DNC indicated it would not challenge, these excisions are not reflected in OIP's January draft *Vaughn* index.

*Document Group No. 6 from OIP's November Draft Vaughn Index.* In your December 20 letter, you stated that DNC intends to challenge the withholding of all eighteen pages included in Document Group No. 6, which were withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege. Upon further review, OIP has determined that these pages should be withheld in full pursuant to Exemption 5, presidential communications privilege only. OIP has further determined that a one-page document from Document Group No. 25 that was previously released with excisions should be included in Document Group No. 6, and that the excisions made pursuant to Exemption 5, deliberative process privilege are also appropriate for withholding pursuant to Exemption 5, presidential communications privilege. OIP also discovered that it had withheld the names of two candidates for nomination by the Judicial Selection Committee pursuant to Exemption 6 from a part of the one-page document, but inadvertently failed to withhold the name of one of the candidates in another part of the document. (The one-page document also includes an excision made pursuant to Exemption 6 for a private cellular number.) Accordingly, I have enclosed a replacement page with the appropriate Exemption 6 withholdings, and request that you destroy your copy of the page that OIP previously produced.

As set forth in OIP's January draft *Vaughn* index, Document Group No. 6 now includes eighteen pages that are being withheld in full pursuant to Exemption 5, presidential communications privilege, and one page that is being withheld in part pursuant to Exemption 5, presidential communications privilege and deliberative process privilege. Because the Exemption 6 excision of a private cellular number is consistent with other excisions reflected in OIP's November draft *Vaughn* index that DNC indicated it would not challenge, the excision is not reflected in OIP's January draft *Vaughn* index. However, the Exemption 6 withholdings for names of candidates are not similar to other withholdings reflected in OIP's November draft *Vaughn* index. Thus, please let me know as soon as possible whether you intend to challenge

Joseph E. Sandler, Esq.
January 15, 2008
Page 3 of 5

those Exemption 6 withholdings. If so, OIP will include those withholdings on the *Vaughn* index it submits with its dispositive motion.

**Document Group No. 21 from OIP's November Draft Vaughn Index.** In your December 20 letter, you stated that DNC intends to challenge the withholding of the two pages included in Document Group No. 21, which were withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege. OIP has not made any changes to this Document Group. Accordingly, as set forth in OIP's January draft *Vaughn* index, Document Group No. 21 includes two pages that are being withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege.

**Document Group No. 25 from OIP's November Draft Vaughn Index.** In your December 20 letter, you stated that DNC intends to challenge the withholdings in all twenty-three pages included in Document Group No. 25, to the extent those withholdings were made pursuant to Exemption 5 or of account name portions of "GWB43.com" email addresses. As an initial matter, please note that only four pages were withheld in full and three pages in part pursuant to Exemption 5, deliberative process privilege. Upon further review, OIP has determined that the two documents comprising four pages that were withheld in full is appropriate for release with excisions made pursuant to Exemption 5, deliberative process privilege, and pursuant to Exemption 6 (personal cellular numbers). One of the three pages withheld in part pursuant to Exemption 5 has been moved to Document Group No. 6, and is discussed in detail above. With the supplemental release, there are no documents within Document Group No. 25 that include withholdings of account name portions of "GWB43.com" email addresses.

Accordingly, as set forth in OIP's January draft *Vaughn* index, Document Group No. 25 now includes six pages that are being withheld in part pursuant to Exemption 5, deliberative process privilege. All other documents included in this Group as reflected in OIP's November draft *Vaughn* index contain only excisions made pursuant to Exemption 2 (official White House email addresses and telephone numbers) and Exemption 6 (cellular numbers and account name portions of private email addresses, except email addresses with the domain name "GWB43.com"), which DNC indicated it would not challenge. Accordingly, the Exemption 2 and Exemption 6 withholdings are not reflected in OIP's January draft *Vaughn* index.

**Document Group No. 26 from OIP's November Draft Vaughn Index.** In your December 20 letter, you stated that DNC intends to challenge the withholding of all twenty-seven pages included in Document Group No. 26, which were withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5,

Joseph E. Sandler, Esq.
January 15, 2008
Page 4 of 5

deliberative process privilege. Upon further review, OIP has determined that four pages are appropriate for release with excisions made pursuant to Exemption 2 for official White House telephone numbers.

Accordingly, as set forth in OIP's January draft *Vaughn* index, Document Group No. 26 now includes twenty-three pages that are being withheld in full pursuant to Exemption 5, presidential communications privilege, and withheld in part pursuant to Exemption 5, deliberative process privilege. Because the excisions of official White House telephone numbers made pursuant to Exemption 2 are consistent with other excisions reflected in OIP's November draft *Vaughn* index that DNC indicated it would not challenge, the excisions are not reflected in OIP's January draft *Vaughn* index.

**Document Group No. 28 from OIP's November Draft Vaughn Index.** In your December 20 letter, you stated that DNC intends to challenge the withholdings in all nineteen pages included in Document Group No. 28, to the extent those withholdings were made pursuant to Exemption 5 or of account name portions of "GWB43.com" email addresses. As an initial matter, please note that only thirteen pages were withheld in full pursuant to Exemption 5, deliberative process privilege. Upon further review, OIP has determined that these thirteen pages are appropriate for release with excisions made pursuant to Exemption 5, deliberative process privilege, Exemption 2, and Exemption 6. The Exemption 2 withholdings consist of official White House email addresses and telephone numbers, and the Exemption 6 withholdings consist of personal cellular numbers, account name portions of private email addresses, except "GWB43.com" email addresses, and matters of a purely personal nature. With the supplemental release, there are no documents within Document Group No. 28 that include withholdings of account name portions of "GWB43.com" email addresses.

Accordingly, as set forth in OIP's January draft *Vaughn* index, Document Group No. 28 now includes thirteen pages that are being withheld in part pursuant to Exemption 5, deliberative process privilege. All other documents included in this Group as reflected in OIP's November draft *Vaughn* index contain only excisions made pursuant to Exemption 2 (official White House email addresses and telephone numbers) and Exemption 6 (cellular telephone numbers, account name portions of private email addresses, except "GWB43.com" email addresses, and matters of a purely personal nature), which DNC indicated it would not challenge. Accordingly, the Exemption 2 and Exemption 6 withholdings are not reflected in OIP's January draft *Vaughn* index.

The Executive Office for United States Attorneys has also reconsidered the withholdings that DNC identified, but has decided not to release additional documents.

Joseph E. Sandler, Esq.
January 15, 2008
Page 5 of 5

 Based on the supplemental release, I have enclosed a draft stipulation for your consideration that sets forth the remaining issues for the Court. Please let me know if DNC intends to challenge the Exemption 6 withholdings identified in Document Group No. 6 for names of candidates for nomination, or if I incorrectly set forth the withholdings that DNC intends to challenge in the draft stipulation.

       Sincerely yours,

       Nicholas A. Oldham

Enclosures

# EXHIBIT K

Democratic National Committee v. United States Department of Justice

Civil Action No. 07-712 (ESH)
U.S. District Court
District of Columbia

Vaughn Index

Description of the records of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General currently at issue, and protected in full and in part by FOIA Exemption 5 (deliberative process and presidential communications privileges). The withheld records are divided into groups and are described below.

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 3 | 3/21/2006 | One e-mail from the White House to the Department which forwards an e-mail regarding an impending Congressional hearing. The author of the e-mail solicits Department of Justice assistance with respect to the hearing. | Presidential communications privilege in full<br><br>Deliberative process privilege in part | 3 pages withheld in full |
| | 12/14/2005 | One e-mail chain comprising internal White House discussion regarding how to handle a response to an inquiry from the North Dakota Attorney General's Office. The inquiry itself and an attachment thereto have been released. | Deliberative process privilege in part | 2 pages withheld in part |

1

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 6 | 8/22/2006 to 5/14/2007 | E-mails from the White House to members of the Judicial Selection Committee (JSC) which advise of dates, times, and locations of upcoming JSC meetings, cancellations of meetings, and a list of the participants. | Presidential communications privilege in full | 18 pages withheld in full |
|  | 2/12/2007 | Portions of two e-mail communications discussing a proposed plan of action regarding nominations, which stemmed from an earlier meeting of the JSC. | Presidential communications privilege in part<br><br>Deliberative process privilege in part | 1 page withheld in part |
| 21 | 12/20/2006 | One e-mail chain comprising a discussion between the White House and the Department of Justice in which the Department assists the White House with the process of selecting a new United States Attorney. The authors discuss potential candidates and the development of a selection process. | Presidential communications privilege in full<br><br>Deliberative process privilege in part | 2 pages withheld in full |

2

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 25 | 2/16/2007 | Portions of two e-mail chains which consist of a back and forth discussion between the White House and the Department of Justice considering how to handle the Department's response to an issue in controversy regarding the nomination of a United States Attorney, including suggested revisions to a previously released statement. | Deliberative process privilege in part | 4 pages withheld in part |
|  | 2/7/2007 | Portions of one e-mail chain which consist of discussion between the White House and the Department of Justice considering how to respond to a news article about the replacement of a United States Attorney. | Deliberative process privilege in part | 2 pages withheld in part |
| 26 | 8/11/2005 to 12/14/2006 | Various e-mails between the White House and the Department conferring on the impending appointment of United States Attorneys, including back and forth discussion on hiring issues and background information on candidates. | Presidential communications privilege in full  Deliberative process privilege in part | 23 pages withheld in full |

3

| Group Number | Date | Description | Privilege | Pages |
|---|---|---|---|---|
| 28 | 3/10/2005 to 5/9/2005 | Portions of e-mail communications discussing the hiring of a particular individual to the Department, including back and forth discussion of hiring considerations such as details about the interviewing process, the candidate's potential start date, placement of the candidate, and the general merits of bringing the individual into the Department. | Deliberative process privilege in part | 13 pages withheld in part |

4

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil Action No. 07-712 |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DECLARATION OF DIONE JACKSON STEARNS

I, Dione J. Stearns, declare the following to be a true and correct statement of facts:

1)    I am an attorney advisor with the Executive Office for United States Attorneys ("EOUSA"), United States Department of Justice.  In that capacity, my responsibilities include: acting as liaison with other divisions and offices of the Department of Justice ("DOJ") in responding to requests, referrals, and the litigation filed under both the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 (1988), and the Privacy Act of 1974, 5.U.S.C. §552a (1988) ("PA"); the review of FOIA/PA requests for access to records located in this Office and 93 United States Attorneys' Offices ("USAO's") and the case files arising therefrom; the review of correspondence related to requests; the review of searches conducted in response to requests; the location of responsive records; and preparation of responses thereto by EOUSA to assure that determinations to withhold (or to release) such responsive records are in accordance with the provisions of both the FOIA and the PA, as well as the Department of Justice regulations (28 C.F.R. §§ 16.3 et.seq. and §16.40 et.seq.).

- 1 -

2)    As an attorney advisor of the FOIA/PA unit, EOUSA, I have authority to release

and/or withhold records requested under the FOIA/PA, and to advocate the position of EOUSA

in actions brought under the FOIA/PA. The statements I make hereinafter are made on the basis

of my review of the official files and records of EOUSA, on my own personal knowledge, or on

the basis of information acquired by me through the performance of my official duties.

3)    Due to the nature of my official duties, I am familiar with procedures followed and

actions taken by this Office in responding to the pages referred by the Office of Information and

Privacy ("OIP") to EOUSA. The referred pages are associated with a FOIA request made to OIP

by Governor Howard Dean , National Chair of the Democratic National Committee ("DNC"), on

behalf of the DNC, the above-captioned Plaintiff.

## BACKGROUND

4)    EOUSA received two separate FOIA referrals. These were received on September

7, 2007 and July 5, 2007 from OIP to process and respond directly to the DNC. ( *See* Exhibit A.)

The September 7 referral contained a one page document and the July 5 referral contained 4

documents which consisted of five pages. Accompanying each of the two referrals was a copy of

DNC's March 19, 2007 request letter. This request letter sought access to the following

information:

> "(a)    All documents in the possession, custody or control of the Office of
> Attorney General, Office of the Deputy Attorney General and Office of the
> Associate Attorney General, prepared on or after November 1, 2004,
> constituting, reflecting or referring to communications to or from or to any
> officer or employee of the Republican National Committee or any state or
> local Republican Party committee, referring, relating to or discussing (1)
> any prospective or ongoing investigation or prosecution; (2) initiating any
> investigation or prosecution; or (3) the appointment or termination of any

> United States Attorney; or (4) the performance, work or activity of any
> United States Attorney or Office of United States Attorney; and

> (b)    all e-mail messages in the possession, custody or control of the Office of
> Attorney General, Office of the Deputy Attorney General and Office of the
> Associate Attorney General sent on or after November 1, 2004 to or from
> any e-mail address including the domain name "GWB43."

(*See* Exhibit B.)

5)    Pursuant to the parties' stipulation, the document referred on September 7, 2007 is
not at issue in this case, and is therefore not discussed in this Declaration.  *See* January 24, 2008
Joint Stipulation.  Rather, the only documents at issue in this case are the documents referred on
July 5, 2007 which are listed in the <u>Vaughn</u> Index attached to this Declaration as document
numbers 2, 3, 4, and 5.  *(See* Exhibit C)

6)    Upon receipt of the July 5 referral, EOUSA assigned Request Number 07-2258-R to
it.

7)    With respect to the five pages of documents at issue as described in Paragraph 5 of
this Declaration, by letter dated July 27, 2007, EOUSA released in part two pages and withheld
in full three pages pursuant to Exemption (b)(6) to protect the privacy of third parties.  *(See*
Exhibit D to this Declaration for a copy of the July 27, 2007 letter and responsive records.)

## ADEQUACY OF THE SEARCH

8)    EOUSA did not conduct a search because the documents were referred from OIP.

## PRIVACY ACT IS NOT APPLICABLE

9)    The documents were not reviewed under the Privacy Act because the documents
were not contained in a Privacy Act System of Records.

**EOUSA's JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

**EXEMPTION 5 U.S.C. §552(b)(6)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

10)   Exemption (b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of
> such information would constitute a clearly unwarranted invasion of
> personal privacy.

11)   Before asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appears in the documents at issue.  In withholding any information, each

individual's privacy interest was balanced against the public's interest in disclosure.   In making

this analysis, the public interest in disclosure was determined to be information which would

shed light on the federal government's performance of statutory duties.  In each instance where

information was withheld, it was determined that individual privacy rights outweighed the public

interest so that disclosure "would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).

12)   EOUSA applied Exemption (b)(6) to the documents at issue in this case to protect

the names and other identifying information of third-party individuals who were unsuccessful

candidates for United States Attorney positions ("unsuccessful USA candidates" ).  No consent

or authorization to release this information pertaining to the unsuccessful USA candidates was

provided to EOUSA in connection with DNC's May 19, 2007 request, and DNC did not meet its

burden of identifying any legitimate public interest in disclosure.

- 4 -

## UNSUCCESSFUL USA CANDIDATES

13) Exemption (b)(6) has been asserted to protect the names and other identifying information of unsuccessful USA candidates because publicity, adverse or otherwise, could subject unsuccessful USA candidates to embarrassment or speculation about the candidates' desire to leave their current place of employment, and could cause unsolicited and unnecessary attention to be focused on the individuals and/or their family members. Accordingly, there is a strong privacy interest in protecting the names and other identifying information of unsuccessful USA candidates. Balancing that privacy interest against the public interest in disclosure, EOUSA determined that the unsuccessful USA candidates had a strong privacy interest in their names, and that there is no legitimate public interest in this information because disclosure would not shed light on any federal agency's conduct. Thus, EOUSA withheld the names of unsuccessful USA candidates from Document Nos. 4-5. (*See* Exhibit C).

14) Exemption (b)(6) has also been asserted to protect not only the names but the identifying information of unsuccessful USA candidates in Document Nos. 2-3. As discussed in Paragraph 13, disclosure could subject unsuccessful USA candidates to embarrassment or speculation about the candidates' desire to leave their current place of employment, and could cause unsolicited and unnecessary attention to be focused on the individuals and/or their family members, and disclosure would not shed light on any federal agency's operations or activities. EOUSA withheld Document Nos. 2-3 in full because the names and identifying information contained in these documents are inextricably interwoven with the textual summary of the documents and are so descriptive that the unsuccessful USA candidates could be identified even if their names were redacted from the documents. (*See* Exhibit C.)

- 5 -

## SEGREGABILITY

15) Each document, and each page contained in each document, was evaluated for segregability. Where a document was withheld in its entirety, EOUSA determined that no meaningful portions could reasonably be released without destroying the integrity of such documents as a whole, as described in Paragraph 14 of this Declaration.

16) Each step in the handling of the referred records has been entirely consistent with EOUSA and the United States Attorney's office procedures which were adopted to insure an equitable response to all persons seeking access to records under the FOIA/PA.

I declare under penalties of perjury that the foregoing is true and correct.

Executed this 24th day of January, 2008

Dione Jackson Stearns
Attorney Advisor
EOUSA FOIA/PA Staff



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*            *Washington, D.C. 20530*

AUG 30 2007

<u>MEMORANDUM</u>

TO:        William G. Stewart, II, Acting Assistant Director
           FOIA/Privacy Unit
           Executive Office for United States Attorneys

FROM:      Melanie Ann Pustay
           Director

SUBJECT:   Freedom of Information Act (FOIA) Requests of Howard Dean and Laurie
           Scullin, Regarding Correspondence with Local and National Republican Party
           Committees and with Electronic Mail Accounts Using the Domain Name
           "gwb43.com"; OIP Nos. AG/07-R0411, DAG/07-R0412, ASG/07-R0413,
           <u>AG/07-R0437, DAG/07-R0438, ASG/07-R0439</u>

       This concerns the above-referenced FOIA requests. **Please be advised that the request
from Governor Howard Dean is the subject of litigation. You should consult with Nicholas
Oldham of the Federal Programs Branch at (202) 514-3367 before making any disclosures
or corresponding with the requester.**

       Attached is one document, totaling one page, which is of primary interest to the
Executive Office for United States Attorneys (EOUSA). The document consists of an electronic
mail (e-mail) message from a former United States Attorney who was detailed to Iraq. We are
referring it to your Office for direct response to the requesters. The requesters will be notified of
this referral. Although we defer to the judgment of EOUSA regarding the disclosure of this
document, please note that it contains information regarding the personal privacy of third parties
which should be redacted pursuant to FOIA Exemption 6. Please furnish this Office with copies
of your final responses.

       You may forward copies of your responses to the following address: Office of
Information and Privacy, U.S. Department of Justice, 1425 New York Avenue NW, Suite 11050,
Washington, D.C. 20530-0001, Attention: Usman Ahmad.

       Copies of the requesters' initial letters are attached for your information. If you have any
questions regarding this matter, please call Usman Ahmad of this Office at (202) 514-4594.

Attachments
MAP:VRB:UA





**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

JUL - 3 2007

## MEMORANDUM

TO:        William G. Stewart, II, Acting Assistant Director
           FOIA/Privacy Unit
           Executive Office for United States Attorneys

FROM:      Melanie Ann Pustay
           Director

SUBJECT:   Freedom of Information Act (FOIA) Requests of Howard Dean and Laurie
           Scullin, Regarding Correspondence with Local and National Republican Party
           Committees and with Electronic Mail Accounts Using the Domain Name
           "gwb43.com"; OIP Nos. AG/07-R0411, DAG/07-R0412, ASG/07-R0413,
           AG/07-R0437, DAG/07-R0438, ASG/07-R0439

          This concerns the above-referenced FOIA requests. **Please be advised that the request
from Governor Howard Dean is the subject of litigation. You should consult with Nicholas
Oldham of the Federal Programs Branch at (202) 514-3367 before making any disclosures
or corresponding with the requester.**

          Attached are four documents, totaling five pages, which are of primary interest to the
Executive Office for United States Attorneys (EOUSA). The documents consist of letters to the
Attorney General and EOUSA's responses to that correspondence on behalf of the Attorney
General. Because this material was ultimately handled by EOUSA, we are referring it to your
Office for direct response to the requesters. The requesters will be notified of this referral.
Although we defer to the judgment of EOUSA regarding the disclosure of these documents,
please note that they contain information regarding the personal privacy of third parties which
should be redacted pursuant to FOIA exemption 6. Please furnish this Office with copies of your
final responses.

          You may forward copies of your responses to the following address: Office of
Information and Privacy, U.S. Department of Justice, 1425 New York Avenue NW, Suite 11050,
Washington, D.C. 20530-0001, Attention: Usman Ahmad.

          Copies of the requesters' initial letters are attached for your information. If you have any
questions regarding this matter, please call Usman Ahmad of this Office at (202) 514-4594.

Attachments
MAP:VRB:UA



**DEMOCRATIC NATIONAL COMMITTEE**

AG/07-R0411
DAG/07-R0412
ASG/07-R0413
UA

March 19, 2007

**By Hand**

Melanie Ann Pustay
Acting Director
Office of Information and Privacy
Department of Justice
Suite 11050
1425 New York Avenue., N.W.
Washington, D.C. 20530

**OFFICE OF INFORMATION
AND PRIVACY**

**MAR 2 6 2007**

**RECEIVED**

    Re:    <u>**Freedom of Information Act Request**</u>

Dear Ms. Pustay:

       This letter constitutes a request under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), and is submitted by the undersigned individuals who are concerned about the widening scandal involving improper and potentially unlawful attempts, by the Bush White House, Republican Members of Congress and Republican party officials, to influence and interfere in ongoing criminal investigations being conducted by United States Attorneys and to influence the hiring and firing of U.S. Attorneys for partisan political reasons.

       In addition to White House interference, and improper contacts from Republican Members of Congress, it was recently reported that a White House Deputy Political Director, using a Republican National Committee e-mail account, communicated with the Department of Justice about appointing a former aide to Karl Rove to be U.S. Attorney in Arkansas. And it was also reported that the then-Washington State Republican Party Chairman Chris Vance contacted then-U.S. Attorney John McKay (who was subsequently fired) about launching investigations of Democrats in connection with the 2004 gubernatorial election in that state.

       We therefore request:

      (a)      all documents in the possession, custody or control of the Office of Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, prepared on or after November 1, 2004, constituting, reflecting or referring to communications to or from or to any officer or employee of the Republican National Committee or any state or local Republican Party committee, referring, relating to or discussing (1) any

**Democratic Party Headquarters** ■ 430 South Capitol Street, SE ■ Washington, DC, 20003 ■ (202) 863-8000 ■ Fax (202) 863-8174
*Paid for by the Democratic National Committee. Contributions to the Democratic National Committee are not tax dedu...*
Visit our website at www.democrats.org.



GOVERNMENT
EXHIBIT
B

Melanie Ann Pustay
Office of Information and Privacy
U.S. Department of Justice
March 19, 2007

        prospective or ongoing investigation or prosecution; (2) initiating any
investigation or prosecution; or (3) the appointment or termination of any
United States Attorney; or (4) the performance, work or activity of any United
States Attorney or Office of United States Attorney; and

(b)     all e-mail messages in the possession custody or control of the Office of
Attorney General, Office of the Deputy Attorney General and Office of the
Associate Attorney General, sent on or after November 1, 2004, to or from
any e-mail address including the domain name "GWB43.com."

      The undersigned requestors fall in the category of "other requestors" for purposes of
FOIA and the Department's FOIA fee regulations. On behalf of the undersigned requestors, the
Democratic National Committee will pay any fees for searching or copying the requested
records.

      We look forward to your response within twenty (20) working days as the law requires. If
you have any questions or need any further information concerning this request, please contact
the first signatory below, Governor Howard Dean. Thank you for your prompt attention to this
important matter.

              Sincerely,

              Governor Howard Dean
              National Chair

EOUSA Requesters (Howard Dean and Laurie Scullin)                                                    Vaughn Index- January 17, 2008
Democratic National Committee v. United States Department of Justice; Civil No. 07-0712

# SUMMARY OF WITHHELD/REDACTED DOCUMENTS
### *(Democratic National Committee v. United States Department of Justice)*
### "RIF" – Released in Full; "RIP" -- Released in Part; "WIF" – Withheld in Full

| DOC # | PAGES | DESCRIPTION | EXEMPTIONS | JUSTIFICATION |
|---|---|---|---|---|
| 1 | 1 | One-page e-mail dated May 25, 2005 from Charles Larson, Justice Attache' in Baghdad, Iraq, to a list of recipients, re: "Leaving Baghdad 25 May 2005 to return to Cedar Rapids, Iowa." | RIP: <br><br> 5 U.S.C. § 552 (b)(6) | FOIA Exemption (b)(6) is asserted for non-government email recipients. The email does not indicate that the non-government recipients have waived their rights to privacy. Accordingly, release of their personal emails would violate their privacy rights by revealing their identities. |
| 2 | 2 | Two-page letter dated August 24, 2004 from Chuck Yob, National Committeeman for Michigan, and Holly J. Hughes, Republican National Committeewoman-Elect for Michigan, Republican National Committee, to Attorney General Ashcroft. The letter recommends a candidate for the position of United States Attorney for the Eastern District of Michigan, who was unsuccessful. | WIF: <br><br> 5 U.S.C. § 552(b)(6) | This letter pertains to a third party who was an unsuccessful candidate for the position of United States Attorney. The letter does not indicate that the party has waived his or her rights to privacy. Accordingly, release of the letter would violate the third party's privacy rights by revealing the identity of the person, who is the subject of the letter. <br><br> Exempt information is so inextricably intertwined with any nonexempt information that it cannot be meaningfully segregated for release. |
| 3 | 1 | One-page letter dated November 29, 2005 from Scott D. Reed, Treasurer of the Republican State Executive Committee of West Virginia, to Attorney General Alberto Gonzales. The letter recommends a candidate for the position of United States Attorney for the Northern District of West Virginia, who was unsuccessful. | WIF: <br><br> 5 U.S.C. § 552(b)(6) | This letter pertains to a third party who was an unsuccessful candidate for the position of United States Attorney. The letter does not indicate that the party has waived his or her rights to privacy. Accordingly, release of the letter would violate the third party's privacy rights by revealing the identity of the person, who is the subject of the letter. <br><br> Exempt information is so inextricably intertwined with any nonexempt information that it cannot be meaningfully segregated for release. |


GOVERNMENT EXHIBIT

EOUSA Requesters (Howard Dean and Laurie Scullin)                                          Vaughn Index- January 17, 2008
Democratic National Committee v. United States Department of Justice; Civil No. 07-0712

| DOC # | PAGES | DESCRIPTION | EXEMPTIONS | JUSTIFICATION |
|---|---|---|---|---|
| 4 | 1 | One-page letter dated January 10, 2006 from Michael A. Battle, Director of Executive Office for United States Attorneys, to Scott D. Reed, Treasurer of the Republican State Executive Committee of West Virginia. Mr. Battle's letter acknowledges receipt of Mr. Reed's recommendation letter to the Attorney General for a candidate who was unsuccessful for the position of United States Attorney for the Northern District of West Virginia. Mr. Reed's letter is listed as Document No. 3. | **RIP:**<br><br>5 U.S.C.<br>§ 552(b)(6) | This letter pertains to a third party who was an unsuccessful candidate for the position of United States Attorney. The letter does not indicate that the party has waived his or her rights to privacy. Accordingly, the name of the third party has been withheld. Release of the name of the third party would violate the third party's privacy rights by revealing the identity of the person. |
| 5 | 1 | One-page letter dated October 27, 2004 from Mary Beth Buchanan, Director of Executive Office for United States Attorneys to Holly J. Hughes, Republican National Committeewoman - Elect. Ms. Buchanan's letter acknowledges receipt of Ms. Hughes' recommendation letter to the Attorney General for an unsuccessful candidate for the position of United States Attorney for the Eastern District of Michigan. Ms. Hughes' letter is listed as Document No. 2. | **RIP:**<br><br>5 U.S.C.<br>§ 552(b)(6) | This letter pertains to a third party who was an unsuccessful candidate for the position of United States Attorney. The letter does not indicate that the party has waived his or her rights to privacy. Accordingly, the name of the third party has been withheld. Release of the name of the third party would violate the third party's privacy rights by revealing the identity of the person. |
|  |  |  |  |  |

EOUSA Requesters (Howard Dean and Laurie Scullin)                                                           `Vaughn Index- January 17, 2008
Democratic National Committee v. United States Department of Justice; Civil No. 07-0712

## SUMMARY OF FOIA EXEMPTIONS

### FOIA: TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)        (A) specifically authorized under criteria established by and Executive order to be kept secret in the in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(b)(2)        related solely to the internal personnel rules and practices of an agency;

(b)(3)        specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)        trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)        inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)        personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)        records or information compiled for law enforcement purposes, but only the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, © could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8)        contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)        geological and geophysical information and data, including maps, concerning wells.

EOUSA Requesters (Howard Dean and Laurie Scullin)                                    Vaughn Index- January 17, 2008
Democratic National Committee v. United States Department of Justice; Civil No. 07-0712

## SUMMARY OF PRIVACY ACT EXEMPTIONS

### PRIVACY ACT: TITLE 5, UNITED STATES CODE, SECTION 552a

(b)            "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record" is otherwise authorized by law.

(d)(5)         information complied in reasonable anticipation of a civil action proceeding;

(j)(2)         material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)         information which is currently and properly classified pursuant to Executive Order 12356 in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)         investigatory material complied for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)         material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)         required by statute to be maintained and used solely as statistical records;

(k)(5)         investigatory material compiled solely for the purpose of determining suitability eligibility, or qualification for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his identity would be held in confidence;

(k)(6)         testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)         material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his identity would be held in confidence.



U.S. Departmⁿ⁾    of Justice

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 616-6757  FAX: 616-6478   (www.usdoj.gov/usao)*

Requester:__**Howard Dean**_____    Request Number:__**07-2258-R**_____

Government Component that referred material:_**Office of Information and Privacy**_____

Dear Requester:                                                        *JUL 2 7 2007*

        This is in reply to your Freedom of Information Act/Privacy Act request of Mar. 19, 2007. Records were referred to us by the government component above for direct response to you.

        The referred material has been considered under both the FOIA and the Privacy Act to provide you the greatest degree of access. Exemptions have been applied when deemed appropriate either for withholding records in full or for excising certain information. The exemptions cited are marked below. An enclosure to this letter explains the exemptions in more detail.

    <u>Section 552</u>                            <u>Section 552a</u>

[   ] (b)(1)        [   ] (b)(4)        [   ] (b)(7)(B)        [   ] (j)(2)
[   ] (b)(2)        [   ] (b)(5)        [   ] (b)(7)(C)        [   ] (k)(2)
[   ] (b)(3)        [ X ] (b)(6)        [   ] (b)(7)(D)        [   ] (k)(5)
_____      [   ] (b)(7)(A)      [   ] (b)(7)(E)        [   ] _____
_____                          [   ] (b)(7)(F)

        We have reviewed approximately__**5**_____ page(s) of material:

_____ page(s) are being released in full (RIF);
___**2**__ page(s) are being released in part (RIP);
___**3**__ page(s) are withheld in full (WIF) and
_____ pages were duplicate copies of material already processed.

        This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

                                        Sincerely,

Enclosure(s)                            William G. Stewart II
                                        Assistant Director            Form No. 024 - 3/07



GOVERNMENT EXHIBIT
D



## U.S. Department of Justice

Executive Office for United States Attorneys

Office of the Director

*Room 2261, RFK Main Justice Building*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

*(202) 514-2121*

JAN 1 0 2006

Mr. Scott D. Reed
Treasurer
Republican State Executive Committee of West Virginia
P.O. Box 2711
Charleston, West Virginia 25330

Dear Mr. Reed:

Thank you for your letter to the Attorney General and to me recommending[ **b6**
**b6** ]for the position of United States Attorney for the Northern District of West Virginia.
A copy of your letter has been forwarded to the White House Counsel's Office.

We believe it is important to hear from persons, such as yourself, as we evaluate
candidates for the position of United States Attorney for the Northern District of West Virginia.
Your interest is very much appreciated.

Sincerely,

Michael A. Battle
Director

cc:     Honorable Harriett Miers
        Counsel to the President





**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Office of the Director*

---

*RFK Main Justice Building, Room 2261*          *(202) 514-2121*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

OCT 27 2004

Ms. Holly J. Hughes
Republican National Committeewoman - Elect
Republican National Committee
8801 Lehman
Montague, Michigan 49437

Dear Ms. Hughes:

Thank you for your letter to the Attorney General recommending **b6** or the position of United States Attorney for the Eastern District of Michigan. I apologize for any inconvenience our delay in responding may have caused you.

We believe it is important to hear from persons, such as yourself, as we evaluate candidates for the position of United States Attorney in the Eastern District of Michigan. Your interest is very much appreciated.

Sincerely,

*Mary Beth Buchanan*

Mary Beth Buchanan
Director

cc: Mr. Chuck Yob

b6
RIP

# EXHIBIT 3

LEXSEE



Cited
As of: Jan 11, 2008

**MAX HOLLAND, Plaintiff, v. CENTRAL INTELLIGENCE AGENCY, et al., Defendants**

**Civil Action No. 91-1233 Judge George H. Revercomb**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*1992 U.S. Dist. LEXIS 13196*

**August 31, 1992, Decided**
**August 31, 1992, Filed**

**DISPOSITION:**    **[*1]**  For the foregoing reasons, the Court grants the government's motion for summary judgment as to Documents 3, 4, 4a and 5a, as well as to Documents 8, 8a, 8b and 8c, and denies its motion for summary judgment as to Documents 9, 9a and 9b.

**COUNSEL:** For Defendant: Kirsten J. Moncada, Office of Information and Privacy, Department of Justice, 10th & Constitution Ave., N.W. -- Room 7238, Washington, D.C. 20530.

For Plaintiff: Daniel Guttman, Spiegel & McDiarmid, 1350 New York Avenue, N.W., Suite 1100, Washington, D.C. 20005-4798. Kate Martin, American Civil Liberties Foundation, 122 Maryland Avenue, N.E., Washington, D.C. 20002.

**JUDGES:** Revercomb

**OPINION BY:** GEORGE H. REVERCOMB

**OPINION**

*MEMORANDUM AND OPINION*

Plaintiff Holland is a biographer of John J. McCloy, the banker, lawyer, and presidential advisor who died in 1989. In 1983, Mr. Holland initiated a Freedom of Information Act (FOIA) request to the Central Intelligence Agency seeking access to all records pertaining to conversations, meetings and correspondence between Mr. McCloy and directors of the CIA. Since then, the CIA has located 22 documents by its accounting that are responsive to Mr. Holland's request. The CIA has released a portion of those documents, leaving **[*2]**   11 documents withheld in whole or in part that are the subject of this lawsuit, which Mr. Holland brings under the FOIA judicial review provision, *5 U.S.C. 552(a)(4)(B)*.

On November 8, 1991, the government moved for summary judgment based on the *Vaughn* affidavits [1] of Becky L. Rant, Informa-

tion Review Officer for the Office of Director of the CIA (Rant Declaration), and of Katherine M. Stricker, Information Review Officer for the Directorate of Operations for the CIA (Stricker Declaration). The Court has reviewed the affidavits, which include document indices, and the government's motion and pleadings in support of summary judgment, along with Mr. Holland's pleadings in opposition, the government's reply, Mr. Holland's surreply, and the government's response thereto. The Court also heard full oral argument on this matter on June 5, 1992. For the reasons set forth below, the Court finds that the government has properly justified its withholdings regarding 9 of the 11 documents at issue and grants its motion for summary judgment in part with regard to these documents; the motion is denied as it pertains to the other 3 documents as identified herein.

> 1 *Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).*

**[*3] FACTS**

The 11 documents divide into two groups: (1) those withheld pursuant to national security concerns, and (2) those withheld based on concern for the personal privacy of third parties.

### 1. *National Security*

The first group consists of documents identified in the record as documents 3, 4, 4a and 5a. *See* Stricker Declaration, para. 31, and attachments thereto.

### A. *Document 3*

Document 3 consists of a one-page memorandum dated June 12, 1980, with an attached routing and record sheet dated June 20, 1980. The Stricker Declaration and attachments indicate that the memorandum is from then Director of Central Intelligence Stansfield Turner to the Deputy Director

"concerning [the Director's] conversation . . . with Mr. McCloy pertaining to information

Mr. McCloy had received from a foreign contact concerning Eastern bloc overtures in a sensitive foreign area of concern to U.S. intelligence and policy-making interests. The deleted portions of the text are currently and properly classified at the CONFIDENTIAL level and have been withheld to protect intelligence sources and methods pursuant to [FOIA] exemptions [*5 U.S.C. 552*](b)(1) and (b)(3). **[*4]** *See* paras. 8-20, 24-28, *supra* [detailing CIA's reliance on these exemptions in conjunction, respectively, with Executive Order 12356, Section 1.3, and the National Security Act, *50 U.S.C. 403(d)(3)*, and the Central Intelligence Agency Act of 1949, *50 U.S.C 403g*]. It is evident from the text that the source was aware of Mr. McCloy's United States Government connections and intended his information to be relayed to interested United States Government officials. The information provided by Mr. McCloy's source and the description of the source are such that its disclosure would enable a knowledgeable observer, through a process of elimination, to identify him, thus leading to the harms specified in paras. 24-28 *supra.* The deleted text also reveals the targets of intelligence interest and methods utilized by the Agency in analyzing and processing intelligence information. As information pertaining to intelligence methods, this information is exempt from disclosure for the reasons state in paras. 14-22. A handwritten note on the document contains the names of the same two State Department employees which were deleted from the Routing Sheet. These names are also deleted here, **[*5]** pursuant to exemption (b)(3), for the identical reason of protection of intelligence methods and targets. *See* paras. 14-20 *supra.*

> *See Stricker Declaration, para. 31, at 19-20; see also* Holland's Memo in Opposition to Summary Judgment at 20.

### B. *Documents 4, 4a and 5a*

Document 4 is a one-page letter dated March 29, 1963, from then Director of Central Intelligence John A. McCone to then Secretary

of State Dean Rusk concerning a contempora-neous telephone conversation between Mr. McCone and Mr. McCloy and transmitting Document 4a, which is Mr. McCone's "Memo-randum for the Record" of the "highlights of Mr. McCloy's impressions" as relayed in that conversation. The Stricker Declaration de-scribes the memorandum Document 4a, which CIA initially withheld in its entirety and later released in part, as

presenting the substance of Mr. McCloy's conversation with the [Director] in which McCloy discussed information he had received and impressions he had gained during a recent trip to a particularly volatile and sensitive area of intelligence interest to the CIA. Mr. McCloy spoke with government leaders and others throughout the region during his visit; these sources **[*6]** obviously spoke with Mr. McCloy under the assumption of confidence, as evidenced by their frank comments concerning not only the internal situations in their countries but also the policies and leaders of neighboring countries. These sources are identified by name and/or governmental position. Public disclosure of this information would not only damage the position of those sources within their countries but such a breach of confidentiality could also damage relations between those countries and the United States. Accordingly, I have deter-mined that such information is currently and properly classified at the CONFIDENTIAL level and must be withheld pursuant to exemp-tions (b)(1) and (b)(3) to protect intelligence methods and targets as well as intelligence sources from unauthorized disclosure. *See* paras. 8-20, 24-28, *supra.*

Stricker Declaration, para. 31, at 22-23. Document 5a is identical to document 4a. [2] *Id.* at 24; Holland's Memo in Opposition to Sum-mary Judgment at 13. As to Mr. McCone's transmittal letter, document 4, the Stricker Dec-laration states that its second and third para-graphs,

withheld in their entirety to protect intelli-gence methods . . . pertain **[*7]** to information related to the [Director] from a CIA Chief of Station abroad concerning the political situation in that country and what the Agency and the United States Government should do in light of that situation to further United States Govern-ment interests in the region. Disclosure of this information could potentially damage relations between the United States and countries in that area of the world. This information is currently and properly classified at the SECRET level and is withheld pursuant to exemptions (b)(1) and (b)(3) to protect the location of a covert CIA field installation abroad, as well as other intelligence methods and targets. *See* paras. 13-23, *supra.*

Stricker Declaration, para. 31, at 21-22.

2   The identical document figures in this case because Mr. McCone also transmit-ted, by note dated March 28, 1963, his "Memorandum to the Record" concern-ing his conversation with Mr. McCloy to McGeorge Bundy, then National Security Advisor to the President. McCone's March 28 transmittal note, designated in the record as Document 5, has been re-leased to the plaintiff absent only internal organizational data and classification and document identification information that does not appear to be in dispute between the parties.

**[*8]** Mr. Holland attacks the Stricker Dec-laration on a number of grounds that the Court considers in its discussion *infra.* However, in his Surreply in Opposition to Summary Judg-ment and at oral argument, Mr. Holland raised additional facts pertinent in particular to the CIA withholding of documents 4a and 5a, Mr. McCone's "Memorandum for the Record."

In a supplemental affidavit dated May 7, 1992, Mr. Holland states that he has "located public documents that contain the information that the CIA appears to be withholding in

documents 4a/5a." Holland Supp. Affidavit, para. 2. These documents, part of Mr. McCloy's papers maintained by the Amherst College archives, stem from his March 1963 trip to the Middle East in his capacity as counsel to a group of international oil concerns. *Id.* at para. 3-4. The documents consist of a letter by Mr. George Ballou, an oil company official, to McCloy's law firm, an itinerary of stops during Mr. McCloy's trip and a list of persons at each stop, and the minutes of a meeting at which Mr. McCloy reported on his trip to a gathering of oil company representatives. *Id.* at paras. 5-7 and attachments. Mr. Holland asserts that these documents place **[*9]** in the public domain "the itinerary for Mr. McCloy's trip, the identity of the leaders he spoke to, and Mr. McCloy's impressions." Holland Surreply at 4. In regard to this information, the government states that "while disclosure of 'information that is officially acknowledged may be compelled over a valid FOIA exemption,'" *Public Citizen v. Department of State, 782 F. Supp. 144, 146 (D.D.C. 1992),* no official acknowledgment of the information at issue in this lawsuit has occurred. Government's Response to Surreply at 4.

### 2. *Personal Privacy*

The second group of documents, withheld based on concern for the personal privacy of two private individuals, consists of those identified in the record as documents 8, 8a, 8b and 8c, and 9, 9a and 9b. *See* Rant Declaration, paras. 22 and 25 and Attachments thereto.

### A. *Documents 8, 8a, 8b and 8c*

Documents 8, 8a, 8b and 8c concern an unsuccessful applicant for the position of CIA General Counsel who was a law firm associate of Mr. McCloy, had written to Mr. McCloy, and on whose behalf Mr. McCloy had written to the CIA. *Id.* Document 8 consists of a one-page letter dated February 24, 1981, from **[*10]** the applicant to Director of Central Intelligence William Casey, referencing an earlier contact by Mr. McCloy on the applicant's behalf, and an accompanying three-page resume. *Id.,* para. 25, at 16-17. The CIA has invoked FOIA exemption 6, *5 U.S.C. 552(b)(6),* to withhold the applicant's name, signature, initials and address from the letter, and to withhold the resume in its entirety; CIA also maintains that the resume is not responsive to plaintiff's request. *Id.*

Document 8a is a one-page letter dated February 11, 1981, from Mr. McCloy to Director Casey suggesting that Casey interview the applicant. Again, the applicant's name has been withheld pursuant to FOIA exemption 6. *Id.,* para. 25, at 17.

Document 8b is a one-page letter dated February 13, 1981, from the CIA Executive Secretary to the applicant acknowledging the applicant's interest in employment with the CIA. The applicant's name is again withheld, along with intra-Agency information *Id.*

Document 8c consists of a four-page memorandum from the applicant to Mr. McCloy discussing his interest in the General Counsel position, summarizing his qualifications, and attaching the three-page resume. It has been **[*11]** withheld in its entirety "as there are no reasonably segregable non-exempt portions which can be released." *Id.,* para. 25, at 18.

### B. *Documents 9, 9a and 9b*

Documents 9, 9a and 9b concern a private person who had written to Mr. McCloy in 1972 seeking his assistance in gaining access to historical Office of Strategic Services (OSS) records kept by the CIA. Document 9 is a one-page letter dated September 14, 1972, from Mr. McCloy to then Director of Central Intelligence Richard Helms acknowledging Helms's consideration of McCloy's request in regard to these records. The private person's name is withheld pursuant to exemption 6. *Id.* para. 25, at 19. Document 9a is Director Helms's response to McCloy's request. It is a one-page letter dated August 31, 1972. The private person's name is

again withheld, along with intra-Agency information. *Id.* para. 25, at 19-20. Document 9b, also a one-page letter and dated August 27, 1972, is McCloy's request to the Director Helms on behalf of the private person. Only information that would identify the person, and intra-Agency information, is withheld. *Id.* para. 25, at 20.

### DISCUSSION

### 1. *Impeachment* [*12] *of the CIA's Affidavits*

Mr. Holland's lead-off position at oral argument, as in his Surreply, was that the Stricker and Rant Declarations, upon which the government bases its motion for summary judgment, no longer provide a sufficiently credible basis for that purpose because Mr. Holland has impeached two of the national security withholding claims set forth in those affidavits. Hearing Transcript (HT) at 9-10, 12-14; Surreply in Opposition to Summary Judgment at 3.

### A. *Claim Regarding Document 10*

The first allegedly impeached claim concerns a document no longer in issue in this case -- Document 10 -- a 1966 note by which Director Helms forwarded to Mr. McCloy, and identified by title and number, a particular so-called "Special National Intelligence Estimate" (SNIE), or intelligence report. *See* Rant Declaration, para. 25, at 20; *see also* Holland's Opposition at 7-12. The CIA redacted from the note a reference to the SNIE title and report number under FOIA exemptions 1 and 3 on grounds that this information "pertains to intelligence methods and a particular intelligence target at a particular period of time and is, therefore, currently and properly classified [*13] at the SECRET level." Rant Declaration, para. 25. Regarding exemption 1, the Rant Declaration states that

the information contained in Document No. 10 for which a (b)(1) exemption is claimed concerns the following general categories of

classifiable information set forth in Executive Order 12356:

(a) Information that would disclose an intelligence method [Section 1.3(a)(4)];

(b) Information that concerns intelligence activities of the CIA [Section 1.3(a)(4)].

I have determined further that unauthorized disclosure of this information, either by itself or in the context of other information, reasonably could be expected to cause serious damage to the national security because such release could compromise sensitive CIA intelligence methods.

*Id.,* para. 12. In addition, the Rant Declaration stated that

The particular "intelligence method" at issue in this declaration is the report number and the title of a classified and closely held intelligence estimate prepared by the CIA for the use of U.S. Government policy makers. The release of even *the title* of *this classified report* would reveal a specific intelligence target of the intelligence community at the time in [*14] question and, thus, an area of particularly sensitive concern to the U.S. executive."

*Id.,* para. 17 (emphasis added).

In his opposition, Mr. Holland argues that the government's "assertion that such [SNIE] *titles* must be 'maintained in the strictest secrecy' is belied by official disclosure of numerous titles, including it appears, the very title and report number at issue here." Holland Opposition at 8 (emphasis added). Mr. Holland pointed to an unredacted memo provided to him by the State Department pursuant to a FOIA request -- a 1966 memo from State to Mr. McCloy -- that he asserted contained the very SNIE name and number withheld by CIA. *Id.* at 11-12.

The government investigated this assertion and subsequently released the unredacted Document 10, including its reference to the

SNIE number and title -- "Foreign Reactions to Certain US Courses of Action Regarding US Forces in Europe" -- along with its Reply memorandum filed January 21, 1992, explaining at page 2 n.1

that the State Department did not consult with the CIA regarding the release of this information, . . . the CIA had no evidence that this information had been released, and . . . by withholding this **[*15]** information, the CIA was handling with the sensitivity that it determined was necessary and with which the CIA believed other agencies were also treating the information. In addition, the defendants' principal counsel has taken the additional step of verifying that none of the other information at issue in this lawsuit has been released through FOIA disclosures by the State Department. [3]

The government further contended at oral argument, HT at 19, that counsel for Mr. Holland

made the statement that the [Stricker and Rant] declarations are completely unreliable because the declarations say that all of these [SNIE] numbers [and titles (*see* HT at 9)] must be protected. The declarations do not say any such thing. There was one SNIE number [and title] at issue in this lawsuit. Defendant's declarations only addressed that one special national intelligence estimate. That was the only intelligence estimate at issue, and that was the only one addressed in the declarations.

The Court has reviewed the Rant Declaration and agrees that its sworn assertions pertain strictly to the single SNIE title and number set forth in Document 10. The government makes no such "broad claim that **[*16]** titles of SNIEs must be kept secret," as Mr. Holland asserts. Holland Opposition at 9.

[3]    The government further asserted, *id.,* that

Plaintiff also mentions that the actual estimate referenced in Document 10 . . .

was not disclosed. Plaintiff's Opposition, p. 8. The estimate was not located by the CIA when it searched its records in response to plaintiff's FOIA request; the several administrative letters that the CIA has sent to plaintiff in which the responsive documents are listed clearly indicate this. *See, e.g.,* CIA's August 1, 1991 letter responding to plaintiff's administrative appeal (Rant Declaration, Exh. E.); *see also* Rant Declaration, para. 25, Document Disposition Index, Document 10 (describing this material as consisting only of the "1-page memorandum").

In addition, Mr. Holland contends, without support, that "in order to properly withhold the title of a specific SNIE, the agency must show that disclosure of the specific title at issue would be harmful." Holland Opposition at 11. He **[*17]** further argues, again without support, that

when it is recognized that the CIA now asserts that even the previously disclosed title of a quarter century old study of European reaction to potential U.S. troop withdrawal must remain secret now that troop reduction is an acknowledged reality, the bona fides of all of the . . . Agency's claims to classification are called into question.

Holland Opposition at 12. Contrary to his first assertion, the applicable standard for the Court appears to be that, in reviewing information withheld under FOIA on national security grounds,

"An agency is entitled to summary judgment if its affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." . . . District courts should . . . accord [the Agency's]

affidavits "substantial weight," considering the agency's "unique insights into adverse effects that might occur as a result of public disclosure."

*Goldberg v. Department of Justice, 818 F.2d 71, 77-78 (D.C. Cir. 1987),* **[*18]** *cert. denied, 485 U.S. 904 (1982).* The Court finds that the assertions contained in the Rant Declaration regarding Document 10 describe both the information withheld and the justification for withholding it with reasonable specificity. As to the logic of the connection between the two, while the Court acknowledges that the SNIE's title appears innocuous enough on its face, it is clearly plausible that the CIA had reason to withhold the title of a special intelligence report that is without dispute properly classified at the "Secret" level and that it believed was not public, and under the deferential *Goldberg* standard, this Court will not second guess the propriety of this classification. Moreover, "the identity of *sources* or *methods,"* such as the title indicates are treated by this report, "is *presumed* to cause damage to the national security" under Executive Order 12356, Section 1.3(c) (emphasis added). That the SNIE is now a quarter-century old is of no consequence, since plaintiff's speculation that the passage of time diminishes that need for its secrecy is a "mere hypothetical[]," and because Executive Order 12356 establishes no presumption **[*19]** in favor of disclosure of information classified under it after a period of time. *Allen v. Department of Defense, 658 F. Supp. 15, 20-21 (D.D.C. 1986); see also Hoch v. CIA, 593 F. Supp. 675, 683* ((D.D.C. 1984), *aff'd, 907 F.2d 1277 (1990).* The Court also rejects the argument that the CIA's release of the SNIE title once it was shown to have been made public by the State Department somehow impugns the integrity of the Rant affidavit or evinces agency bad faith. *See Military Audit Project v. Casey, 656 F.2d 724, 752, 754 (D.C. Cir. 1981).*

**B. *Claim regarding Documents 4a/5a***

As previously mentioned, Mr. Holland also argues that he has "located public documents that contain the information that the CIA appears to be withholding in documents 4a/5a," Holland Supp. Affidavit, para. 2, and that this fact impugns the veracity of the Stricker Declaration and forms a basis for complete release of those documents, Holland Surreply at 6-7 and HT 11-12, 13-14. [4] In particular, Mr. Holland argues that "there is no way you can tell from their affidavits that what we have in the public domain is the slightest **[*20]** bit different . . . from what they are claiming" is exempt. HT at 12. The same argument was advanced by the plaintiff in *Afshar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983).* In *Afshar,* the Court of Appeals made clear that a plaintiff asserting a claim of prior disclosure bears the *initial* burden, comprised of a number of hurdles including a demonstration that the "specific information in the public domain that appears to duplicate that being withheld" is the subject of "official acknowledgment." *Id. at 1130-1131; see also Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990).* For information to be "officially acknowledged," it must *inter alia* "have already been made public though an *official and documented disclosure"* by an authorized executive branch official. *Fitzgibbon, at 765* (emphasis added). Mr. Holland has not advanced, and the record does not reveal, any basis for concluding that the information contained in Mr. McCloy's archived papers has been "officially acknowledged" by the CIA or other government agency. The Court therefore need not discuss the government's additional **[*21]** arguments why the information contained in Documents 4a/5a is not in the public domain.

4    The Court recognizes that its consideration of whether the information contained in Documents 4a/5a has been publicly disclosed, prior to considering whether this information has been properly withheld in the first place under a

valid FOIA exemption, places the cart before the horse. The Court considers the disclosure issue first because of its implications regarding the overall veracity of the CIA affidavits. The Court considers *infra* at pages 20-22 the propriety of the government's withholding of Documents 4a/5a under FOIA exemptions 1 and 3.

The record also indicates that the CIA reviewed the Amherst College information submitted to it by the plaintiff and, as a result, released one additional item, the remainder of the second line of Documents 4a/5a, which revealed the region of the world Mr. McCloy traveled to in 1980. *See* CIA's Response to Surreply at 2; HT at 19. For the reasons already stated, the Court **[*22]** does not view this additional disclosure as impugning the Stricker Declaration.

For the foregoing reasons, the Court finds that the information adduced by Mr. Holland does not impeach the Stricker and Rant declarations as a basis for summary judgment.

### 2. Challenges to Use of FOIA Exemptions 1 and 3

#### A. *Document 4*

Mr. Holland attacks the Stricker Declaration regarding Document 4 on several grounds. First, he argues that the declaration's assertion that the information relayed from a CIA station chief abroad to the CIA Director in 1963 "could potentially damage relations between the United States and countries in that area of the world"

is insufficient to establish that the document is properly classified SECRET. A SECRET classification requires a finding that disclosure "reasonably could be expected to cause serious damage to national security." Executive Order 12,356, at Part I, Section 1.1. "Potential damage" is not "reasonable expectation" of "serious damage."

Holland Opposition at 14. Mr. Holland points out that the putatively insufficient "potential damage" prediction, which is contained in Stricker Declaration, para. 31, at 22, is more particularized **[*23]** to Document 4 than is what he characterizes as the "boilerplate assertion," contained in the declaration at para. 11, at 6, that "documents classified as SECRET here 'reasonably could be expected to cause serious damage to the national security.'" Holland Opposition at 14 n.10, quoting Stricker Declaration.

However, as the government points out, the more generalized para. 11, which correctly states the Executive Order's substantive classification requirement, asserts that declarant Stricker has "determined that the withheld information is properly classified at the CONFIDENTIAL *or SECRET* level *as indicated in the Document Disposition Index, infra*" (emphasis added). Para. 31 of the declaration is preceded by the heading *Document Disposition Index,* and the index's section discussing Document 4, *id. at 22,* states unequivocally that

this information is currently and properly classified at the SECRET level and is withheld pursuant to exemptions (b)(1) and (b)(3) to protect the location of a covert CIA field installation abroad, as well as other intelligence methods and targets.

Given this cross-referencing and reaffirmation by Ms. Stricker that Document 4 is now properly **[*24]** classified as secret, the Court has no reason to infer either a subterfuge from the declaration's statement on Document 4 or inattention by the CIA to requirements of the Executive Order. Moreover, the method of cross-referencing used in both the Stricker and Rant affidavits, in which an individualized discussion of a document refers the reader to a more generally stated justification for withholding, is standard and well accepted practice for *Vaughn* indices. *See, e.g., Keys v. Department of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987).*

Mr. Holland next attacks the competency of Ms. Stricker herself, stating that

the affidavit contains no information establishing any foundation for Stricker's assertion that disclosure of this information will cause present harm. The fact that Stricker is a FOIA officer at the CIA does not establish her competency to judge the potential political or other consequences from disclosure of specific information concerning the political situation in a specific country in 1963. Only someone with substantive expertise in the area would know this.

Holland Opposition at 15.  In *McTigue v. Department of Justice,* 84-3583, slip [*25] op. (D.D.C. Dec. 3, 1985), *aff'd 808 F.2d 137 (D.C. Cir. 1987)*, this district court held to the contrary.

Deference to the government when a claim to withhold is asserted under the national security and foreign relations exemption includes deference about who is qualified to classify and discuss such material. . . . A classification expert, who is unassociated with the creation and initial classification of Exemption One material, but who is designated by the Executive Agency as the authority on all such material, should not be second-guessed by either this court, *Halperin v. Central Intelligence Agency, 629 F.2d 144, 148 (D.C. Cir. 1980)*, or by the creator of the document.

*Id.* at 8-9 (rejecting plaintiff's claim that FBI classification expert had no "first-hand knowledge" of the sensitive events underlying the withheld document's classification); *cf. Spannaus v. Department of Justice, 813 F.2d 1285, 1289 (4th Cir. 1987)* (holding that declaration by agency official knowledgeable in the way the information is gathered satisfies the personal knowledge requirement of *Fed. R. Civ. P. 56(e)*).  *Londrigan v. FBI, 670 F.2d 1164, 1174-75 (D.C. Cir. 1981)*, [*26] cited by Mr.

Holland, is not to the contrary.  The Court has already considered and rejected plaintiff's argument that passage of time bears on classified documents withheld under FOIA exemption 1 and Executive Order 12356.

Next, Mr. Holland appears to attack the Stricker Declaration regarding Document 4 as non-specific and conclusory, both as regards the information withheld and the use of FOIA exemption 3 as a basis for withholding. He states that he "does not dispute the applicability of Exemption 3 to protect the location of covert CIA field installations abroad," but then questions whether the installation referred to in Document 4 is still covert, what in more specific terms are the "other intelligence methods and targets" there sought to be protected, and whether an intelligence "target" is protected under exemption 3 at all. Holland Opposition at 16.  Taking the last point first, Mr. Holland again cites no legal authority for his contention that an intelligence "target" does not fall within the rubric of intelligence "methods" protected by exemption 3 as invoked by the government. ⁵ The Court thus rejects this argument as baseless, agreeing with the government that

information [*27]  pertaining to the targets of intelligence activities and the use of particular intelligence methods at particular times could identify the intelligence methods employed. *Cf. Gardels v. CIA, 689 F.2d [1100,] 1106 (D.C. Cir. 1982)* ("each individual piece of information, much like a piece of jigsaw puzzle, may aid in piecing together bits of information").

CIA Reply, 8-9.

5    As previously noted (pages 2-3 *supra,* bracketed within quote), in addition to invoking FOIA exemption 1 together with Executive Order 12356, the government also supports CIA's redactions of documents 3, 4, 4a and 5a pursuant to FOIA exemption 3, *5 U.S.C. 552(b)(3)*, as specifically exempted from disclosure

1992 U.S. Dist. LEXIS 13196, *

by statute, invoking provisions of the National Security Act of 1947, *50 U.S.C. 403(d)(3)*, and the Central Intelligence Agency Act of 1949, *50 U.S.C 403g*. In particular, the government asserts that

the CIA has invoked *50 U.S.C. 403(d)(3)* and *50 U.S.C. 403g* . . . to withhold information the disclosure of which can reasonably be expected to identify CIA intelligence methods -- including intelligence targets and information that would reveal those targets, the use of specific intelligence methods at particular times, and the existence or location of covert CIA field installations in foreign countries; intelligence sources; CIA employee names and other personnel identifiers; the titles or organizational identifiers of CIA internal organizational components; and information that would reveal the structure of the internal CIA records system, such as internal file and control markings or numbers. *See* Stricker Declaration, paras. 13-29; Rant Declaration, paras. 14-19.

CIA Statement of Material Facts, para. 17. The Stricker Declaration, para. 19, at 10-11, explains that

among the "intelligence methods" at issue in this declaration is information which would reveal specific intelligence targets of the CIA at the time in question and, thus, areas of particularly sensitive concern to the U.S. government. A fundamental tenet of the intelligence process is that the identity of specific foreign intelligence targets, our degree of success in exploiting these targets, the vulnerability of particular targets to intelligence exploitation, the ability to process large masses of information, and the extent of the CIA's collection and analytical successes are all matters that must be maintained in the strictest secrecy.

**[*28]**  As to Mr. Holland's demand for more specifics on the information withheld, the Court notes that it would have two options in this regard: first, require more specific affidavits from CIA, perhaps for *in camera* review, or second, review *in camera* the documents at issue in this case. As to *in camera* review, the district court observed in *McTigue v. Department of Justice,* 84-3583, slip op. (D.D.C. Feb. 18, 1986), *aff'd 808 F.2d 137 (D.C. Cir. 1987)*, that

even where the documents are few in number, this court is not compelled to review them *in camera* absent a finding that the agency's affidavits are conclusory, are in bad faith, or contradict plaintiff's claims as to their substance. *See Allen v. Central Intelligence Agency, 636 F.2d 1287, 1298-99 (D.C. Cir. 1980)]*. . . . This court's difficult task, particularly in the sensitive Exemption One area, is not to find out exactly what is being withheld; the task is to determine the importance of that withholding to national security interests.  Thus, while reading the documents may be a necessary inquiry in some situations, reading the documents may be of no use absent an  **[*29]**  explanation by the withholding agency of why such information is important under Exemption One.

*Id.* at 3. Given that the standard set forth in *Goldberg, 818 F.2d at 77-78*, requires that the agency's affidavits "describe the withheld information . . . with *reasonable* specificity," a measure of discretion is necessarily vested in this Court to determine what is specific enough.

As to Document 4, the CIA has provided a redacted copy, showing that two paragraphs, consisting of no more than 18 lines, have been withheld.  The Stricker Declaration clearly states that in these lines, the Director of Central Intelligence related to the Secretary of State information relayed to the Director from a CIA Chief of Station abroad concerning the political situation in a particular unnamed country, as well as a recommendation as to the course the

United States government should take to further its interests in the region of that country. Stricker Declaration, para. 31, at 21-22. The declaration also states that the redacted lines contain information the disclosure of which would reveal the location of an unacknowledged covert field installation in a foreign country, **[*30]** which installation facilitates the CIA's foreign intelligence activities, including the collection of intelligence. *Id.,* para. 21, at 12. The Court considers this description to be reasonably specific. That the justification for withholding the two paragraphs from the document is articulated by Ms. Stricker as a general intent to protect "other intelligence methods and targets" -- logically, those discernible from the Director's discussion of the station chief's report -- in addition to the specific intent to protect "the location of a covert CIA field operation abroad," *id.,* para. 31, at 22, is in no way perplexing to the Court, particularly since nothing in the record contradicts this assertion, and there is no evidence of agency bad faith. In short, the declaration's description of Document 4 tells the Court as much as it needs to know. The Court thus rejects Mr. Holland's contention that "the Defendants must supply enough information for the Court to be able to determine whether the redacted information in fact describes an intelligence 'method.'" *See Hoch, 593 F. Supp. at 682.*

### B. *Documents 4a/5a*

Mr. Holland's first argument regarding **[*31]** CIA's use of FOIA exemptions 1 and 3 to withhold Documents 4a/5a is that the Stricker Declaration again fails to assert the minimum requirements of Section 1.1 of the Executive Order for classification as confidential; *i.e.,* that the information in the documents "reasonably could be expected to cause damage to the national security." As the government points out, however, CIA Response to Surreply at 8, the declaration, in addition to referencing the correct classification requirement in para.

11, states within the index's specific discussion of Documents 4a/5a that

public disclosure of this information *would* not only damage the position of those sources [to whom Mr. McCloy spoke] within their countries but such a breach of confidentiality *could* also damage relations between those countries and the United States. Accordingly, I have determined that such information is currently and properly classified at the CONFIDENTIAL level and must be withheld pursuant to exemptions (b)(1) and (b)(3) to protect intelligence methods and targets as well as intelligence sources from unauthorized disclosure.

Stricker Declaration, para. 31, at 23. Again, given this cross-referencing **[*32]** and reaffirmation by Ms. Stricker that Document 4 is now properly classified as confidential, the Court rejects the plaintiff's argument of insufficiency.

The next argument not already specifically addressed is that,

while the protection for sources is admittedly broad under *50 U.S.C. 403* [underlying FOIA exemption 3], it extends only to intelligence sources, not to all U.S. government sources. The Stricker affidavit contains no showing that the foreign persons who spoke with Mr. McCloy understood that they were communicating with a U.S. government intelligence agency. It establishes only that they were communicating with an American with government connections.

Holland Opposition, at 19. Again, Mr. Holland offers no law to support his proposition that, to be protected as an intelligence source, a person must have "understood" that he or she is "communicating with a U.S. government intelligence agency." In contrast, the government points to the holding in the *Allen* case, which protected the CIA's confidentiality regarding even persons "'unwittingly' cooperating" with the agency. *658 F. Supp. at 20* (citing *CIA v.*

*Sims, 471 U.S. 159, 176 (1984)).* **[\*33]** The Court also notes Ms. Stricker's statement, Declaration, para. 31, at 23, that the foreign government leaders and others with whom Mr. McCloy spoke during his trip relayed "frank comments concerning not only the internal situations in their countries but also the policies and leaders of foreign countries," and that these frank comments are evidenced in Documents 4a/5a. Such "foreign government information," as well as "the identity of a confidential foreign source, or intelligence sources or methods is *presumed* to cause damage to the national security" under Executive Order 12356, Section 1.3(c) (emphasis added).

Mr. Holland next makes the off-hand assertion that the CIA has made no showing that it is unable to segregate and release information from Documents 4a/5a such as Mr. McCloy's impressions that would not reveal the identity of sources or other properly classified information. FOIA requires that "any reasonably segregable portion" of a properly exempted record be released to a requestor, *5 U.S.C. 552(b)*, and the courts have interpreted this as indicating all non-exempt information unless it would have no meaning after redaction. *See, e.g., Doherty v. Department of Justice, 775 F.2d 49, 53 (2d Cir. 1985).* **[\*34]** The Stricker Declaration, para. 30, at 18, attests that, "after carefully reviewing the documents at issue, I have determined that there are no further meaningful segregable segments of information which can be released to the plaintiff. The CIA has made a conscientious effort to release all the information it can."; the Rant Declaration states likewise, para. 24, at 14. The Court agrees with the government that these affirmative statements, combined with a review of the redacted documents themselves and the government's subsequent releases of portions of documents already discussed, provide a sufficient showing of good faith in segregation.

**C. *Document 3***

The Court also finds that the Stricker Declaration, quoted in pertinent part *supra* at pages 2-3, describes with reasonable specificity the redacted portions of the two pages comprising Document 3, and demonstrates a logical connection between this information and the specific reasons set forth for its withholding under FOIA exemptions 1 and 3.

Mr. Holland challenges in particular the withholding of the names of two State Department employees from these pages, and an abbreviation indicating one's title, pursuant **[\*35]** to FOIA exemption 3 as information that "'pertains directly to intelligence methods and targets.'" Holland Opposition at 20, quoting Stricker Declaration, para. 31, at 20. He contends, again without support, that "Exemption 3 simply does not apply to such information."

The redacted memorandum clearly indicates that the Director left it to his Deputy Director "to call McCloy back when he returns from Europe in about a week," and the routing slip and memo show that, eight days later, someone at CIA, perhaps the Deputy Director, "referred Mr. McCloy" (and "referred him" [McCloy]) to the two State Department employees. The Stricker Declaration, para. 31, at 20, explains that disclosure of these employees' names and the title abbreviation

would allow plaintiff, or any other interested individual, by referring to State Department registers, to identify [the employees'] areas of expertise or assignments at the time in question. Thus, this disclosure would lead to identification of the specific area of intelligence interest which is discussed in the attached memo.

The declaration also explains that

detailed knowledge of the methods and practices of the CIA must be protected from **[\*36]** disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, or damage the intelligence operations of the CIA.

This is true whether the intelligence methods are those used for the collection of intelligence information, the conduct of clandestine activities, *or the analysis and evaluation of intelligence information.*

*Id.,* para. 17, at 10 (incorporated by reference in Stricker's discussion of the employees' names)(emphasis added). In the Court's opinion, these explanations, and the details discernible from the attachments, provide a reasonably specific and logically connected justification for withholding the employee's names. Once again, it is beyond the Court's province to second-guess the security implications involved.

For reasons already stated, the Court also rejects Mr. Holland's unsupported assertion that Mr. McCloy's "foreign contact" does not qualify as an intelligence source deserving of confidentiality under FOIA exemption 3. Likewise, it rejects his speculation that the recent dissolution of the Eastern bloc necessitates a showing by the CIA that the redacted information would cause harm and thus **[*37]** warrants its current classification as confidential. *See Military Audit Project, 656 F.2d at 738.*

### 3. *Challenges to Use of FOIA Exemption 6*

Regarding the redaction of documents 8, 8a, 8b, 9, 9a and 9b and the withholding of document 8c pursuant to FOIA exemption 6, Mr. Holland challenges (1) whether there is a legitimate privacy interest in the materials not disclosed, and (2) if there is, whether this interest is not outweighed by the public interest in disclosure. Holland Opposition at 26-32; Holland Surreply at 8-11; HT at 14-18.

FOIA exemption 6, *5 U.S.C. 552(b)(6)*, permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Mr. Holland, Opposition at 22 n.17, concedes that in *Department of State v. Washington Post Co., 456*

*U.S. 595 (1982)*, the Supreme Court construed the statutory phrase "similar files" broadly to encompass any file that contains information applicable to an individual, and he does not contest that the information that he seeks constitutes "similar files" within the meaning of the exemption. *See* **[*38]** *also Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991)*, *cert. denied, 112 S. Ct. 912 (1992).*

"The next step under Exemption 6 involves identifying the relevant privacy interests in nondisclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of person privacy.'" *Id.* In assessing the public interest in disclosure in this case, the Court must consider that "only 'official information that sheds light on an agency's performance of its statutory duties' merits disclosure under FOIA," and that "'disclosure of information about private citizens that is accumulated in various governmental files' would 'reveal[] little or nothing about an agency's own conduct." *Id.* (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989))*; *see also National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989)*, *cert. denied, 494 U.S. 1078 (1990)*("unless the public would learn something directly about the workings of the *Government"* there **[*39]** is not public interest in disclosure. (emphasis in original)). Furthermore, "the identity and purpose of the requesting party are *irrelevant* under FOIA." *Reed, 927 F.2d at 1252* (citing *Reporters Comm., 489 U.S. at 771*) (emphasis in original)).

#### A. *Documents 8, 8a, 8b and 8c*

The thrust of Mr. Holland's argument regarding the applicant for CIA's general counsel position, who was Mr. McCloy's law firm associate at the time, is that disclosure of his correspondence with McCloy and the CIA is not information "'which might harm the individual,'" the evil that Congress and the Supreme Court

have sought to prevent through FOIA exemption 6. Holland Opposition at 26 (quoting *Washington Post Co., 456 U.S. at 601*). Plaintiff asserts that, on the contrary, "the fact that Mr. McCloy sponsored the individual while he was a law firm associate is a mark of distinction." *Id. at 27*; *see also* Holland Surreply at 11; HT at 17-18.

The government relies on what is apparently the only case in point, *Core v. United States Postal Service, 730 F.2d 946 (4th Cir. 1984)*, in which the Court of Appeals for [*40] the Fourth Circuit affirmed the district court's decision under FOIA exemption 6 to allow withholding of employment histories of unsuccessful applicants for federal employment. In *Core,* the Court of Appeals reasoned that,

though the unsuccessful applicants about whom Core requested information were deemed qualified by the officials who reviewed the files, ultimately they were rejected after interviews by the selecting official. In contrast to the lack of harm from disclosure of the applications of persons who are hired, disclosure may embarrass or harm applicants who failed to get a job. Their present employers, co-workers, and prospective employers, should they seek new work, may learn that other people were deemed better qualified for a competitive appointment. It is no answer to say that only Core seeks information about the unsuccessful applicants and that his purpose is benign. If Core is entitled to information about unsuccessful applicants for a government job, other members of the public, including employers and employment agencies, would be entitled to the same information in this and other instances.

*Id. at 948*. This Court sees no meaningful [*41] distinction in Mr. Holland's protestation that the applicant in this case applied for a top legal job at the CIA, rather than for the "Systems Architect" position at issue in *Core*. [6] This Court also gives little weight to the plaintiff's point that McCloy's firm likely knew of the associ-

ate's unsuccessful application because of Mr. McCloy's sponsorship; the Court of Appeals in *Core* found an interest in preserving privacy regarding "prospective employers," "employment agencies," and "other members of the public," as well as "present employers" and "co-workers," learning about an unsuccessful application. Finally, Mr. Holland's contention that the honor inherent in having received Mr. McCloy's recommendation obviates the possibility of harm to the applicant is pure speculation; indeed, the fact that the applicant did not get the job even *with* Mr. McCloy's support -- either sincere and aggressive, or perfunctory, as it might have been -- might well in itself be a cause of embarrassment to this individual. Given the holding in *Core,* this Court has no trouble in finding a substantial privacy interest in the applicant's unsuccessful overture to the CIA both directly and [*42] through Mr. McCloy. [7]

6    The Court notes the statement of counsel for Mr. Holland at oral argument that "we agree, quite obviously, that the names of people who generally apply to jobs should not be made public." HT at 14.

7    The Court notes that it finds the *Core* decision much more directly in point to the case at bar than *Kurzon v. Department of Health and Human Services, 649 F.2d 65 (1st Cir. 1981)*, raised by Mr. Holland in his Opposition at 27 n.22 and at oral argument.

First, the *Kurzon* case involved not job applicants, but applicants for research grants from the National Institutes of Health. The Court of Appeals found that "federal grant applicants cannot reasonably expect that their efforts to secure government funds, especially in a field so much in the public eye as cancer research, will remain purely private matters." *Id. at 69*. Again in its concluding

line, the Court made clear that its decision was grounded on "the public character of the process of federal grant application and approval." *Id. at 70.*

Second, the *Kurzon* Court recognized that even rejection of a researcher's grant application "raises the possibility of an invasion of privacy." *Id. at 69.* It found, however, that the "evidence of stigma" before it was "frail" given that the government's own NIH affiants "agreed . . . no [negative] inference should be drawn [from rejection] because of the many possible reasons, unrelated to merit, for rejection." *Id.*

Third, the FOIA requestor in *Kurzon* sought only the names and business addresses of numerous NIH grant applicants, whom he wished to contact regarding their applications, *id. 69-70* & n.6, rather than the more broad-reaching request in this case that concerns one individual who is of specific interest because, and only because, of his association with Mr. McCloy.

**[*43]** Likewise, the Court finds no merit in Mr. Holland's assertion that additional information, other than that which would directly identify the applicant, might be segregated from the applicant's resume (part of Documents 8 and 8c) and from the applicant's four-page memo to Mr. McCloy (Document 8c) discussing his or her qualifications and interest in the CIA job. As already mentioned, the Rant Declaration, para. 24, at 14, attests that careful review of the documents revealed no further meaningful segregable segments. In addition, the Court agrees with the government that Mr. Holland's assertion, Opposition at 27, that much information contained in the resume and memo is likely already available in publications such as *Martindale-Hubbell* only shows how readily Mr. Holland, if these documents were released, could match up employment history, schooling, accomplishments, and other resume

matter found there to indirectly identify the applicant. *See Core, 730 F.2d at 948* ("Even if their names were deleted, the [job] applications generally would provide sufficient information for interested persons to identify [the applicants] with little further investigation").

**[*44]** Having determined that a substantial privacy interest exists in the personal information withheld from Documents 8-8c, the Court also finds that the public interest espoused by Mr. Holland in disclosure of this information is insubstantial by comparison. Mr. Holland asserts that

there is profound public interest in the understanding of the ways in which the government obtains its highest level officials. In the particular case of the intelligence agencies, the process has been the subject of numerous books and articles . . . . The CIA has a duty to employ talent capable of serving the public interest. The CIA's selection process has relied historically on a network that serves to identify top talent. In the absence of such network it would seem unlikely that a law firm associate (as identified by the CIA) would not only seek the highest legal position in the agency, but do so with the highest level sponsorship. Experts, politicians, and citizens of all stripes have long sought to consider the relation between the CIA's performance and the manner in which it selects its staff. The withheld documents tell part of the story of that network.

Holland Affidavit, paras. 26-27. **[*45]** As the government points out, the information already released to the plaintiff shows how the CIA's talent identifying "network" worked, or didn't work, when Mr. McCloy sponsored an associate of his firm. While the Court recognizes that revelation of this individual's identity, or information that would lead to it, might in some fashion further illuminate this "network," the Court finds on balance that disclosure of this identity under the circumstances of this case would work a clearly unwarranted invasion of personal privacy.

**B. *Documents 9, 9a and 9b***

The question presented by the redactions from Documents 9, 9a and 9b -- consisting of the identity of the researcher who sought Mr. McCloy's help in 1972 to gain access to OSS records -- is more problematical because the existence and extent of a privacy interest in this information is much less clear. The government has identified -- in its pleadings, not in its affidavits -- the privacy interest it is protecting as being the researcher's "personal relationship with McCloy and [the researcher's] ability to capitalize upon that relationship." CIA Response to Surreply at 9; *see also* CIA Reply at 13. Mr. Holland argues **[*46]** that the government is effectively attempting to withhold the name of a FOIA requestor, since both documents 9a and 9b make clear that the researcher had already asked the CIA for access to its files at the time he contacted Mr. McCloy. Holland Surreply, at 10; Holland Opposition, at 31. He also argues that the CIA fails to articulate any possible harm to a researcher that could result from public disclosure that he has sought information for his research. Surreply at 9-10. Mr. Holland identifies a public interest in illuminating

the social network and means by which influential persons like McCloy operated. When he volunteers, or is asked by a private citizen, to obtain some benefit from the federal government not casually available to all citizens, such activities are illustrative of how our federal government works.

Opposition, at 32. Neither party cites a case treating a comparable withholding under exemption 6, and the Court is aware of none.

In Document 9b, Mr. McCloy states to Director Helms that he has been asked to "second an application which [the researcher] has made" to the CIA "to examine certain operational reports." In Document 9a, Director Helms responds to **[*47]** Mr. McCloy that "upon receipt of your letter . . . I checked with

the officers who handle requests for OSS material" and learned that they had denied the researcher's request, with an explanation, some two months earlier. The McCloy letter indicates a relationship between McCloy and the researcher, either personal or professional, sufficient to prompt Mr. McCloy's intercession, which itself was sufficient to merit an inquiry and response from the head of the CIA. This fact lends some support to the government's contention of an association between McCloy and the researcher that was of value to the researcher, the disclosure of which might implicate a privacy interest. The Court can conjure no rationale, however, to justify assessing this as anything more than a *de minimis* privacy interest.

The government does not even speculate as to what harm might befall the researcher were his connection to Mr. McCloy to become known. Rather, it focuses on the insubstantial nature of the plaintiff's claim of public interest in the researcher's identity, arguing that whatever public interest Mr. Holland has identified has already been served by the information that has been released; *i.e.,* **[*48]** the fact and nature of McCloy's intercession and the CIA's reaction thereto. CIA Reply, at 13-14. While the Court agrees that the public interest espoused by the plaintiff is also *de minimis,* the government's argument jumps the gun. Even this Circuit's 1989 *Horner* decision, upon which the government relies in arguing that "'something, even a modest privacy interest, outweighs nothing every time,'" *879 F.2d at 879*, makes clear that "if no significant privacy interest is implicated (and if no other FOIA exemption applies), FOIA demands disclosure," and the Court need not proceed to a balancing of interests. *See Id. at 847.*

In assessing the espoused privacy interest here, the Court is instructed by the government's own "Guide to the Freedom of Information Act," which states, with several exceptions not pertinent here, that "FOIA requesters do not

ordinarily expect that their names will be kept private; therefore, release of their names would not cause even the minimal invasion of privacy necessary to trigger the balancing test." *See* Office of Information and Privacy, U.S. Dep't of Justice, *Freedom of Information Caselist* at 464 (1990). The researcher's **[*49]** expectation of privacy in his appeal to Mr. McCloy seems hardly more palpable than in his direct request to the CIA, since Mr. McCloy's letter makes clear that the researcher contacted him "asking that I second an application which he has made to your Agency." Document 9b. The clear implication is that the researcher desired the CIA to know of his association with Mr. McCloy for the express purpose of fostering his access to CIA files. Given this fact, it would be unreasonable to consider the direct request and the indirect appeal as different in any significant way.

### CONCLUSION

For the foregoing reasons, the Court grants the government's motion for summary judgment as to Documents 3, 4, 4a and 5a, as well as to Documents 8, 8a, 8b and 8c, and denies its motion for summary judgment as to Documents 9, 9a and 9b.

*8/31/92*

Date

Judge George H. Revercomb

*JUDGMENT ORDER* - August 31, 1992, Filed

For the reasons set forth in the accompanying Memorandum and Opinion, it is

ORDERED that summary judgment is granted in part in favor of the defendant as to Documents 3, 4, 4a and 5a, as well as to Documents 8, 8a, 8b and 8c. It is further

ORDERED that summary judgment **[*50]** is denied in part to the defendant as to Documents 9, 9a and 9b.

*8/31/92*

Date

Judge George H. Revercomb

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

DEMOCRATIC NATIONAL
COMMITTEE,

              Plaintiff,

      v.                                      Civil Action No. 07-712 (ESH)

UNITED STATES DEPARTMENT
OF JUSTICE,

              Defendant.

---

**[PROPOSED] ORDER**

       HAVING CONSIDERED the Defendant's Motion for Summary Judgment, Statement of

Material Facts as to Which There is No Genuine Issue, Memorandum of Points and Authorities

in Support of Defendant's Motion for Summary Judgment, and accompanying declarations

thereto, it is hereby this _____ day of _____ 2008, **ORDERED** that Defendant's

Motion for Summary Judgment is **GRANTED**.


                                      _____

                                      ELLEN SEGAL HUVELLE
                                      UNITED STATES DISTRICT JUDGE