IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>         Defendant. | Civil Action No. 07-712 (ESH) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendant United States Department of Justice ("DOJ") explained in its opening memorandum that it is entitled to summary judgment with respect to sixty-eight pages of documents that the Office of Information and Privacy ("OIP") withheld in full or in part under Exemption 5 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5). In response, and despite DOJ's supporting declaration which DNC does not dispute, DNC asks this Court to conclude that DOJ's withholdings are improper because the documents reflect communications where at least one federal employee used a personal email account with the domain name "GWB43.com." According to DNC, because White House officials were provided Republican National Committee ("RNC") email accounts, including "GWB43.com" email accounts, primarily to conduct political business in accordance with the Hatch Act, therefore any deliberative or presidential communications about official business sent to or from a "GWB43.com" email account must automatically be rendered political and not official in nature, irrespective of the actual content and nature of the communications. DNC's argument is

logically flawed and has no basis in the case law. Accordingly, DOJ is entitled to summary judgment.[1]

## ARGUMENT

### I. FEDERAL EMPLOYEES' USE OF "GWB43.COM" EMAIL ACCOUNTS DOES NOT RENDER THE PRESIDENTIAL COMMUNICATIONS PRIVILEGE INAPPLICABLE.

DNC argues that the presidential communications privilege should not apply to any communication sent to or received by at least one federal employee using a personal email account with the domain name "GWB43.com," which is controlled by the RNC. Specifically, DNC makes a three-step argument: first, DNC claims that White House officials were notified that they should conduct White House business on official email accounts and political business on RNC email accounts to avoid running afoul of the Hatch Act (prohibiting use of government owned-equipment to engage in political activities); second, based on this notice, the Court should conclude as a matter of law that any communication by a federal employee using a "GWB43.com" email account necessarily means the employee was giving "political advice" irrespective of the actual content and nature of the communication; and, third, political advice is "by definition[] not being given for the purpose of enabling the President to carry out" his official duties and thus not protected by the presidential communications privilege, again irrespective of the actual content and nature of the communication. Pl.'s Opp'n 3-7 & Ex. 3 p. 4.

---

[1] Pursuant to the parties' Joint Stipulation (dkt. no. 10), DNC originally challenged the sixty-eight pages identified above and five pages of documents that DOJ's Executive Office for United States Attorneys withheld in full or in part under Exemption 6, 5 U.S.C. § 552(b)(6). Joint Stipulation ¶ 10; Def.'s Mem. of P. & A. In Supp. Of Mot. For Summ. J. 19-26 (dkt. no. 11) ("Def.'s Mem."). DNC concedes in its opposition that Exemption 6 "was properly invoked as to those five pages and [DNC] is not further contesting the withholding of those five pages." Pl.'s Opp'n & Cross-Mot. For Summ. J. 2 (dkt. no. 12) ("Pl.'s Opp'n"). Accordingly, DOJ is entitled to summary judgment with respect to those five pages.

As an initial matter, the Court should reject DNC's argument because it is logically flawed. The argument relies on the false premise that, because White House officials were provided RNC email accounts to conduct political business in order to comply with the Hatch Act, any advice provided through an RNC email account must be deemed political in nature. To reject this premise, the Court need look no further than the testimony of Scott Jennings, a former White House official, which DNC attaches to its opposition. Pl.'s Opp'n Ex. 1 pp. 2-4. Mr. Jennings testified before the Senate Judiciary Committee that he used his "GWB43.com" email account for government business because he had access to it on his laptop and BlackBerry device. Thus, "over the course of time, it became efficient and crucial for [him] to be able to respond to communications in a 24/7 manner," and he "had access to [his "GWB43.com" email account] 24 hours a day, 7 days a week, unlike [his White House] e-mail account." *Id.* DNC's own exhibit thus demonstrates that there is no basis for the Court to conclude as a matter of law that *all* advice rendered through a "GWB43.com" email account must have been political in nature.

In addition, the law makes clear that the Court must look to the nature of the communication and not the email account used or a generic label such as "political advice" in determining whether the presidential communications privilege applies. *E.g.*, *Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001) ("To qualify [under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would government litigation against the agency that holds it."); *cf. Lardner v. DOJ*, 2005 U.S. Dist. LEXIS 5465, *23-24 (D.D.C. March 31, 2005) (holding that the President need not personally invoke the presidential communications privilege because, in part, the application of

Exemption 5 depends on the content or nature of the document only).  DNC does not contest this principle, nor could it.  Rather, DNC relies on the Court of Appeals' statement that the presidential communications privilege " 'only applies to communications that [presidential] advisers and their staff author or solicit and receive in the course of performing their function of advising the President on official government matters.' "  Pl.'s Opp'n 6 (quoting *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)).

This argument depends on DNC's factually unsupported premise that no email sent from an RNC email account could have contained "official advice."  In addition to the logical flaw described above, this argument fails because nothing in *In re Sealed Case* limits the presidential communications privilege to communications through governmental rather than personal email accounts.  To the contrary, the Court of Appeals made clear that the relevant limitation is that the communications must have "occurred in conjunction with the process of advising the President." *In re Sealed Case*, 121 F.3d at 751-52; *see also id.* at 745 (presidential communications privilege applies "specifically to decisionmaking of the President").

As to that requirement, DOJ submitted the Declaration of Melanie Ann Pustay, Director of the Office of Information and Privacy, United States Department of Justice ("Pustay Decl."), attached as Exhibit 1 to DOJ's Memorandum in Support of its Motion for Summary Judgment (dkt. no. 11).  The Declaration describes each email that OIP withheld in reliance on the presidential communications privilege as "pertain[ing] to presidential decisionmaking functions."  Pustay Decl. ¶ 38; *see also* Def.'s Mem. 9-13.  It further explains the presidential decision involved with respect to each *Vaughn* Group and what role the emails played in the presidential decision.  *Id.* ¶¶ 37-42; *see also* Def.'s Mem. 9-13.  The Declaration thus demonstrates that the withheld communications fit within the ambit of the presidential

communications privilege because those communications "occurred in conjunction with the process of advising the President." *In re Sealed Case*, 121 F.3d at 751-52; Def.'s Mem. 9-13.

It is well established that courts must "accord substantial weight" to an agency's declaration regarding FOIA exemptions, 5 U.S.C. § 552(a)(4)(B), and that such declarations "are accorded a presumption of good faith." *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). The Court may grant summary judgment based on information provided in an agency declaration that describes "the [withheld] documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). DNC does not dispute the content or adequacy of the Pustay Declaration, but instead asks this Court to draw the legal conclusion that all advice rendered through RNC email accounts is political in nature solely because White House officials were once advised to conduct political business on RNC email accounts. This failure by DNC to dispute the Declaration, by itself, is sufficient for the Court to deny DNC's Cross-Motion. *E.g.*, *Citizens for Responsibility & Ethics in Washington v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 48 (D.D.C. 2007) ("Absent a specific challenge to the substance of the Bagnal declaration, FEMA has easily met its burden in establishing a basis for withholding the documents.").

Finally, the Court should reject DNC's specious argument that emails "subject to RNC's own, private document retention policies … cannot be treated as official presidential communications to which the presidential communications privilege applies." Pl.'s Opp'n 8-9. DNC's position not only relies on a false premise, but is wholly unrelated to the question this Court is being asked to resolve, namely whether the nature of the withheld communications fit

within the ambit of the presidential communications privilege as incorporated into FOIA Exemption 5. On that question, for the reasons stated above, DNC's claims must fail.[2]

## II. FEDERAL EMPLOYEES' USE OF "GWB43.COM" EMAIL ACCOUNTS DOES NOT RENDER THE DELIBERATIVE PROCESS PRIVILEGE INAPPLICABLE.

Like its argument regarding the presidential communications privilege, DNC contends that federal employees communicating through "GWB43.com" email accounts "were, by definition, engaged in political activity and acting as political advisors" instead of acting in a governmentally conferred capacity. Pl.'s Opp'n 10-11. Consequently, DOJ cannot withhold the documents or portions of documents reflecting these communications based on the deliberative process privilege because the documents do not satisfy Exemption 5's intra-agency requirement.[3] *Id*. For the same reasons discussed above, the Court should reject DNC's argument because it is logically flawed and directly refuted by DNC's own exhibits. There is simply no basis for the Court to conclude as a matter of law that federal employees communicating through "GWB43.com" email accounts were necessarily acting as political advisors; thus, there is no basis for the Court to conclude as a matter of law that any documents reflecting those communications fail to satisfy the intra-agency requirement.

---

[2] The Presidential Records Act, 44 U.S.C. §§ 2201-2207 ("PRA"), imposes certain recordkeeping obligations for "presidential records," which are defined as "documentary materials, or any reasonably segregable portion thereof, created or received by the President, his immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise and assist the President…." 44 U.S.C. § 2201(2). In addition, the PRA requires that such steps lead to a transfer of records to the Archivist of the United States "[u]pon the conclusion of a President's term of office." 44 U.S.C. § 2203(f)(1). DNC itself acknowledges that whether or not the White House officials using RNC email accounts had properly treated "e-mails sent on the RNC accounts as presidential records is not an issue before the Court." Pl.'s Opp'n 8.

[3] Exemption 5 only permits withholding of documents that are either "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5). For ease of reference, this Reply refers to the requirement simply as intra-agency.

In addition, the cases on which DNC relies are inapposite because they address the dissimilar situation involving communications where at least one party is a non-government employee. In *Klamath*, 532 U.S. at 4, the Supreme Court considered the status of documents submitted by Indian Tribes to the Department of the Interior addressing tribal interests that were then the subject of state and federal water allocation proceedings. The Court concluded that these documents did not satisfy Exemption 5's intra-agency requirement because the "object of the Tribe's communications is a decision by an agency of the Government to support a claim by the Tribe that is necessarily adverse to the interests of competitors." *Id.* at 14.

In so holding, the Supreme Court observed that "some Courts of Appeals" have adopted a "consultant corollary to Exemption 5." *Id.* at 9-10. "[C]onsultants whose communications have typically been held exempt [based on the consultant corollary] have not been communicating with the Government in their own interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant." *Id.* at 12; *see also Nat'l Institute of Military Justice v. Dep't of Defense*, 512 F.3d 677, 2008 U.S. App. LEXIS 486, *12 (D.C. Cir. Jan. 11, 2008) (holding that documents submitted by private citizens in response to agency's request satisfied the intra-agency requirement); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 227 F. Supp. 2d 17, 26-27 (D.D.C. 2002) (holding that communications between the United States and Chile did not satisfy the intra-agency requirement). The Court also noted, however, that the consultant corollary was justified because the consultants "may be enough like the agency's own personnel to justify calling their communications 'intra-agency.'" *Klamath*, 532 U.S. at 12. In other words, "[c]ommunications with outside consultants have been deemed part of an agency's deliberative process only where the documents prepared by or communications to or from the outside consultants 'played

essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done,' or where 'the consultant functions just as an [agency] employee would be expected to do.' " *Ctr. for Int'l Envtl. Law*, 237 F. Supp. 2d at 25 (quoting *Klamath*, 532 U.S. at 10, 11).

Here, there is no need for the Court to inquire whether the withheld communications are "enough like" communications between the "agency's own personnel" to satisfy the consultant corollary because all of the communications were, in fact, between federal employees and did not have the non-governmental involvement necessary before the Court considers the consultant corollary. Pustay Decl. ¶¶ 26-36, 40; *see also Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129-31 (D.C. Cir. 2005) (holding that Exemption 5 applies to deliberative communications with the President and his staff even though they are not subject to FOIA); *Berman v. CIA*, 378 F. Supp. 2d 1209, 1219-20 (E.D. Cal. 2005) (rejecting argument that documents prepared for the President are not intra-agency simply because the President is not an agency under FOIA). The facts of this case simply do not implicate *Klamath* and its progeny. And, unsurprisingly, DNC does not cite a single case holding that the Executive Branch loses the protection of the deliberative process privilege simply because one or more federal employees communicated through a non-governmental email account.

As discussed above, DNC does not dispute the content or adequacy of the Pustay Declaration. That Declaration describes in detail how each of the withheld communications involved deliberations between White House officials, White House and DOJ officials, or members of the Judicial Selection Committee (a select group of presidential advisers including members of the Office of Counsel to the President and certain Department of Justice Officials),

Pustay Decl. ¶¶ 26-36, 40, which more than satisfies DOJ's burden of demonstrating that the withheld communications satisfy Exemption 5's intra-agency requirement.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, Defendant respectfully requests that this Court grant its Motion for Summary Judgment and deny DNC's Cross-Motion for Summary Judgment.

Date: March 6, 2008

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
Federal Programs Branch

  /s/  Nicholas A. Oldham
Nicholas A. Oldham (D.C. Bar No. 484113)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C.  20044
<u>Delivery Address</u>
20 Massachusetts Ave., N.W.
Washington, D.C.  20001
Tel: (202) 514-3367
Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>   Defendant. | Civil Action No. 07-712 (ESH) |

**DEFENDANT'S RESPOSNES TO PLAINTIFF'S STATEMENT OF ADDITIONAL
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

  Pursuant to Rule 56.1 of the Rules of the United States District Court for the District of Columbia, Defendant United States Department of Justice, by undersigned counsel, respectfully submit the following responses to Plaintiff Democratic National Committee's Statement of Additional Material Facts As To Which There Is No Genuine Dispute.

  1. Undisputed, but not material.

  2. Undisputed, but not material.

  3. Undisputed only as follows: "The RNC e-mail accounts were provided to certain White House staff for political activity or political business, as distinct from official White House business, in order to avoid use of government resources for political activity, which would be a violation of the Hatch Act." In addition, this fact is not material.

Date:  March 6, 2008                                  Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
Federal Programs Branch

   /s/  Nicholas A. Oldham
Nicholas A. Oldham (D.C. Bar No. 484113)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
<u>Mailing Address</u>
P.O. Box 883
Washington, D.C.  20044
<u>Delivery Address</u>
20 Massachusetts Ave., N.W.
Washington, D.C.  20001
Tel: (202) 514-3367
Fax: (202) 616-8470
nicholas.oldham@usdoj.gov

Attorneys for Defendant