UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**DEMOCRATIC NATIONAL COMMITTEE,**  )
                                    )
       **Plaintiff,**                  )
                                    )
       v.                              )   Civil Action No.  07-712 (ESH)
                                    )
**UNITED STATES DEPARTMENT OF**     )
**JUSTICE,**                        )
                                    )
       **Defendant.**                  )
_____ )

## MEMORANDUM OPINION

The Democratic National Committee ("DNC") has sued the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), to obtain the release of certain communications concerning the appointment, terminations, or performance of any United States Attorney or United States Attorney's Office.  Still in dispute are 68 pages of e-mails that are being withheld under FOIA Exemption 5.  Each side has moved for summary judgment.  For the reasons set forth below, the Court will sustain the defendant's nondisclosure of these documents.

## BACKGROUND

This lawsuit has its origins in the broader controversy that arose over DOJ's dismissal of several United States Attorneys in 2005 and 2006.  As part of its response to the Congressional investigation that ensued, the White House revealed that e-mail communications related to these dismissals had been sent to or from Republican National Committee ("RNC") e-mail accounts and had subsequently been lost.  Sheryl Gay Stolberg, *Missing E-mail May Be Related to Prosecutors*, N.Y. Times, April 13, 2007, at A1.  This disclosure became part of a separate Congressional

investigation "into whether Karl Rove and other top aides to President Bush used the e-mail accounts maintained by the Republican National Committee to circumvent record-keeping requirements." *Id.*

Simultaneously with the disclosures relating to the dismissals of the United States Attorneys and the use by high-level White House officials of RNC-provided e-mail accounts, Governor Howard Dean, on behalf of the DNC, submitted a FOIA request on March 19, 2007, to the DOJ seeking documents from the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General relating to, *inter alia*, the appointment, performance, and dismissal of United States Attorneys.[1]  (Def.'s Stmt. of Mat. Facts ["Def.'s Stmt."] ¶ 1.)  The search was narrowed by consent of the plaintiff to records of current officials in OAG, ODAG, OAAG, and

---

[1] Specifically, the DNC requested:

> (a) all documents in the possession, custody or control of the Office of the Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, prepared on or after November 1, 2004, constituting , reflecting or referring to communications to or from or to any officer or employee of the Republican National Committee or any state or local Republican Party committee referring, relating to or discussing (1) any prospective or ongoing investigation or prosecution; (2) initiating any investigation or prosecution; or (3) the appointment or termination of any United States Attorney; or the performance,work or activity of any United States Attorney or Office of the United States Attorney; and
>
> (b) all email messages in the possession, custody, or control of the Office of the Attorney General, Office of the Deputy Attorney General and Office of the Associate Attorney General, sent on or after November 1, 2004, to or from any email address including the domain name "GWB43.com."

(Def.'s Stmt. ¶ 1.)

thirteen former officials in OAG and ODAG. (*Id.* ¶ 2.) DOJ's Office of Information and Privacy ("OIP") completed its search of those records on July 16, 2007, and identified 5,337 pages of e-mails, which were then analyzed for responsiveness, duplication, and the application of FOIA exemptions. (Def.'s Mot. 2.)

The parties have now reached agreement on all but 68 pages of e-mails. (Pl.'s Cross-Mot. 3.) Melanie Ann Pustay, Director of the OIP, has submitted a declaration and a *Vaughn* index, which plaintiff does not challenge, in which she explains that all of the requested e-mails were sent between officials in the White House and the Department of Justice and were sent to or from an e-mail address with the domain name "GWB43.com." (*See* Def.'s Ex. 1 [Pustay Declaration] ¶ 24; Def.'s Ex. K [Vaughn Index].)[2]  The e-mails

> pertain to matters such as responding to an upcoming Congressional hearing, formulating official responses to inquiries from outside the Executive Branch, suggesting a plan of action for the appointment of a U.S. Attorney or conferring on issues arising from such appointments, recommending revisions to documents, and planning for the hiring of new Department personnel.

(Def.'s Ex. 1 ¶ 29.) The requested documents also include several pages of e-mails between the White House and members of the Judicial Selection Committee, "a select group of presidential advisers which includes members of the Office of Counsel to the President and certain Justice Department Officials." (*Id.* ¶ 39.)[3]  All of the requested e-mails have been withheld pursuant to

---

[2] The contested documents are responsive to part (b) of plaintiff's request, *i.e.*, they were "sent on or after November 1, 2004, to or from any e-mail address including the domain name "GWB43.com." There are no documents responsive to part (a) of plaintiff's request that are at issue.

[3] Pustay has categorized the 68 contested pages into six numbered groups. Group 3 includes an e-mail from the White House to DOJ forwarding an e-mail about an impending Congressional hearing and soliciting assistance and an e-mail chain regarding an internal White

FOIA Exemption 5.

## ANALYSIS

Exemption 5 provides that FOIA "does not apply to matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). The government argues that this exemption applies to the requested e-mails because they are all communications between officials in the White House and DOJ that are protected from disclosure in litigation under the deliberative process privilege or the presidential communications privilege.[4] Plaintiff contends that Exemption

---

House discussion about how to respond to an inquiry from the North Dakota Attorney General's Office. Group 6 includes a set of e-mails from the White House to members of the Judicial Selection Committee ("JSC") advising on dates, times, and locations of JSC meetings and listing the participants and portions of two e-mail communications discussing a proposed plan of action regarding nominations. Group 21 includes one e-mail chain between the White House and DOJ in which the correspondents discuss potential candidates for a United States Attorney position and develop a selection process. Group 25 includes portions of two e-mails chains discussing how to handle DOJ's response to a controversy regarding the nomination of a United States Attorney and portions of one e-mail chain in which the response to a news article about the replacement of a U.S. Attorney is discussed. Group 26 consists of various e-mails regarding the impending appointment of United States Attorneys, including a discussion of hiring issues and background information on the candidates. Finally, Group 28 is comprised of portions of e-mail communications discussing the merits and logistics of hiring of a particular individual to work at DOJ. (Def.'s Ex. K [*Vaughn* Index].) Plaintiff does not dispute the accuracy or adequacy of Pustay's descriptions.

[4] The deliberative process privilege protects the integrity of agency decisionmaking by protecting from disclosure documents that are both "predecisional" and "deliberative." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). It "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* The presidential communications privilege is broader than the deliberative privilege, in that it "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case*, 121 F.3d 729, 745 (D.C. Cir. 1997). This privilege protects the "President's need for confidentiality in the communications of his office," *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1115 (D.C. Cir. 2004)(citation and internal quotation marks omitted), and "extend[s] beyond communications directly involving and

4

5 is inapplicable because these e-mails were sent to or from a GWB43.com e-mail address provided by the RNC.

Plaintiff's argument is as follows. In order to comply with the Hatch Act,[5] the RNC assigned GWB43.com e-mail accounts to certain White House staff members to enable them to engage in political communications while they were at work. (*See* Pl.'s Cross-Mot. 1.) As explained by White House Deputy Spokesperson Dana Perino, "White House business still need[ed] to be done on White House official accounts" and "political affairs business need[ed] to be done on . . . RNC account[s]." (Pl.'s Ex. 3 [Federal News Service, White House Regular Briefing (April 13, 2007)] at 5.) Because the RNC accounts were only "supposed" to be used for political communications (*see* Pl.'s Stmt. of Material Facts [Pl.'s Stmt.] ¶ 3), plaintiff urges the Court to presume that any communications that occurred through those accounts were necessarily "political," and therefore not part of the official duties of the government official who used that account. These "political" communications, according to plaintiff, are not protected by the presidential communications privilege because they are not related to "official government matters." *See In re Sealed Case*, 121 F.3d at 752 ("[T]he [presidential communications] privilege only applies to communications that these advisers and their staff author or solicit and receive in the course of performing their function of advising the President on official government matters.") Nor, plaintiff argues, can they be withheld under the deliberative process privilege because the White House officials using their RNC accounts "were not acting in

---

documents actually viewed by the President, to the communications and documents of the President's immediate White House advisers and their staffs." *Id.* at 1114.

[5] Under the Hatch Act, certain Executive branch employees may engage in political activity while at work, but only "if the costs associated with that political activity are not paid for by money derived from the Treasury of the United States." 5 U.S.C. § 7324(b).

a governmentally conferred capacity . . . ." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10 (2001) (citation omitted). Plaintiff's argument, however, crumbles because it is based on a fallacious foundation.

First, plaintiff's position is based on the false factual premise that White House officials only used their RNC e-mail accounts for political communications. While plaintiff is correct that RNC e-mail accounts were originally "supposed" to be used exclusively for political communications (*see* Pl.'s Ex. 3 at 5), it is clear from plaintiff's own exhibits that, in fact, this supposition did not become reality. A report prepared for the United States House of Representatives Committee on Oversight and Government Reform indicates that it was common for many of the 88 White House officials who received RNC e-mail accounts to use them for official government business. (*See* Pl.'s Ex 2 [Interim Report: Investigation of Possible Presidential Records Act Violations] at i ("These [RNC] email accounts were used by White House officials for official purposes, such as communicating with federal agencies about federal appointments and policies.").) For instance, Scott Jennings, a former White House official who was Karl Rove's deputy (*id.*), testified before the Senate Judiciary Committee that he used his RNC e-mail account for government business because he had access to it on his laptop and Blackberry. He explained that "over the course of time, it became efficient and crucial for [him] to be able to respond to communications in a 24/7 manner," and he "had access to [that account] 24 hours a day, 7 days a week, unlike [his White House] e-mail account." (Pl.'s Ex. 1 [Senate Judiciary Committee Testimony of Scott Jennings] at 6.) It is therefore clear that RNC e-mail accounts were used (rightly or wrongly) both for official and RNC business, and thus the nature of the server is not necessarily informative as to whether the document contained official or political communications.

While plaintiff appears to acknowledge that even though "[t]he RNC email accounts were supposed to be used by White House staff for political activity or political business, as distinct from official White House business . . . ." (Pl.'s Stmt. ¶ 3), this simply did not happen. Plaintiff nonetheless argues that it is "manifestly inappropriate to extend the presidential communications privilege to political emails" under FOIA in view of the White House's failure to preserve these records as required by the Presidential Records Act, 44 U.S.C. §§ 2201 *et seq.* (*See* Pl.'s Cross-Motion 7-9).[6] As found by the House Oversight and Governmental Reform Committee's Interim Report "it appears that the RNC has destroyed a large volume of the e-mails of White House officials who used RNC e-mail accounts . . . . [T]he RNC has retained no e-mail messages whatsoever for 51 of the 88 White House officials with RNC e-mail accounts." (Pl.'s Ex. 2 at 4-5.) The report concluded:

> The Committee has obtained evidence of potentially extensive violations of the Presidential Records Act by senior White House officials. During President Bush's first term, momentous decisions were made, such as the decision to go to war in Iraq. Yet many e-mail communications during this period involving the President's most senior advisors, including Karl Rove, were destroyed by the RNC. These violations could be the most serious breach of the Presidential Records Act in the 30-year history of the law.

(Pl.'s Ex. 2 at 9.)

Given this apparently flagrant violation of the Presidential Records Act, plaintiff contends the Court should not treat the requested e-mails as official presidential communications to which

---

[6] The Presidential Records Act of 1978 requires the President to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records" pursuant to the statutory requirements. 44 U.S.C. § 2203(a).

the presidential communications privilege applies under FOIA. (*See* Pl.'s Cross-Mot. 8-9 ("[T]he government cannot have it both ways. If e-mails sent or received by White House staff on RNC e-mail accounts were official communications of White House advisers . . . they should have been treated as presidential records and preserved as such. If such e-mails were properly subject to the RNC's own, private document retention policies . . .then clearly such e-mails cannot be treated as official presidential communications . . . ." ).) However, the administration's violation of the Presidential Records Act is, as plaintiff acknowleges (*id.* 8), not before this Court, and it cannot serve as a basis for determining whether the government has properly invoked Exemption 5. Moreover, plaintiff fails to point to any case law that would indicate that the server where an e-mail is housed is relevant to its treatment under FOIA. Rather, under D.C. Circuit precedent, it is the content, not the form, of the communication that determines whether it is properly exempt under Exemption 5. *See, e.g.*, *Klamath*, 532 U.S. at 8 ("To qualify [under Exemption 5], a document must . . . satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.") Therefore, because the form of the document does not factor into the analysis under FOIA, the Court cannot adopt a *per se* rule that any e-mails sent on the RNC servers are not covered by FOIA.[7]

In the absence of such a *per se* rule, the remainder of plaintiff's argument collapses. Plaintiff appears to accept the government's declaration that the e-mails were exchanged between officials in the White House and DOJ. Moreover, plaintiff does not contest Pustay's characterization of the

---

[7] Indeed, to adopt plaintiff's approach would presumably mean that any e-mail sent or received from a personal account would no longer be "official" or "inter-agency" and therefore would not be covered by FOIA.

content of the e-mails, nor does it argue that these documents could not properly be withheld had they been sent through official government e-mail accounts.[8]  The government has therefore demonstrated that the requirements of Section 5 have been met and its motion for summary judgment must be granted.[9]

## CONCLUSION

For the reasons stated herein, the government's motion for summary judgment is GRANTED, plaintiff's cross-motion for summary judgment is DENIED, and the above-captioned case is dismissed with prejudice.  An appropriate order accompanies this memorandum opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   March 27, 2008

---

[8] Plaintiff argues at some length (*see* Pl.'s Cross-Mot. 10-12) that e-mails related to RNC business do not fall under the "consultant corollary" to Exemption 5, which protects communications between an agency and its consultants when the consultants are performing a role "enough like the agency's own personnel to justify calling their communications 'intra-agency.'" *Klamath*, 532 U.S. at 12.  The consultant corollary is, however, irrelevant to this case because all the contested e-mails were exchanged between government officials.  As explained, plaintiff's contention that these communications are not "official" or "inter-agency" is based solely on the fact that they were sent to or from RNC servers.  The Court has already rejected this argument.  Moreover, Pustay's descriptions of the documents, which plaintiff does not challenge, indicate that they all relate in some way to the administration's appointment or termination of U.S. Attorneys, its management of U.S. Attorney Offices, or its appointment of judicial nominees.  Therefore, as a factual matter, it appears uncontested that these e-mails were inter-agency and that they related to the official business of the Executive Branch.

[9] The Court further finds that government has met its burden of demonstrating that all reasonably segregable information has been disclosed.  (*See* Def.'s Mot. 17-19.)